## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
THOMAS G. DAVIS, *et al.,*                          )
)
          *Plaintiffs,*                          )
)
          v.                          )     Civil Action No. 1:08-cv-01064 (JR)
)
PENSION BENEFIT GUARANTY                 )
CORPORATION,                          )
)
          *Defendant.*                          )
_____)

## MOTION OF DEFENDANT PENSION BENEFIT GUARANTY CORPORATION
## TO DISMISS IN PART AND TO STRIKE

Defendant Pension Benefit Guaranty Corporation moves under Fed. R. Civ. P.

12(b)(6) to dismiss in part Plaintiffs' Amended Complaint and to strike certain demands

therein, as follows:  (1) to dismiss Claims 5 and 10, and (2) in the prayer for relief , to

strike the requests for (a) attorneys' fees, (b) "monetary relief," and (c) a jury trial.

Reasons for the requested relief are set forth in the accompanying Memorandum in

Support of Motion of Defendant Pension Benefit Guaranty Corporation to Dismiss in Part

and to Strike.

August 29, 2008                              Respectfully submitted,


                                               /s/ Joseph M. Krettek


Office of the General Counsel                Office of the Chief Counsel
JUDITH R. STARR                              ISRAEL GOLDOWITZ
General Counsel                              Chief Counsel
PHILIP R. HERTZ                              CHARLES L. FINKE
Deputy General Counsel                       Deputy Chief Counsel
KENNETH J. COOPER                            JAMES J. ARMBRUSTER
Assistant General Counsel                    PAULA J. CONNELLY
JOSEPH J. SHELTON                            GARTH D. WILSON
DHARMESH S. VASHEE                           Assistant Chief Counsels
Attorneys                                    JEAN MARIE BREEN
                                             JOSEPH M. KRETTEK
                                             MICHAEL A. MARICCO
                                             Attorneys

          PENSION BENEFIT GUARANTY CORPORATION
          1200 K Street, N.W.
          Washington, D.C.  20005-4026
          Telephone:  (202) 326-4020 ext. 6772
          Facsimile:  (202) 326-4112
          krettek.joseph@pbgc.gov

          Attorneys for Defendant PBGC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
THOMAS G. DAVIS, *et al.,*                  )
                                            )
          *Plaintiffs,*                     )
                                            )
          v.                                )        Civil Action No. 1:08-cv-01064 (JR)
                                            )
PENSION BENEFIT GUARANTY                     )
CORPORATION,                                )
                                            )
          *Defendant.*                      )
_____)

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT
PENSION BENEFIT GUARANTY CORPORATION
TO DISMISS IN PART AND TO STRIKE**

Office of the General Counsel          Office of the Chief Counsel
JUDITH R. STARR                        ISRAEL GOLDOWITZ
General Counsel                        Chief Counsel
PHILIP R. HERTZ                        CHARLES L. FINKE
Deputy General Counsel                 Deputy Chief Counsel
KENNETH J. COOPER                      JAMES J. ARMBRUSTER
Assistant General Counsel              PAULA J. CONNELLY
JOSEPH J. SHELTON                      GARTH D. WILSON
DHARMESH S. VASHEE                     Assistant Chief Counsels
Attorneys                              JEAN MARIE BREEN
                                       JOSEPH M. KRETTEK
                                       MICHAEL A. MARICCO
                                       Attorneys

          PENSION BENEFIT GUARANTY CORPORATION
          1200 K Street, N.W.
          Washington, D.C.  20005-4026
          Telephone:  (202) 326-4020 ext. 6772
          Facsimile:  (202) 326-4112
          krettek.joseph@pbgc.gov

          Attorneys for Defendant PBGC

August 29, 2008

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**................................................................................................... 1

**STATUTORY BACKGROUND** ............................................................................ 2

**STATEMENT OF FACTS** ..................................................................................... 6

    **1. Plan Termination** ...................................................................................... 6

    **2. Procedural History**.................................................................................... 6

    **3. The Amended Complaint** ......................................................................... 8

**STANDARD UNDER RULE 12(b)(6)** .................................................................. 9

**ARGUMENT** ..........................................................................................................10

    **I.**     **CLAIM 10 MUST BE DISMISSED BECAUSE
THE PILOTS DID NOT PRESENT IT TO PBGC'S
APPEALS BOARD** ...........................................................................10

    **II.**     **CLAIM 5, FOR FIDUCIARY BREACH, MUST
BE DISMISSED FOR FAILURE TO STATE A CLAIM** ................12

        **A.**     **PBGC's asserted inaction in pursuing an alleged
fiduciary breach is presumptively unreviewable** ......................13

        **B.**     **The Pilots' fiduciary breach claim is premature** ......................18

    **III.**     **THE PILOTS ARE NOT ENTITLED TO ATTORNEYS'
FEES, REGARDLESS OF THE OUTCOME OF THIS CASE**........20

    **IV.**     **THE PILOTS' REQUESTS FOR RELIEF OTHER
THAN "APPROPRIATE EQUITABLE RELIEF" MUST
BE STRICKEN** .................................................................................23

    **V.**     **THE PILOTS' JURY DEMAND MUST BE STRICKEN
BECAUSE THEIR CLAIMS DO NOT ENTITLE THEM
TO A JURY TRIAL**...........................................................................24

**CONCLUSION** ......................................................................................................26

## TABLE OF AUTHORITIES

### Cases Cited

*Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
  429 F.3d 1136 (D.C. Cir. 2005) ............................................................................11

*Alianza Fed. de Mercedes v. FCC*,
  539 F.2d 732 (D.C. Cir. 1976) .............................................................................10

*Alpena Dialysis Servs. v. Leavitt*,
  2006 WL 2682550 (D.D.C. Sept. 18, 2006) .........................................................10

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975).............................................................................................20

*Ardestani v. INS*,
  502 U.S. 129 (1991).............................................................................................22

*\*Ass'n of Irritated Residents v. EPA*,
  494 F.3d 1027 (D.C. Cir. 2007) ..........................................................................16

*Atl. States Legal Found. v. EPA*,
  325 F.3d 281 (D.C. Cir. 2003) ............................................................................19

*Balt. Gas & Elec. Co. v. FERC*,
  252 F.3d 456 (D.C. Cir. 2001) ............................................................................17

*Barnhart v. Sigmon Coal Co.*,
  534 U.S. 438 (2002).............................................................................................21

*Becker v. The Weinberg Group, Inc.*,
  473 F. Supp. 2d 48 (D.D.C. 2007) ......................................................................17

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007).......................................................................................... 9

*Bender v. Dudas*, 2006 WL 89831 (D.D.C. Jan. 13, 2006),
  *aff'd*, 490 F.3d 1361 (Fed. Cir. 2007) ................................................................11

*Boivin v. US Airways, Inc.*,
  2005 WL 713622 (D.D.C. Mar. 17, 2005)............................................................ 1

*\*Boivin v. US Airways, Inc.*,
  446 F.3d 148 (D.C. Cir. 2006),
  *on remand*, No. 03-2373 (JR) (D.D.C. Sept. 21, 2006) ................................... 1, 11

**\*Authorities chiefly relied upon are marked with an asterisk.**

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) .......................................................................10

*Coleman v. PBGC*,
    196 F.R.D. 193 (D.D.C. 2000)........................................................................25

*Confiscation Cases*,
    74 U.S. 454 (1868)........................................................................................14

*Fitts v. Fannie Mae*,
    44 F. Supp. 2d 317 (D.D.C. 1999),
    *remanded on other grounds*, 236 F.3d 1 (D.C. Cir. 2001) ..................................25

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992).......................................................................................14

*Great-West Life Ins. & Annuity Co. v. Knudsen*,
    534 U.S. 204 (2002)...................................................................................23-24

*Heckler v. Chaney*.
    470 U.S. 821 (1985)...................................................................  13, 14, 16, 17

*Jones v. Ritter*,
    2008 WL 2765338 (D.D.C. July 16, 2008) (Robertson, J.)................................10

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) .......................................................................10

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) .......................................................................10

*Mack v. Metropolitan Life Inc.*,
    2007 WL 1720471 (11th Cir. Jun. 15, 2007).................................................25

*Massachusetts v. EPA*,
    127 S. Ct. 1438 (2007)..................................................................................14

*McCarthy v. Madigan*,
    503 U.S. 140 (1992)......................................................................................11

*McDougall v. Pioneer Ranch L.P. Partnership*,
    494 F.3d 571 (7th Cir. 2007) .......................................................................25

*Muller v. First Unum Life Ins.*,
    341 F.3d 119 (2d Cir. 2003)..........................................................................25

**\*Authorities chiefly relied upon are marked with an asterisk.**

*Nat'l Wildlife Fed'n v. EPA,*
    286 F.3d 554 (D.C. Cir. 2002) ....................................................................10, 11

*Natural Resources Def. Council v. EPA,*
    25 F.3d 1063 (D.C. Cir. 1994) ...........................................................................11

*Nebraska v. EPA,*
    331 F.3d 995 (D.C. Cir. 2003) ...........................................................................10

*\*Nuclear Energy Inst., Inc. v. EPA,*
    373 F.3d 1251 (D.C. Cir. 2004) ....................................................................10, 11

*Ohio Forestry Ass'n v. Sierra Club,*
    523 U.S. 726 (1998) ...........................................................................................19

*\*Paulsen v. CNF, Inc.,*
    2006 WL 4094289 (N.D. Cal. Dec. 22, 2006),
    *appeal pending sub nom. Bowden v. CNF, Inc.,* No. (9th Cir.)
    (argued August 11, 2008, and submitted for decision) .......................................17

*PBGC v. LTV Corp.,*
    496 U.S. 633 (1990) ........................................................................................2, 23

*Rosales v. United States,*
    477 F. Supp. 2d 119 (D.D.C. 2007) ...................................................................10

*Russello v. United States,*
    464 U.S. 16 (1983) .............................................................................................21

*Schering Corp. v. Heckler,*
    779 F.2d 683 (D.C. Cir. 1985) ...........................................................................16

*Sierra Club v. Whitman,*
    268 F.3d 898 (9th Cir. 2001) .............................................................................16

*Small v. Chao,*
    398 F.3d 894 (7th Cir. 2005) .............................................................................16

*S. Ry. Co. v. Seaboard Allied Milling Corp.,*
    442 U.S. 444 (1979) ...........................................................................................14

*St. Louis Fuel & Supply Co. v. FERC,*
    890 F.2d 446 (D.C. Cir. 1989) ...........................................................................22

***\*Authorities chiefly relied upon are marked with an asterisk.***

*Stephens v. US Airways Group,*
    555 F. Supp. 2d 112 (D.D.C. 2008) (Collyer, J.)................................21

*Texas v. United States,*
    523 U.S. 296 (1998)........................................................................19

*United States v. Batchelder,*
    442 U.S. 114 (1979)........................................................................14

*United States v. L.A. Tucker Truck Lines,*
    344 U.S. 33 (1952)..........................................................................11

*United States v. Nixon,*
    418 U.S. 683 (1974)........................................................................14

*United States v. Villanueva-Sotelo,*
    515 F.3d 1234 (D.C. Cir. 2008)......................................................21

*Vaca v. Sipes,*
    386 U.S. 171 (1967)........................................................................14

*Varghese v. Honeywell Int'l, Inc.,*
    424 F.3d 411 (4th Cir. 2005) ..........................................................25

## United States Codes Cited

Title 5
    Section 504(a)(2) ........................................................................20, 21
    Section 504(b)(1)(C) ..........................................................................22
    Section 554........................................................................................22, 23
    Section 556...........................................................................................22
    Section 557...........................................................................................22

Title 29
    Section 1001-1191c .............................................................................. 2
    Section 1001(a) .................................................................................... 2
    Section 1104(a) ....................................................................................15
    Section 1104(a)(1) ...............................................................................16
    Section 1132(a)(3) ...............................................................................24
    Section 1132(g)....................................................................................21
    Sections 1301-1461 (2000 & Supp. V 2005)...................................... 1
    Section 1302......................................................................................... 2
    Section 1302(a) ............................................................................... 3, 15
    Section 1302(a)(1) ...............................................................................16

*Authorities chiefly relied upon are marked with an asterisk.*

Section 1302(a)(2) ...................................................................................... 3, 16
Section 1302(a)(3) ...........................................................................................16
Section 1302(g)(2) ........................................................................................... 3
*Section 1303(e)(6) ..........................................................................................18
Section 1303(e)(6)(A) .......................................................................................18
Section 1303(e)(6)(C) .......................................................................................20
*Section 1303(f) .......................................................................5, 20, 23, 24
*Section 1303(f)(1) ...................................................................5, 23, 24
Section 1303(f)(3) ..................................................................................6, 20
*Section 1303(f)(4) ...................................................................5, 20, 23, 24
Section 1305...................................................................................................15
Section 1307(f)(3) ...........................................................................................21
Section 1322....................................................................................................3
Section 1322(b)(1) ............................................................................................ 4
Section 1322(b)(3) ............................................................................................ 3
Section 1341(c) ................................................................................................ 6
Section 1342...................................................................................................15
Section 1342(a) ...............................................................................................15
Section 1342(b) ................................................................................................ 3
Section 1342(c) ................................................................................................ 3
Section 1342(d) ................................................................................................ 3
*Section 1342(d)(3) ..........................................................................................15
Section 1342(d)(1)(B)(iv) .................................................................................16
Section 1344................................................................................................4, 15
Section 1344(a)(3) ............................................................................................ 9
Section 1361.................................................................................................... 3
Section 1370(e)(1) .......................................................................................20, 21
Section 1451(e) ...............................................................................................21

## Other Authorities Cited

29 C.F.R.

Part. 4003 ...................................................................................................... 4
Section 4003.1(b) ............................................................................................. 5
Section 4003.2................................................................................................. 5
Section 4003.7................................................................................................. 5
Section 4003.21............................................................................................... 5
Section 4003.22(a) ........................................................................................... 5
Section 4003.52............................................................................................... 5
Section 4003.59(a) ........................................................................................... 5
Section 4003.59(b) ........................................................................................... 5

*Authorities chiefly relied upon are marked with an asterisk.*

Pub. L. No. 93-406,
    88 Stat. 832 (1974)........................................................................... 2

Fed. R. Civ. P. 8(a) ................................................................................. 9
Fed. R. Civ. P. 12(b)(6)........................................................................... 9

PBGC Ann. Rep. at i (2007) ("Ann. Rep."),
    http://www.pbgc.gov/docs/2007_annual_report.pdf ...............................3, 15

*Authorities chiefly relied upon are marked with an asterisk.*

**INTRODUCTION**

The plaintiffs in this action (the "Pilots") are over 1,000 retired participants or beneficiaries in the terminated Retirement Income Plan for Pilots of US Airways, Inc. (the "Plan"), a pension plan that US Airways, Inc. ("US Airways") maintained for its pilots. Defendant Pension Benefit Guaranty Corporation ("PBGC") is the United States government agency that administers the pension plan termination insurance program established by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").[1] PBGC became statutory trustee of the Plan when it terminated in 2003 during the first of two bankruptcies of the sponsor, US Airways.

As the Pilots acknowledge, this suit is related to an earlier case before this Court, *Boivin v. US Airways*.[2] Some of the Pilots were plaintiffs in *Boivin*, and PBGC was one of the defendants. Four of the counts in the amended complaint in that case were against PBGC. This Court initially entered summary judgment for PBGC on two counts, and dismissed the other two counts against PBGC for failure to state a claim upon which relief can be granted.[3] After a decision by the D.C. Circuit, this Court dismissed without prejudice the plaintiffs' claims against PBGC for failure to exhaust administrative remedies.[4]

In the current action, PBGC moves to dismiss in part the Pilots' Amended Complaint for failure to state a claim upon which relief can be granted, and to strike

---

[1] 29 U.S.C. §§ 1301-1461 (2000 & Supp. V 2005).

[2] Am. Compl. ¶¶ 9-10, 20; Notice of Designation of Related Civil Cases; *Boivin v. US Airways, Inc.*, No. 03-2373 (JR) (D.D.C. filed Nov. 17, 2003).

[3] 2005 WL 713622 (D.D.C. Mar. 17, 2005); J. filed Apr. 27, 2005.

[4] 446 F.3d 148 (D.C. Cir. 2006), *on remand*, No. 03-2373 (JR) (D.D.C. Sept. 21, 2006).

several demands in the request for relief.  Specifically, PBGC moves to dismiss Claims 5

and 10, and to strike the Pilots' requests for (i) attorneys' fees, (ii) relief other than

appropriate equitable relief, and (iii) a jury trial.

## STATUTORY BACKGROUND

In enacting ERISA, Congress sought both (1) to provide minimum standards to

assure the "equitable character" and "financial soundness" of ongoing private employee

benefit plans,[5] and (2) to guarantee payment of benefits to participants whose defined

benefit pension plans have terminated.  Separate titles of ERISA address these two goals:

Title I generally regulates the administration of ongoing pension plans, and Title IV

regulates plan termination and related liabilities, and the payment of benefits under

terminated plans.[6]

PBGC is a wholly owned United States government corporation modeled after the

Federal Deposit Insurance Corporation, established to administer the mandatory pension

termination insurance program established by Title IV of ERISA.[7]  PBGC receives no

funds from general tax revenues, and the United States is not responsible for the agency's

obligations.[8]  When a pension plan terminates without sufficient assets to pay its

obligations to participants, PBGC guarantees the payment of certain benefits, subject to

---

[5] 29 U.S.C. § 1001(a).

[6] The popular names "Title I" and "Title IV" derive from terminology of the original act
of Congress, Pub. L. No. 93-406, 88 Stat. 832 (1974).  Title I corresponds to subchapter I
of chapter 18 of title 29 of the United States Code, 29 U.S.C. §§ 1001-1191c.  Title IV
corresponds to subchapter III of that chapter, 29 U.S.C. §§ 1301-1461.

[7] See 29 U.S.C. § 1302; see also PBGC v. LTV Corp., 496 U.S. 633, 636-37 (1990).

[8] 29 U.S.C. § 1302(g)(2); PBGC Ann. Rep. at i (2007) ("Ann. Rep."),
http://www.pbgc.gov/docs/2007_annual_report.pdf.

statutory limits.[9]  More than 1.3 million participants in more than 3,700 terminated

pension plans rely on PBGC for current and future pension benefits.[10]

PBGC is charged with carrying out the following purposes of Title IV:  providing

timely and uninterrupted payment of benefits, encouraging employers to maintain

voluntary private pension plans, and maintaining insurance premiums "at the lowest level

consistent with carrying out its obligations" under Title IV.[11]  In carrying out the Title IV

insurance program, PBGC must balance these duties and its other statutory obligations.

PBGC serves two roles with respect to terminated plans.  First, PBGC typically

becomes statutory *trustee*, in which its primary function is to collect and marshal the

assets of the terminated plan.[12]  Second, as statutory *guarantor*, PBGC pays benefits

under the terminated plan "subject to the limitations and requirements of subtitle B of

[Title IV of ERISA]."[13]

There are several limitations on the benefits PBGC may pay.  One example is the

maximum guarantee limit, a statutory cap on the amount of PBGC's guarantee.[14]  Another

provision restricts the amount of benefits PBGC may pay where a pension plan or

amendment to a plan has been in effect for less than five years.[15]

---

[9] *See* 29 U.S.C. §§ 1322, 1342(b), (c), 1361.

[10] Ann Rep. at 7.

[11] *See* 29 U.S.C. § 1302(a).

[12] *See* 29 U.S.C. § 1342(b), (d).

[13] 29 U.S.C. § 1361; *see also* 29 U.S.C. §§ 1302(a)(2), 1322.

[14] 29 U.S.C. § 1322(b)(3).

[15] 29 U.S.C. § 1322(b)(1).

Once a pension plan terminates under Title IV, it has a number of fundamental differences from an ongoing plan regulated under Title I of ERISA, including: (1) participants can no longer earn additional benefits or vesting credits; (2) the parties who were responsible for plan administration and management no longer serve in those roles; (3) no further minimum funding contributions accrue; (4) the plan's assets are taken over by PBGC and pooled with the assets of other terminated plans, and (5) participants' right to receive benefits under the terms of the plan is replaced with their right to receive benefits as set forth in Title IV.

When an underfunded pension plan terminates — usually as a result of an employer's bankruptcy — PBGC ensures that benefit payments are continued. PBGC does this by initially paying eligible participants *estimated* benefits under Title IV. Meanwhile, PBGC proceeds with the task of reviewing plan provisions and participant data, valuing plan assets and liabilities, and allocating plan assets under a six-tier, statutory priority scheme.[16] Each tier of the allocation scheme represents a specific category of benefits. Lastly, PBGC issues benefit determination letters to participants setting forth their Title IV benefits.

PBGC's regulations establish procedures by which PBGC makes benefit determinations and a process for challenging them.[17] The agency's determination must be in writing; must state the reason for the determination; and must notify the party of its right to appeal the determination.[18] A participant who wishes to challenge PBGC's

---

[16] *See* 29 U.S.C. § 1344.

[17] 29 C.F.R. pt. 4003.

[18] 29 C.F.R. §§ 4003.1(b), 4003.21.

benefit determination must file an appeal with PBGC's Appeals Board within forty-five

days to exhaust his or her administrative remedies.[19]  Filing an appeal generally stays the

effectiveness of the benefit determination until the Appeals Board issues a decision.[20]

The Appeals Board must consider those portions of the file relating to the initial

determination, all materials submitted by the appellant and any third parties, and any

additional information submitted by PBGC staff.[21]  The Appeals Board decision

constitutes PBGC's final agency action, after which a participant may seek judicial

review.[22]

     The "exclusive means" for bringing actions against PBGC under Title IV,

including actions against the corporation in its capacity as trustee, is 29 U.S.C.

§ 1303(f).[23]  The remedies available in a suit under that provision are limited to

"appropriate equitable relief."[24]  A court may award "all or a portion of the costs and

expenses incurred in connection with such action to any party who prevails or

substantially prevails in such action."[25]

---

[19] 29 C.F.R. §§ 4003.7, 4003.52.  The Appeals Board is made up of PBGC officials
appointed by PBGC's Director.  *See* 29 C.F.R. § 4003.2.

[20] 29 C.F.R. § 4003.22(a).

[21] 29 C.F.R. § 4003.59(a).

[22] 29 C.F.R. § 4003.59(b).

[23] 29 U.S.C. § 1303(f)(4).

[24] 29 U.S.C. § 1303(f)(1).

[25] 29 U.S.C. § 1303(f)(3).

## STATEMENT OF FACTS

### 1.  Plan Termination

US Airways was the sponsor of the Plan.  (Am. Compl. ¶ 2.)  On August 11, 2002, US Airways filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia.  (*Id.* ¶ 36.)  On January 30, 2003, US Airways initiated proceedings for termination of the Plan, and on March 2, 2003, the bankruptcy court held that US Airways met the standards for a "distress termination" of the Plan.  (*Id.* ¶¶ 37-38, 41.)[26]  Shortly thereafter, PBGC and US Airways became parties to an agreement terminating the Plan, establishing March 31, 2003, as the termination date, and appointing PBGC as statutory trustee.  (*Id.* ¶¶ 40-41.)

### 2.  Procedural History

As discussed above, less than nine months after the Plan terminated, while PBGC was paying estimated benefits to retirees, but before it issued benefit determinations, some of the Pilots filed the earlier *Boivin* suit, which this Court dismissed.[27]  Subsequently, PBGC issued benefit determinations, and many of the Pilots filed an appeal with PBGC's Appeals Board on March 23, 2007.[28]  The Appeals Board initially

---

[26] *See also* 29 U.S.C. § 1341(c) (procedures for distress termination of a plan).

[27] *Supra* , p. 1.

[28] Am. Compl. ¶¶ 22, 26; *id.*, Ex. B, Appeal of Final Benefit Determinations on Behalf of US Airways Pilots, Case No. 19933400 (Mar. 23, 2007) ("Appeal Letter").

accepted the appeals as timely filed for 737 of the participants, and later accepted 32 more participants' appeals as timely filed, and consolidated the appeals.[29]

The Pilots' appeal raised many issues.  Among them, the appellants alleged that former Plan fiduciaries made improper transfers of Plan assets to other plans maintained by US Airways.[30]  They described what they allege is evidence that such transfers occurred, and urged "that PBGC either be required to undertake its own investigation of these alleged improper transfers or request the United States Department of Labor to do so."[31]

On February 29, 2008, the Appeals Board issued its decision.  (Am. Compl. ¶ 23.) The 43-page decision, with four appendices and 19 enclosures, generally upheld the methodology of PBGC's benefit determinations.[32]  Eighty-five appellants, however, were promised revised benefit determinations with new 45-day appeal rights.  In addition, the Appeals Board stated that it would issue a supplemental decision with respect to a disability issue affecting another thirty appellants.  Finally, the Appeals Board stated that it would issue supplemental decisions for eight appellants who raised unique issues.[33]

The Appeals Board did not address the merits of the alleged improper asset transfers by the former Plan fiduciaries.  The decision stated:

---

[29] *See* Am. Compl. ¶ 23; *id.,* Ex. A at 2-3, PBGC Appeals Board Consolidated Decision, Case No. 199334, Retirement Income Plan for Pilots of US Airways, Inc. (Feb. 29, 2008) ("Appeal Decision").

[30] Appeal Letter at 39-41.

[31] *Id.* at 40-41.

[32] *See* Appeal Decision.

[33] *Id*. at 42.

The issue you raise is beyond the scope of what the Appeals Board is authorized to review.  Although the documentation you later provided at our request does not appear to substantiate your claim, the Appeals Board has forwarded the information and documents to an appropriate division in PBGC's Office of the General Counsel.[34]

### 3.  The Amended Complaint

On June 20, 2008, the Pilots filed suit against PBGC challenging the Appeals Board decision.  On August 15, 2008, the Pilots filed the Amended Complaint.[35]  Of the eleven enumerated claims in the Amended Complaint, only two are directly at issue in this motion.  In Claim 5, (Am. Compl. ¶¶ 76-86), the Pilots largely repeat their earlier allegations to the Appeals Board of improper asset transfers by the former Plan fiduciaries.  In the Amended Complaint, however, the charge of fiduciary breach is now expressly directed against PBGC:

PBGC has taken no meaningful steps from the time it became trustee to the present to determine whether US Airways improperly depleted Plan assets and to recover such assets. . . .

The Retired Pilots were adversely affected by this breach of fiduciary duty, as the assets of the Plan were diminished as a result of this breach by the PBGC and the amounts upon termination from Plan assets available to pay benefits therefore have likewise been depleted.

(*Id.* ¶¶ 85-86.)

Claim 10, (*Id.* ¶¶ 117-22), the other claim in the Amended Complaint at issue in this motion, begins with the heading:  "Failure to Provide Insurance Benefits to Make Up Shortfalls That Exist After Distribution of Remaining Plan Assets."  (*Id.*, p. 187.)  The

---

[34] *Id*. at 41 (footnote omitted).

[35] The Amended Complaint added a substantial number of pilots as plaintiffs in the lawsuit.  It also added a request for a preliminary injunction relating to recapture, recoupment, or recovery of estimated benefits that exceeded the amounts in PBGC's benefit determinations.  Am. Compl. ¶¶ 115-16; ¶ G, p. 191.

gist of this confusing claim seems to be that PBGC misinterpreted the statutory guarantee rules as applied to Priority Category 3, one category in the six-tier priority scheme for allocating plan assets. [36]  The Pilots raised this issue for the first time in their Complaint and Amended Complaint.  It was not raised anywhere in their administrative appeal.

Finally, also relevant to this motion are three issues regarding the Pilots' request for relief.  First, they request an award of "[a]ttorneys fees."  (Am. Compl. ¶¶ M, N, p. 192.)  Second, they request a judgment against PBGC awarding them "monetary relief." (*Id.* ¶ J, p. 191-92.)  Third, they demand a "jury trial . . . on all questions that are properly resolved by a jury."  (*Id.* ¶ P, p. 192.)

### STANDARD UNDER RULE 12(b)(6)

Under the Federal Rules of Civil Procedure, a complaint must provide the grounds for relief under the "short and plain statement" standard of Rule 8(a).  A complaint need not contain detailed factual allegations, but must contain more than labels or conclusions; a formulaic recitation of the elements of a cause of action will not suffice.[37]

In considering a motion under Rule 12(b)(6), a court should presume that the factual allegations of a complaint are true, and construe such facts liberally in plaintiffs' favor.[38]  A court should not, however, accept "'inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint' nor 'legal conclusions

---

[36] 29 U.S.C. § 1344(a)(3).

[37] *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

[38] *Jones v. Ritter*, 2008 WL 2765338, *2 (D.D.C. July 16, 2008).

cast in the form of factual allegations.'"[39]  Similarly, a court need not accept as true a complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.[40]

## ARGUMENT

## I.    CLAIM 10 MUST BE DISMISSED BECAUSE THE PILOTS DID NOT PRESENT IT TO PBGC'S APPEALS BOARD.

This Court should dismiss Claim 10, as the Pilots did not present it in their appeal to PBGC.  Courts routinely apply the "hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review."[41]  The D.C. Circuit has stated this "well established" principle repeatedly, holding, for example, that "claims not presented to the agency may not be made for the first time to a reviewing court," and that there is a "near absolute bar against raising new issues — factual or legal — on appeal in the administrative context."[42]

---

[39] *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1275 (D.C. Cir. 1994)).

[40] *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

[41] *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004); *see, e.g., Rosales v. United States*, 477 F. Supp. 2d 119, 125 (D.D.C. 2007); *Alpena Dialysis Services v. Leavitt*, 2006 WL 2682550, *13 (D.D.C. Sept. 18, 2006).

[42] *Nuclear Energy Inst.*, 373 F.3d at 1290 (citation omitted) ("claims not presented"); *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) ("well established") and ("near absolute bar").  *Accord Alianza Fed. de Mercedes v. FCC*, 539 F.2d 732, 739 (D.C. Cir. 1976) ("The Commission must be given a fair opportunity to pass on a novel legal or factual argument, either initially or on a petition for reconsideration, before it can be brought before a reviewing court.").

This principle "applies with no less force to a statutory interpretation claim not brought to an agency's attention: '[R]espect for agencies' proper role in the *Chevron* framework requires that the court be particularly careful to ensure that challenges to an agency's interpretation of its governing statute are first raised in the administrative forum.'"[43] Accordingly, "it is unsurprising that parties rarely are allowed to seek 'review' of a substantive claim that has never even been presented to the agency for its consideration."[44] Instead, the court simply "declines to address the merits of [such an] argument."[45] This rule produces "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants."[46] The D.C. Circuit made this very point in earlier proceedings related to the current case.[47]

For these reasons, the Court should decline to address Claim 10, as the Pilots did not present it in their appeal to PBGC. In this confusing Claim, the Pilots assert that PBGC "must make up any alleged shortfall [in plan assets to pay Priority Category 3 benefits] from its insurance funds, up to the maximum that the PBGC can be made to pay under 29 U.S.C. § 1322(b)(7)," and that PBGC has not paid "all non-forfeitable benefits (up to a statutory maximum) once Plan assets are exhausted . . . ." (Am. Compl. ¶¶ 120,

---

[43] *Nuclear Energy Inst.*, 373 F.3d at 1298, *quoting Natural Resources Def. Council v. EPA*, 25 F.3d 1063, 1074 (D.C. Cir. 1994).

[44] *Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1150 (D.C. Cir. 2005).

[45] *Bender v. Dudas*, 2006 WL 89831, *6 (D.D.C. Jan. 13, 2006), *aff'd*, 490 F.3d 1361 (Fed. Cir. 2007); *accord Nat'l Wildlife Fed'n*, 286 F.3d at 562 ("We thus hold that NWF has waived [these] issues and decline to pass on their merits.").

[46] *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952).

[47] *Boivin*, 446 F.3d at 155 (*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

122.)  The Pilots made no such allegation in their appeal to PBGC's Appeals Board, which is attached as Exhibit B to the Amended Complaint.  Accordingly, they may not raise it here, and Claim 10 must be dismissed.

## II.    CLAIM 5, FOR FIDUCIARY BREACH, MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The crux of Claim 5 is that:  (1) US Airways breached its fiduciary duties by impermissibly transferring Plan assets to other US Airways benefit plans; and (2) PBGC, as successor trustee to the terminated Plan, breached a fiduciary duty by failing to investigate and institute recovery actions against US Airways for these alleged Plan transfers.

In particular, the Amended Complaint alleges that as late as August 2001, US Airways transferred Plan assets to other US Airways benefit plans, including the US Airways "Target Plan."  (Am. Compl. ¶ 83.)[48]  The Pilots assert that the Target Plan became underfunded after US Airways ceased funding it in 1986.  (*See* Am. Compl. ¶ 83.)  Rather than fund the Target Plan through corporate assets, the Pilots assert, US Airways impermissibly transferred Plan assets to the Target Plan, or paid Target Plan benefits from Plan assets, to make up the shortfall.  (*Id.*)

The Pilots base these allegations solely on "inference[s]" they draw from the retirement statements of an individual pilot.  *Id.*  They refer to this individual's retirement statement, which allegedly shows that he "received a lump sum retirement payment in 2001 that included $312,650 from the Target Plan even though his Target Plan balance

---

[48] The Amended Complaint describes the Target Plan as "a separate plan outside the scope of the PBGC's authority," the purpose of which "was to enhance benefits otherwise received by the Retired Pilots."  *Id.* ¶ 72.

stood at only about $55,000 at the time [Target Plan] funding stopped in 1986." *Id.*[49] The Pilots argue that because the amount attributed to this individual's Target Plan benefit allegedly cannot be explained by "accrued interest" on his Target Plan balance, there is a "strong inference" that US Airways improperly transferred assets from the Plan to make up for a shortfall in the Target Plan. *Id.*

Finally, the Pilots allege that they presented inferential evidence of US Airways' wrongdoings to PBGC. (*Id.* ¶ 83.) They assert that PBGC "failed to take any action to replenish the Plan's assets" or "to determine whether US Airways improperly depleted Plan assets and to recover such assets." (*Id.* ¶¶ 83, 85.) The Pilots assert that these alleged failures constitute a breach of fiduciary duty. (*Id.* ¶ 86.)

As set forth below, the Pilots' fiduciary claim must fail. First, because PBGC is a federal agency, its asserted inaction in pursuing an alleged fiduciary breach is presumptively unreviewable under *Heckler v. Chaney*.[50] Second, the Pilots' fiduciary breach claim is premature on its face. Hence, Claim 5 fails to state a claim upon which relief may be granted and should be dismissed.

> **A.    PBGC's asserted inaction in pursuing an alleged fiduciary breach is presumptively unreviewable.**

It is black letter law that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an

---

[49] The Pilots have not provided any document showing what the account balance was in 1986.

[50]  470 U.S. 821, 831 (1985).

agency's absolute discretion."[51]  The Pilots' attempt to have this Court review the

propriety of PBGC's asserted inaction here must be rejected, because it impermissibly

seeks to strip PBGC of its prosecutorial discretion.

In holding that an agency's inaction in an enforcement setting is presumptively

unreviewable, the Supreme Court stated that an agency's inaction in a particular situation

"often involves a complicated balancing of a number of factors which are peculiarly

within [the agency's] expertise" and thus makes the decision unsuitable for review.[52]

Agencies must, for example:

> assess [not only] whether a violation has occurred, but whether agency
> resources are best spent on this violation or another, whether the agency is
> likely to succeed if it acts, whether the particular enforcement action
> requested best fits the agency's overall policies, and, indeed, whether the
> agency has enough resources to undertake the action at all.  An agency
> generally cannot act against each technical violation of the statute it is
> charged with enforcing.[53]

These considerations are precisely the kind that PBGC must evaluate in deciding

whether to act in the manner that the Pilots seek to compel.  PBGC's congressionally

mandated purposes include:  encouraging the continuation and maintenance of private

pension plans for the benefit of their participants; providing timely and uninterrupted

payments of benefits in the case of terminated pension plans; and maintaining premiums

---

[51] *Chaney*, 470 U.S. at 831 (citing *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979)); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *Vaca v. Sipes*, 386 U.S. 171, 182 (1967); *Confiscation Cases*, 74 U.S. 454 (1868).  This principle was recently reaffirmed in *Massachusetts v. EPA*, 127 S. Ct. 1438, 1459 (2007).

[52] *Chaney*, 470 U.S. at 831; *see also Franklin v. Massachusetts*, 505 U.S. 788, 818-19 (1992) (judicial review normally available except limited in cases involving national security or *refusal to pursue enforcement actions*); *S. Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 462 (1979) (no review of Interstate Commerce Commission's decision not to investigate tariffs).

[53] *Chaney*, 470 U.S. at 831.

at the lowest levels consistent with statutory responsibilities.[54]  PBGC is the backstop of

pension security for 44 million defined benefit pension plan participants.[55]  PBGC, which

currently is statutory trustee to more than 3,700 plans, faces an estimated $14.1 billion

deficit without the benefit of general tax revenue or other federal support.[56]

PBGC as statutory trustee is a fiduciary with respect to the plan *only to the extent*

*that 29 U.S.C. § 1342(d)(3) provides*.  That provision expressly states that PBGC as

trustee is *not* a fiduciary "to the extent that the provisions of [Title IV] are inconsistent

with the requirements applicable under [Title I]."  *Id.*  Congress reinforced the primacy of

Title IV to Title I duties in 29 U.S.C. § 1104(a), a Title I fiduciary provision, by expressly

making the latter "[s]ubject to" 29 U.S.C. §§ 1342 and 1344 in Title IV.  Further, in stark

contrast to Title I fiduciary standards, Title IV also permits PBGC to pool assets from

terminated plans and use them for purposes in addition to paying benefits to the

participants of a particular terminated plan, including "for such other purposes as [PBGC]

determines to be appropriate in the administration of [Title IV]."[57]

Thus, in deciding how to spend its resources and whether it should bring a

recovery action against former plan fiduciaries, PBGC is not in the same position as that

of a fiduciary to an ongoing pension plan, whose sole focus must be the interests of *that*

---

[54] 29 U.S.C. § 1302(a).

[55] *See* Ann. Rep. at 7.

[56] *See id.* at 2, 7.  PBGC operations are financed solely by insurance premiums set by
Congress and paid by sponsors of defined benefit plans, investment income, assets from
pension plans trusteed by PBGC, and recoveries from companies formerly responsible for
the plans.  29 U.S.C. §§ 1305, 1342(a); *see also* Ann. Rep. inside front cover.

[57] 29 U.S.C. § 1342(a).

particular plan's participants.[58]  PBGC must balance its Title IV statutory duties to *all* its stakeholders, including premium payers, participants in ongoing plans, and participants in all terminated plans.[59]  In short, like the situation in *Chaney*, PBGC is faced with "a complicated balancing of a number of factors which are peculiarly within the [agency's] expertise."[60]

Courts of appeal, including the D.C. Circuit, have held that the presumption of unreviewability is a threshold issue going to the court's jurisdiction.[61]  That is not surprising, as a primary reason for the presumption of unreviewability is to avoid having a trial within a trial about the agency's enforcement decision and process.

*Chaney* teaches that the presumption of unreviewability of agency inaction is overcome only by a showing that Congress mandated the agency to act.[62]  There is no such mandate in this case.  Congress, in Title IV, gave PBGC, as statutory trustee, the "*power* . . . to commence, prosecute . . . any suit . . . involving the [P]lan."[63]  Title IV

---

[58] *See* 29 U.S.C. § 1104(a)(1) ("Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . .").

[59] *See* 29 U.S.C. § 1302(a)(1)-(3).

[60] *Chaney*, 470 U.S. at 831.

[61] *See Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1030-33 (D.C. Cir. 2007); *Small v. Chao*, 398 F.3d 894, 897 (7th Cir. 2005) ("we do not have jurisdiction to review this type of agency inaction"); *Sierra Club v. Whitman*, 268 F.3d 898, 905 (9th Cir. 2001) (affirming dismissal for lack of jurisdiction); *Schering Corp. v. Heckler,* 779 F.2d 683, 685-87 (D.C. Cir. 1985).

[62] *Chaney*, 470 U.S. at 832-33.

[63] 29 U.S.C. § 1342(d)(1)(B)(iv) (emphasis added).

does not, however, *mandate* that PBGC bring any suit involving the Plan.  As one court recently held:

> ERISA *permits* PBGC to pursue claims on behalf of a failed pension plan, but it does not *require* PBGC to do so.  Plaintiffs have not cited, nor has the Court found, any statutory or case law authority, mandating that PBGC bring suit for any actionable behavior it discovers when it assumes responsibility for a terminated plan.  To impose this requirement would compel PBGC to devote its time and resources to pursuing potential claims in each of the thousands of instances in which an underfunded pension plan is terminated and PBGC becomes a trustee -- or else potentially face suit itself for violation of its fiduciary duties under ERISA.  There is no evidence of a Congressional mandate for such an unreasonable result.  Since there is no statutory requirement that PBGC bring lawsuits such as this one on behalf of a failed pension plan, the Court declines to create such a requirement.[64]

The presumption of agency unreviewability is not overcome here.  Congress did not mandate that PBGC institute a recovery action in every case.  The pension insurance program would be jeopardized if PBGC faced a fiduciary breach suit every time a participant asked the agency to investigate or bring suit.  This is especially true in a case like the instant one, where the allegations of wrongdoing are based on nothing more than speculative and dubious inferences drawn from the fact that a participant received higher benefits than he expected from a related plan sponsored by US Airways.  PBGC's alleged inaction here in pursuing the alleged breaches of former Plan fiduciaries is committed to its discretion.

---

[64] *Paulsen v. CNF, Inc.*, 2006 WL 4094289, *3 (N.D. Cal. Dec. 22, 2006) (emphasis in original), *appeal pending sub nom Bowden v. CNF, Inc.,* Nos. 07-15142 – 07-15389 (9th Cir.) (argued August 11, 2008, and submitted for decision).  *See also Becker v. The Weinberg Group, Inc.*, 473 F. Supp. 2d 48, 69 (D.D.C. 2007) (citing *Chaney* in holding that PBGC's decision to exercise its enforcement authority "is committed by law to the agency's discretion;" *also citing Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 459 (D.C. Cir. 2001)).

**B.      The Pilots' fiduciary breach claim is premature.**

Judicial review of PBGC's alleged inaction is especially inappropriate here, where the Pilots' fiduciary breach claim is premature on its face and as a matter of law. The Pilots assert that PBGC has not taken any action to investigate or recover from former Plan fiduciaries, but do not assert that it is too late for PBGC to do so. Because PBGC may yet bring a recovery action and the Pilots fail to allege otherwise, their fiduciary claim is premature and must be dismissed.

The Pilots allege that they "have presented information to the PBGC showing" that US Airways improperly transferred assets from the Plan to the Target Plan. (Am. Compl. ¶ 83.) But the earliest information the Pilots submitted to PBGC in this regard was their "Appeal of Final Benefit Determination on Behalf of US Airways Pilots." The date of this document is *March 23, 2007*.[65]

Section 1303(e)(6) of Title IV provides the relevant limitations period for "civil actions brought by [PBGC]."[66] It states that PBGC may bring actions, including recovery actions, within 6 years after the date on which the cause of action arose or within 3 years of the *later* of:

- *the earliest date on which PBGC acquired or should have acquired actual knowledge of the existence of such cause of action*; or

- the date on which PBGC became a Plan trustee (if PBGC brings suit as Plan trustee).[67]

---

[65] Appeal Letter at 1.

[66] 29 U.S.C. § 1303(e)(6).

[67] 29 U.S.C. § 1303(e)(6)(A) provides:

Except as provided in subparagraph (C) [fraud or concealment], an action under this subsection may not be brought after the later of--

Based on the Amended Complaint's allegations and exhibits attached thereto, (Am. Compl. ¶¶ 22, 26; Appeal Letter), PBGC has at least until *March 23, 2010,* to bring suit against former Plan fiduciaries, *i.e.,* 3 years after March 23, 2007, when the Pilots presented their information of alleged fiduciary breaches to PBGC. The Pilots do not allege that PBGC acquired or should have acquired knowledge of these alleged breaches at any point prior to March 23, 2007. The Pilots' Claim 5 is thus premature on its face.[68]

Moreover, the Pilots imply that fraud and concealment by US Airways were involved in the allegedly improper Plan transfers. (Am. Compl. ¶ 83.) To the extent that

---

(i) 6 years after the date on which the cause of action arose, or

(ii) 3 years after the applicable date specified in subparagraph (B).

(B) (i) Except as provided in clause (ii), the applicable date specified in this subparagraph is the earliest date on which the corporation acquired or should have acquired actual knowledge of the existence of such cause of action.

(ii) If the corporation brings the action as a trustee, the applicable date specified in this subparagraph is the date on which the corporation became a trustee with respect to the plan if such date is later than the date described in clause (i).

[68] Stated differently, until such time as the statute of limitations for PBGC recovery actions has run, the Pilots fail to allege a controversy ripe for judicial review. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation marks omitted); *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (same). The Pilots might arguably have a claim in the future if it becomes known that improper transfers from the Plan actually occurred, that monies are still recoverable, and if PBGC fails to take a statutorily mandated action before the statute of limitations runs. But right now, whether those things will happen is entirely speculative. *See also Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998) (holding that courts must consider the following issues when adjudicating ripeness: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.").

the Pilots' fiduciary breach allegations against US Airways sound in fraud or concealment, PBGC may have until *March 23, 2013,* to bring suit against US Airways, *i.e.*, 6 years after PBGC was made aware of the alleged wrongdoing on March 23, 2007.[69]

In summary, because (i) PBGC's asserted inaction in pursuing a fiduciary breach claim is presumptively unreviewable, and (ii) because PBGC may still bring recovery actions against the former Plan fiduciaries, and the Amended Complaint fails to allege that the agency is precluded from doing so, Claim 5 must be dismissed.

## III.    THE PILOTS ARE NOT ENTITLED TO ATTORNEYS' FEES, REGARDLESS OF THE OUTCOME OF THIS CASE.

The Pilots seek an award of attorneys' fees against PBGC, citing 29 U.S.C. § 1303(f)(3) and the Equal Access to Justice Act, 5 U.S.C. § 504(a)(2). (Am. Compl. ¶¶ M, N, p. 192.) Because the Pilots cannot recover attorneys' fees under either of these provisions, their request should be stricken.

Under the well established "American Rule," litigants are required to pay their own attorneys' fees, except where fee-shifting is specifically authorized by statute.[70] Section 1303(f) is the "exclusive means" for bringing action against PBGC with respect to a plan, and although that provision specifically authorizes recovery of "costs and expenses," it does not authorize attorneys' fees.[71] In contrast, the two provisions of Title IV that authorize suit against defendants *other* than PBGC specifically authorize attorneys' fees. Section 1370(e)(1) authorizes attorneys' fees in suits against parties

---

[69] *See* 29 U.S.C. § 1303(e)(6)(C).

[70] *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

[71] *See* 29 U.S. C. § 1303(f)(4) (exclusive means); 29 U.S.C. § 1303(f)(3) (costs and expenses).

other than PBGC for violation of certain Title IV provisions.[72]  And section 1451(e) authorizes attorneys' fees in suits against parties other than PBGC, the Secretary of Treasury, or the Secretary of Labor involving multiemployer plans.[73]

By expressly including attorneys' fees in these provisions and omitting any mention of them in the provision authorizing actions against PBGC, Congress left no doubt about its intent to preclude an award of attorneys' fees against the agency.[74]  The court so held in *Stephens v. US Airways Group*, another action in this jurisdiction involving US Airways pilots and the Plan.[75]  The court dismissed the fee request against PBGC as a matter of law:

> Because Plaintiffs can sue [PBGC] only under § 1303(f), and § 1303(f) does not provide for attorneys' fees, Plaintiffs have not stated a claim for such fees. . . .  Defendants' motion to dismiss Plaintiffs' request for attorneys' fees as a matter of law will be granted.[76]

The Court should do the same here.

The Pilots fare no better under the Equal Access to Justice Act ("EAJA").[77]  The provision cited by the Pilots allows an award of attorneys' fees and other expenses to a

---

[72] 29 U.S.C. § 1370(e)(1).

[73] 29 U.S.C. § 1451(e).  Moreover, Title I of ERISA expressly provides for attorneys' fees, 29 U.S.C. § 1132(g), in contrast to 29 U.S.C. § 1307(f)(3), which does not.

[74] *See Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452 (2002) ("when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1248 (D.C. Cir. 2008) (same).

[75] 555 F. Supp. 2d 112 (D.D.C. 2008) (Collyer, J.).

[76] *Id. at* 122-23.

[77] 5 U.S.C. § 504(a)(2).

party that prevails in an "adversary adjudication" conducted by a federal government agency, unless the agency's position is "substantially justified."  But the proceedings conducted by PBGC's Appeals Board did not constitute "adversary adjudication," wholly apart from the question of who prevailed and whether a particular position was justified.

EAJA defines "adversary adjudication" as "an adjudication under section 554 of [Title 5]."[78]  An adjudication under that provision is one that is "required by statute to be determined on the record after opportunity for an agency hearing."  Accordingly, EAJA fees are available only if the agency's governing statute "indicates that Congress intended to require full agency adherence to all section 554 procedural components," which include providing an opportunity to participate in a hearing, present oral and written evidence, cross-examine, and  submit proposed findings.[79]  Nothing in Title IV requires *any* specific procedures on *any* matter, much less the full panoply of procedures

---

[78] 5 U.S.C. § 504(b)(1)(C) provides:

> "adversary adjudication" means (i) an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license, (ii) any appeal of a decision made pursuant to section 6 of the Contract Disputes Act of 1978 (41 U.S.C. 605) before an agency board of contract appeals as provided in section 8 of that Act (41 U.S.C. 607), (iii) any hearing conducted under chapter 38 of title 31, and (iv) the Religious Freedom Restoration Act of 1993.

The Supreme Court held in *Ardestani v. INS*, 502 U.S. 129, 135 (1991) that "under section 554" means "subject to" or "governed by" section 554.

[79] *St. Louis Fuel & Supply Co. v. FERC*, 890 F.2d 446, 448-49 (D.C. Cir. 1989); *see* 5 U.S.C. §§ 554, 556, 557.

contemplated by section 554.[80]  Thus, because PBGC's proceedings did not constitute an

"adversary adjudication," EAJA fees and other expenses are not available to the Pilots.

In sum, the Pilots cannot recover attorneys' fees under Title IV or attorneys' fees

and other expenses under EAJA; accordingly, the requests in paragraphs M and N of the

Amended Complaint should be stricken.

## IV.    THE PILOTS' REQUESTS FOR RELIEF OTHER THAN "APPROPRIATE EQUITABLE RELIEF" MUST BE STRICKEN.

Participants may bring an action against PBGC with respect to a pension plan

only under 29 U.S.C. § 1303(f).  That provision authorizes only "appropriate equitable

relief."[81]  In a case such as this, where participants question the amount of their benefits,

equitable relief would include ordering PBGC to recalculate their Title IV benefit

entitlements.  In paragraph J of their request for relief, however, the Pilots ask for a

judgment awarding them "monetary relief."  (Am. Compl. ¶ J, p. 191-92.)

In this setting, "monetary relief" does not constitute "equitable relief."  As the

Supreme Court declared in *Great-West Life Ins. & Annuity Co. v. Knudson*:  "Almost

invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel

the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as

that phrase has traditionally been applied, since they seek no more than compensation for

---

[80] *See PBGC v. LTV*, 496 U.S. 633, 655-56 (PBGC determination lawfully made by informal adjudication).

[81] 29 U.S.C. § 1303(f)(1), (f)(4).

loss resulting from the defendant's breach of legal duty."[82]  The Pilots' straightforward request for "monetary relief" in Paragraph J simply cannot stand.

Aggrieved participants in terminated pension plans under PBGC trusteeship, once they have exhausted their administrative remedies, are certainly entitled to judicial review of their claims that PBGC may have erred in its Title IV benefit determinations.  They may also request, to the extent a court finds that PBGC did miscalculate their benefits, that PBGC be required to revise its computations consistent with the court's findings. The Pilots' prayer for a judgment awarding them "monetary relief" cannot stand, however, because it is not a request for "appropriate equitable relief."  Hence, the request for "monetary relief" in paragraph J must be stricken.

## V.    THE PILOTS' JURY DEMAND MUST BE STRICKEN BECAUSE THEIR CLAIMS DO NOT ENTITLE THEM TO A JURY TRIAL.

In Paragraph P of their request for relief, the Pilots demand a jury trial "on all questions that are properly resolved by a jury."  Because there are *no* such questions in this action, their jury demand should be stricken.

The "exclusive means" for bringing an action against PBGC with respect to a pension plan is contained in 29 U.S.C. § 1303(f),[83] cited in the Amended Complaint. (Am. Compl. ¶ 16.)  As discussed above, that provision permits a plaintiff to seek only "appropriate equitable relief."[84]  It is well established that jury trials are not available in

---

[82] 534 U.S. 204, 210-11 (2002) (internal quotation marks omitted) (addressing what constitutes "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3), a parallel Title I provision).

[83] *See* 29 U.S.C. § 1303(f)(4).

[84] 29 U.S.C. § 1303(f)(1).

actions in equity, including ERISA actions.[85]  Indeed, "the overwhelming weight of

authority" makes clear that a plaintiff is not permitted to have an ERISA claim decided

by a jury.[86]  Accordingly, the Court should strike the Pilots' jury demand in paragraph P.

---

[85] *See, e.g., Mack v. Metropolitan Life Ins.*, 2007 WL 1720471, *1 (11th Cir. Jun. 15, 2007) ("there is no right to a jury trial on ERISA claims"); *McDougall v. Pioneer Ranch L.P. Partnership*, 494 F.3d 571, 576 (7th Cir. 2007) ("[t]he general rule in ERISA cases is that there is no right to a jury trial"); *Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 415 n.5 (4th Cir. 2005) ("under ERISA a claimant may not insist upon a jury trial"); *Muller v. First Unum Life Ins.*, 341 F.3d 119, 124 (2d Cir. 2003) ("there is no right to a jury trial under ERISA"); *Coleman v. PBGC*, 196 F.R.D. 193, 197 (D.D.C. 2000) (striking jury demand where plaintiffs conceded that they had no such right for ERISA claims).

[86] *Fitts v. Fannie Mae*, 44 F. Supp. 2d 317, 331 (D.D.C. 1999), *remanded on other grounds*, 236 F.3d 1 (D.C. Cir. 2001).

# CONCLUSION

For the foregoing reasons, PBGC respectfully requests that its Motion to Dismiss in Part and to Strike be granted.

August 29, 2008                                         Respectfully submitted,


                                                           /s/ Joseph M. Krettek

Office of the General Counsel                  Office of the Chief Counsel
JUDITH R. STARR                                ISRAEL GOLDOWITZ
General Counsel                                Chief Counsel
PHILIP R. HERTZ                                CHARLES L. FINKE
Deputy General Counsel                         Deputy Chief Counsel
KENNETH J. COOPER                              JAMES J. ARMBRUSTER
Assistant General Counsel                      PAULA J. CONNELLY
JOSEPH J. SHELTON                              GARTH D. WILSON
DHARMESH S. VASHEE                             Assistant Chief Counsels
Attorneys                                      JEAN MARIE BREEN
                                               JOSEPH M. KRETTEK
                                               MICHAEL A. MARICCO
                                               Attorneys

              PENSION BENEFIT GUARANTY CORPORATION
              1200 K Street, N.W.
              Washington, D.C.  20005-4026
              Telephone:  (202) 326-4020 ext. 6772
              Facsimile:  (202) 326-4112
              krettek.joseph@pbgc.gov

              Attorneys for Defendant PBGC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                                          |     |
|------------------------------------------|-----|
| THOMAS G. DAVIS, *et al.*,                | )   |
|                                          | )   |
| *Plaintiffs,*                            | )   |
|                                          | )   |
| v.                                       | )   |
|                                          | )   |
| PENSION BENEFIT GUARANTY CORPORATION,    | )   |
|                                          | )   |
| *Defendant.*                             | )   |

_____

Civil Action No. 1:08-cv-01064 (JR)

**ORDER**

The Court has reviewed the Motion of Defendant Pension Benefit Guaranty

Corporation to Dismiss in Part and to Strike, and good cause having been shown, it is

hereby ORDERED that:

1.  Claims 5 and 10 of the Amended Complaint are dismissed with prejudice,

    pursuant to Fed. R. Civ. P. 12(b)(6); and

2.  The requests in the prayer for relief of the Amended Complaint for

    (a) attorneys' fees, (b) "monetary relief," and (c) a jury trial, are stricken with

    prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: _____        _____
                             JAMES ROBERTSON
                             United States District Judge