# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Thomas G. Davis, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 1:08-cv-01064 (JR) |
| v. ) | |
| ) | |
| Pension Benefit Guaranty Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs, a group of retired US Airways Pilots, respectfully move this Court pursuant to Fed. R. Civ. P. 65 for entry of a preliminary injunction directing the PBGC to refrain from engaging in recoupment actions while this litigation remains pending. Plaintiffs further request entry of a preliminary injunction preserving the status quo by including the option of installment payments in the event recoupment is warranted at the close of this litigation. As set forth more fully in the accompanying memorandum of points and authorities, Plaintiffs have a strong likelihood of success in this proceeding, where success on even one claim will require the adjustment of the parties' respective financial obligations. Given this reality, as well as the undisputed harm that arises from recoupment, the public policy disfavoring recoupment, and the absence of any conceivable harm to the PBGC from entry of an injunction, the balance of factors strongly favors the Retired Pilots. Pursuant to Local Rule 7(m), counsel for Plaintiffs have contacted counsel for the PBGC are informed that Defendants will not consent to the relief requested. Plaintiffs ask that, pursuant to Local Rule 65.1(d), the Court schedule a hearing on this application for a preliminary injunction at the Court's earliest convenience.

Respectfully submitted,

Dated: August 29, 2008

_____/s/_____
Anthony F. Shelley (D.C. Bar #420043)
Andrew T. Wise (D.C. Bar #456865)
Timothy P. O'Toole (D.C. Bar #469800)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858

892109.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Thomas G. Davis, *et al.*, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 1:08-cv-01064 (JR) |
| | ) |
| Pension Benefit Guaranty Corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs, a group of Retired US Airways Pilots (sometimes referred to in this memorandum as "The Retired Pilots"), respectfully submit this memorandum of points and authorities in support of their motion for a preliminary injunction.

## INTRODUCTION & SUMMARY

The Court should grant a preliminary injunction prohibiting Defendant Pension Benefit Guaranty Corporation ("PBGC") from undertaking recoupment and recovery actions against the Retired Pilots while this lawsuit remains pending.   Recoupment and recovery involve the recapture by the PBGC of pension benefits previously paid by the PBGC.  According to the PBGC, "recoupment" is the process by which the PBGC takes money back by automatically subtracting amounts from the monthly pension benefits that the PBGC continues to pay. "Recovery" is the process by which the PBGC takes money back from those who do not currently receive monthly benefits from the PBGC by demanding repayment in full.  Both recoupment and recovery stem from the premise that the PBGC's current benefits calculations are purportedly correct and that, based on those benefits calculations, the individual earlier

received an overpayment.  For purposes of simplicity, we will in this memorandum refer to both recoupment and recovery under the title of recoupment.

In this case, the PBGC should not be seeking recoupment in any amount from anyone. The Amended Complaint alleges that the PBGC improperly calculated benefits due to the Retired Pilots -- and thus paid them too little -- under the terms of a pension plan ("the Plan") that the PBGC, because of US Airways' bankruptcy in 2002, has been administering.  As a result, it is the PBGC here that owes money, not the Retired Pilots.  Nonetheless, the PBGC now claims that, after taking *five years* to complete relevant administrative proceedings for the Retired Pilots (with still more individuals' proceedings, incredibly, still delayed at this late date), initial amounts paid to the Retired Pilots years ago were, in its view, too high and thus immediate recoupment is required.  Though the Retired Pilots have asked the PBGC to forestall these illegitimate recoupment efforts at least until this lawsuit is resolved, so that at a minimum money is not paid back (under hardship circumstances) to the PBGC only to then be paid right back to the Retired Pilots should they succeed with this action, the PBGC has steadfastly refused. Accordingly, after taking five years to finish its proceedings, the PBGC says it must steamroll ahead to collect right now from a group of largely elderly retirees amounts that potentially it will need to pay back to those retirees once the Court resolves the Amended Complaint.

With no further recourse at the PBGC on the recoupment issue, the Retired Pilots bring the matter to the Court and seek preliminary relief.  All of the requirements for a preliminary injunction halting the PBGC's recoupment efforts and maintaining the *status quo* decidedly favor the Retired Pilots -- namely, likelihood of success on the merits, irreparable harm, the balance of hardships, and the public interest.  First, there is a substantial likelihood that the Retired Pilots will succeed in showing that the PBGC's benefits determinations were improperly calculated

under both the Plan and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§§ 1001 *et seq.*  The Court does not need to delve into the specifics of each of the many claims

in the Amended Complaint at this early stage, because if the Retired Pilots prevail on any one of

at least the chief claims the purported overpayments would be eliminated.  The Retired Pilots

will below summarize their case on three of the chief claims in order to demonstrate their

likelihood of success on the merits.

Second, the significant harm threatened by the PBGC's contemplated recoupment is

undeniable.  Congress and this Court have recognized the discrete and cognizable harm --

straightforwardly calling it "hardship" -- caused by recoupment actions, particularly when taken

against pensioners living on fixed incomes.  Indeed, when this case was before the Court at an

earlier stage (during the long period in which the Retired Pilots were required to exhaust their

administrative remedies), the PBGC relied on the hardship caused by recoupment to avoid a

preliminary injunction compelling it to increase payments at that point to amounts to which the

Retired Pilots said they would be entitled once all administrative proceedings were completed.

Furthermore, the hardship that the Retired Pilots currently face is more than simply the recapture

of funds on which they rely for daily living, for the PBGC has presented them with a Hobson's

choice -- either acknowledge that they owe a debt to the PBGC and thereby undermine perhaps

even fatally their current lawsuit, or lose any opportunity for favorable installment payment plans

for paying back the money.  The Court must intervene to maintain the status quo, so that the

Retired Pilots are not irreparably harmed through the loss of beneficial repayment plans.

Third, the balance of hardships clearly favors the Retired Pilots, where the PBGC will not

be harmed by awaiting a few more months (after its own years of delay) for completion of this

action for judicial review before securing return of any purported overpayments, while the

hardship imposed upon the Retired Pilots (as just noted) will be substantial.  Fourth, the public

interest also favors entry of a preliminary injunction, since preliminary relief will uphold the

stated Congressional purpose of "prevent[ing] the 'great personal tragedy' suffered by

employees whose vested benefits are not paid when pension plans are terminated," *Nachman

Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 374-75 (1980) (quoting ERISA's legislative

history)), will permit judicial review to take place unburdened by the pressure of recoupment,

and will eliminate the unseemly and wasteful prospect of the PGBC demanding repayment of

funds that it will only have to return again to the Retired Pilots in the event they succeed in this

lawsuit.

In short, under the circumstances presented in this case, the balance of equities tilts

heavily against permitting the PBGC to require the Retired Pilots to pay back significant sums

while a legitimate dispute over the respective financial obligations of the parties remains

pending.  The Court should grant the requested preliminary injunction to maintain the status quo

until the Court resolves the case on the merits.

## STATEMENT OF FACTS

Some of the factual and regulatory background relevant to this case has been laid out in

detail in three prior decisions in the earlier litigation involving some of the Retired Pilots against

the PBGC.  *See Boivin v. US Airways, Inc.*, 297 F. Supp. 2d 110 (D.D.C. 2003) ("*Boivin I*");

*Boivin v. US Airways, Inc.*, No. 03-2373 (JR), 2005 U.S. Dist. LEXIS 4546 (D.D.C. Mar. 24,

2005) ("*Boivin II*"); *Boivin v. U.S. Airways, Inc.*, 446 F.3d 148 (D.C. Cir. 2006) ("*Boivin III*").

We review some of that material briefly again here, as necessary for resolution of this motion.

4

A.    **The Underlying Dispute Between the Parties About the Extent of the PBGC's Obligation to Guarantee the Retired Pilots' Pension Benefits**

The Retired Pilots' Amended Complaint is brought pursuant to ERISA, as well as the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Title IV of ERISA, 29 U.S.C. §§ 1301-1371, establishes an insurance program and other safeguards to protect pension plan participants against the loss of anticipated retirement benefits upon the termination of plans that have insufficient funds to cover vested benefits. Congress enacted these provisions to further employees' legitimate expectations of pension benefits after years of dedicated service. *See Page v. Pension Benefit Guar. Corp.,* 968 F.2d 1310, 1316 (D.C. Cir. 1992); *Rettig v. Pension Benefit Guar. Corp.,* 744 F.2d 133, 155 (D.C. Cir. 1984).

The PBGC administers the mandatory government pension insurance program set forth in Title IV. The PBGC collects insurance premiums from employers on a regular basis and, in return, guarantees the payment of all non-forfeitable (*i.e.*, vested) benefits. *See* 29 U.S.C. § 1322. When a plan covered under Title IV terminates with insufficient assets to satisfy its pension obligations with respect to its employees, the PBGC awards insurance benefits from its funds, up to a statutory maximum. *See id.* § 1322(b)(3) (setting forth statutory maximum); *see also id.* § 1361 (noting that insurance benefits shall be paid from the funds maintained by the PBGC containing employer premiums).

Pursuant to another provision in Title IV (29 U.S.C. § 1342(b)), the PBGC can also become the terminated plan's administrator or trustee, though it is not required to and another party can act as trustee. When the PBGC does so, it must then distribute any remaining assets of the terminated plan to its participants and beneficiaries, according to the plan's terms and rules established in ERISA. In the event the PBGC becomes trustee of the terminated plan, it also has

duties as a plan fiduciary pursuant to 29 U.S.C. § 1342(d) that, if breached, are subject to remedy under ERISA. *Pineiro v. Pension Benefit Guar. Corp.*, 318 F. Supp. 2d 67, 87 (S.D.N.Y. 2003).

In 2002, US Airways filed a petition for bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Virginia. During those proceedings, US Airways asked the Bankruptcy Court to terminate the Plan pursuant to the "distress termination" provision of ERISA, which required US Airways to demonstrate that it was in financial distress as defined in 29 U.S.C. § 1341(c). Ultimately, over the opposition of the Retired Pilots and others, the Bankruptcy Court agreed to a distress termination of the Plan. *See In re US Airways Group, Inc.*, 296 B.R. 734 (Bankr. E.D. Va. 2003).

After termination of the Plan on March 31, 2003, the PBGC sought to and did become the trustee for the Plan. *See Boivin III*, 446 F.3d at 151. In that capacity, it began paying estimated benefits for the terminated Plan. The benefits were significantly less than the vested pension benefits the Retired Pilots have asserted they are entitled to receive under the Plan and ERISA, and certain of the Retired Pilots responded by challenging those benefits both within the PBGC's administrative process and before this Court. The federal court challenge was ultimately dismissed (in *Boivin III*) without prejudice because of the failure at the time fully to exhaust administrative remedies with the PBGC. *Id.* at 158-59. The Retired Pilots thus persevered, through years of administrative proceedings, to complete their cases within the PBGC administrative process.

On February 29, 2008, the PBGC Appeals Board resolved many of the Retired Pilots' administrative claims and decreed that it had taken final agency action with respect to them. *See* Exh. A to Am. Compl. In its final decision, the PBGC Appeals Board rejected *all* significant grounds for appeal raised by the Retired Pilots. To do so, the PBGC adopted, in the Retired

6

Pilots' view, unprecedented and indefensible positions, ultimately whittling their benefits claims down so far that it found the limited funding remaining in this Plan -- a Plan which had been *terminated for distress* -- was sufficient to cover all of their non-forfeitable benefits. Based on that determination, the PBGC then paid nothing further. So while the Retired Pilots would receive just a fraction of the pension benefits on which they had relied for a lifetime, the PBGC paid not a single dollar from its insurance funds. As of this date, the PBGC still has not resolved administrative appeals of many individuals who in the Plan whose cases additionally raise disability issues. *See* Am. Compl. ¶ 27.

On June 20, 2008, the Retired Pilots commenced this action for injunctive and other equitable and declaratory relief sufficient to redress violations of and to enforce ERISA and the APA.

**B.    The PBGC Tries To Alter the Status Quo during the Pendency of the Litigation by Attempting to Collect Benefits It Claims To Have "Overpaid"**

Soon after the February 29, 2008 decision by the PBGC Appeals Board, some Retired Pilots began receiving initial notices from the PBGC seeking recoupment of what the PBGC deemed to be overpayments. Copies of sample recoupment notices are attached to this motion as Exhibit A. The PBGC has indicated to counsel for the Retired Pilots that the agency seeks recoupment from in total approximately 100 Retired Pilots.

The recoupment notices assume the validity of the PBGC's benefits calculations -- an assumption that the Retired Pilots' vigorously disagree with, have disputed for many years, and have now challenged in federal court after exhausting their administrative remedies. In a tacit acknowledgement of the hardship imposed by recoupment, the initial notices offered an "installment payment agreement." But the "agreement" contains catches. First, each affected Retired Pilot must acknowledge a debt owed to the PBCG for benefits paid that the individual

was not entitled to receive.  Second, each Retired Pilot was instructed by the PBGC to execute an agreement form "as soon as possible" in order to pay any "debt" in installments.  Third, the agreement forbids the altering of the PBGC's proposed terms "in any manner."  The PBGC required these concessions purportedly in exchange for its agreement not to demand payment at once of the entire amount.  *See generally* Exh. A to this Mem.

In June 2008, counsel for the Retired Pilots contacted counsel for the PBGC, informed counsel of the imminent lawsuit raising legal challenges to the PBGC's decision, and requested that recoupment efforts be stayed during the pendency of the litigation.  *See* Exh. B to this Mem. On July 11, 2008, the PBGC formally refused the Retired Pilots' request for a stay of recoupment, explaining "we do not think the threat, or the actual filing, of a lawsuit is sufficient reason to stay our recoupment and recovery efforts."  Exh. C at 1 to this Mem.

Starting on approximately August 1, 2008, the Retired Pilots affected by recoupment began receiving a second recoupment notice.  Samples of these second notices are contained at Exhibit D.  This time, the PBGC threatened that, if the Retired Pilots did not agree to the terms of the installment agreement within 30 days, they would lose any opportunity for repayment in installments.  Additionally, the PBGC sent to a collection agency the alleged debt of at least one Retired Pilot (*see* Exh. E to this Mem.), and the Treasury Department has now sent him notice that his Social Security payments will be reduced to offset the purported debt to the PBGC.  *See* Exh. F to this Mem.  On August 27, 2008, Counsel for the Retired Pilots wrote to the PBGC to "preserve, during the district court's consideration of the preliminary injunction motion, the option of repaying any purported overpayments in installments rather than in a single lump sum payment."  Exh. G. to this Mem.

## ARGUMENT

Fed. R. Civ. P. 65 permits this Court to enter a preliminary injunction whenever the balance of equities favors the moving party. In considering whether to grant preliminary relief, the court must consider whether: (1) the party seeking the injunction has a substantial likelihood of success on the merits; (2) the party seeking the injunction will be irreparably injured if relief is withheld; (3) an injunction will not substantially harm other parties; and (4) an injunction would further the public interest. *See CSX Transp. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005) (citing *Serono Lab. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)). "These factors interrelate on a sliding scale and must be balanced against each other." *Serono Lab.*, 158 F.3d at 1318. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Accordingly, the D.C. Circuit has "often recognized that injunctive relief may be justified, for example, "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Conversely, where the showing on the last three factors is strong, it is enough that the movant raises questions "going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground . . . for more deliberative investigation." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (internal quotation marks omitted).

In this case, as we will show, all four factors favor the Retired Pilots. Moreover, as a threshold matter, it is important to note that the Retired Pilots seek what has sometimes been referred to as a "prohibitory preliminary injunction," rather than a "mandatory preliminary injunction." *Boivin I*, 297 F. Supp. 2d at 116 n.5. That is, they request an injunction "prohibiting a party from taking further action" rather than "an injunction ordering a party to

take an action." *Id.* Some courts have held that mandatory injunction requests (*i.e.*, the type *not* sought here) must "'meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very dangerous damage will result from the denial of the injunction.'" *Id.* (quoting *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 151 (D.D.C. 2002)). In this respect, the Retired Pilots current request for preliminary relief differs from the one they sought in *Boivin I*: whereas they seek currently to prohibit the PBGC from taking recoupment action during the pendency of this case, they sought in *Boivin I* to order the PBGC to increase benefits payments pending completion of the earlier litigation. Thus, if the Court were to ascribe to differing standards of review for prohibitory and mandatory injunctions, the Retired Pilots' current request presents an easier case for preliminary relief than the prior one, since "a non-heightened standard" this time would apply. *Id.*

## I.    THE RETIRED PILOTS ARE LIKELY TO PREVAIL ON THE MERITS

Plaintiffs have a strong likelihood of success on each and every claim raised in the Amended Complaint. This is, however, a complicated case, and there is no need for the Court to conduct an exhaustive analysis of each of the complex claims at this time. Here, the PBGC is seeking to alter the status quo by forcing the Retired Pilots to return prior benefits payments immediately. Success by the Retired Pilots on *any* of their principal claims in the Amended Complaint will reduce or eliminate any purported benefits overpayments. Therefore, if the Court concludes that *one* of the Retired Pilots' claims is serious and substantial at this early stage of the proceedings, that finding alone would warrant entry of an order maintaining the status quo while the dispute is resolved, with a strong showing on the other preliminary-injunction factors. *See Holiday Tours*, 559 F.2d at 844 (D.C. Circuit counseling against any unnecessary or "an exaggeratedly refined analysis of the merits at an early stage in the litigation").

Plaintiffs easily can make the necessary showing of likelihood of success on the merits as to any of a number of their claims. The PBGC arrived at its benefits determinations through a host of arbitrary, unreasonable, and capricious determinations based on interpretations of the statute and pertinent Plan provisions that will not withstand scrutiny, particularly where the PBGC was required to act as a fiduciary toward the Retired Pilots. A limited discussion of a few of the claims in the Amended Complaint is all that is necessary to see why the Court should find the likelihood of success criterion satisfied.

A.    **The Retired Pilots Are Likely to Succeed on Claim One, Which Challenges the PBGC's Creation of a Disqualifying Effective Date for a Plan Amendment Providing Substantial Benefit Enhancements**

Claim One of the Amended Complaint involves the "effective date" of a Plan Amendment adopted on December 4, 1997 and expressly made effective on January 1, 1998 by the Employer/Trustee of the Plan and the collective bargaining representative for the Plan Participants. The Plan Amendment at issue created an Early Retirement Incentive Program ("ERIP"), also known as the "Magic Five" benefit, which allowed eligible pilots who retired early to have their benefits calculated by adding: (1) five years to the pilot's age, or (2) five years of credited service, or (3) whichever combination of additional age and service (up to a total of 5) that produced the highest benefit.

The Retired Pilots contend in Claim One that, under ERISA, the Magic Five benefit falls within what is known as "Priority Category 3" pursuant to 29 U.S.C. § 1344(a)(3). In 29 U.S.C. § 1344(a), ERISA creates various priority categories as to the benefits that the trustee shall pay with a terminated plan's remaining assets. The PBGC, as the Plan's trustee, determined that there were sufficient assets remaining in the Plan to pay all benefits through Priority Category 3 (*see* Am. Compl. ¶ 48), and therefore classification in this category is imperative in order to

11

receive the particular benefit from remaining Plan assets.  Priority Category 3, however, is

limited to benefits "based on the provisions of the plan (*as in effect during the 5 year period*

*ending on [the] date [of termination]*), under which such benefit would be the least." 29 U.S.C.

§ 1344(a)(3) (emphasis added).  As alleged in Claim One, the Magic Five benefit is "based on

[a] provision of the plan" that was adopted on December 4, 1997 and that became effective on

January 1, 1998 with the effective date of a new collective bargaining agreement; it was,

accordingly, "in effect" for the entirety of the five-year period ending on the date of termination,

which was March 31, 2003.  Am. Compl. ¶¶ 47-57.

   The PBGC concluded that the Magic Five benefit is not entitled to Priority Category 3

status by ignoring the date of the amendment adopting the Plan provision and the effective date

contained in the collective bargaining agreement.  Instead, the PBGC determined Priority

Category 3 status by reference to whether *the benefit itself* would have been *receivable* more

than five years before the Plan termination date.  Since the first benefits were not paid under the

Plan provision outlining the Magic Five benefit until May 1998 -- conveniently for the PBGC's

purposes a little over a month short of the five-year period prior to the March 31, 2003

termination -- the PBGC found that the Plan provision detailing the Magic Five benefit did not

satisfy the five-year rule for Priority Category 3 status and that the Magic Five benefit could not

be paid from remaining Plan assets.  The PBGC cited not a single court decision or even any

previous PBGC decision that supported its conclusion that a plan provision is only "in effect" if

the benefits it provides are received or paid at the relevant time.  *See* Exh. A to Am. Compl. at 6-

13.

   The PBGC's approach violates the plain language of the statute, which directs the PBGC

to determine the effective date by looking to the whether *the provisions of the Plan* at issue were

in effect five years prior to termination.  The statute makes no mention of whether *the benefit itself* was in effect, let alone actually being received or paid at the time.  The PBGC's position also would ascribe to Congress the intention unworkably to shift Priority Category 3 determinations on a case-by-case basis, since Plan participants each might actually begin receiving or being paid a benefit at different times depending on their individual pension circumstances.

Furthermore, Congress -- in ERISA's legislative history -- has made clear that the PBGC should look to the date chosen by the parties to the collective bargaining agreement as the date a plan provision is in effect, which in this case makes the Magic Five Plan provision in effect in January 1998, well before the March 31, 1998 five-year cutoff point.  Back in 1981, the Sixth Circuit issued an unpublished decision concerning one of ERISA's provisions covering the PBGC as guarantor (as opposed to trustee) that uses the same term "in effect" as a limitation on the insurance guarantee.  The decision was *Lear Siegler, Inc. v. Pension Benefit Guaranty Corp.*, Nos. 79-1361, 1362 & 1363, 1981 U.S. App. LEXIS 14352 (6th Cir. Apr. 13, 1981), and the ERISA provision is 29 U.S.C. § 1322(b)(7).  Under § 1322(b)(7)(B), the PBGC guarantees benefits to a certain maximum based on "the number of years . . . the plan or amendment . . . has been *in effect*."  (Emphasis added.)  In *Lear Siegler*, the Sixth Circuit made no reference to the effective date of the collective bargaining agreement as the time from which a plan provision had been "in effect"; instead, it held that a plan provision scheduling an increase in benefits on May 1, 1975 -- where the plan provision was contained in a collective bargaining agreement that long had been in place -- was "in effect" only as of May 1, 1975.

In response, Congress slightly amended the language in § 1322(b)(7) to its current form.  In so doing, it emphasized that the Sixth Circuit's decision was wrong because it ignored the

effective date of the collective bargaining agreement as the date a plan provision was first "in

effect." The Committee Report describing the amendment explained: "The purpose of this

amendment is to avoid the unduly restrictive interpretation of the benefit guarantees under the

Sixth Circuit decision, *and to recognize the fact that benefit increases are commonly made*

*effective on the anniversary dates of a collective bargaining agreement.*" H.R. Rep. No. 99-300,

at 307 (1985), *reprinted in* 1986 U.S.C.C.A.N. 756, 958 (emphasis added). In the current case,

the PBGC -- as Congress instructed it *not* to do, and as the Sixth Circuit did in its discredited

*Lear Siegler* decision -- disregarded the effective date of the collective bargaining agreement as

the date an ERISA plan provision was "in effect." *See generally* PBGC Opinion Letter 77-166

(Oct. 7, 1977), http://www.pbgc.gov/oplet/77-166.pdf. ("[W]e will look to the adoption and

effective dates of the collective bargaining agreements for the purpose of applying the phase-in

rule under Section 4022(b)(8) of ERISA.").

The PBGC's conclusion as to the point at which the Plan amendment containing the

Magic Five benefit first had been "in effect" also contradicts its own regulation interpreting

§ 1344. The PBGC regulation, 29 C.F.R. § 4044.13(b)(6), provides that "[f]or purposes of this

section, a plan or amendment is 'in effect' on the later of the date on which it is adopted or the

date it becomes effective." This regulation accordingly focuses on the effective date of the "plan

or amendment" -- not the date on which any specific benefit increase pursuant to the Plan

amendment would be receivable or paid.

Finally, the PBGC's decision on when the Magic Five Plan amendment was "in effect"

cannot be squared with the D.C. Circuit's distinction between *effective* dates of legal provisions

and the *operative* dates of legal provisions. *See Am. Fed'n of Gov't Employees v. Campbell*, 659

F.2d 157, 162 (D.C. Cir. 1980). The are not, as the D.C. Circuit has expressly held,

synonymous. The "operative date" is the date when activity anticipated under a legal provision "actually" occurs (*id.* at 162, 163), whereas the "effective date" for the legal provision is a date chosen by the provision's drafters as the time when legal coverage under the provision shall commence (even if this is to be a "retroactive" period). *Id.* at 158; *accord id.* at 163. The PBGC's construction that the Plan provision encompassing the Magic Five benefit went into effect on the day the first benefits were paid mistakes the Plan provision's operative date for its effective date. Indeed, the PBGC in its appeals decision overtly focused its analysis on "the *operative* date for the ERIP benefit increase [being] . . . no earlier than May 1, 1998." Exh. A to Am. Compl. at 9. But the drafters of the Plan amendment chose the date the collective bargaining agreement went into effect as the *effective date*, with that date being more than five years prior to the Plan's termination.

In sum, in light of the relevant statutory language, pertinent legislative history, the PBGC's own regulations, and case law on effective versus operative dates, the Retired Pilots have a strong chance of success on their allegations in Claim One that the Plan provisions outlining the Magic Five benefit were "in effect" more than five years prior to termination and therefore that the Magic Five benefit must be categorized as a Priority Category 3 benefit. At a minimum, the Retired Pilots have presented on Claim One questions sufficiently "serious, substantial, difficult and doubtful, as to make [the claim] . . . fair ground . . . for more deliberative investigation," assuming a strong case on the other preliminary injunction factors. *Wash. Metro. Area Transit Auth. Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).[1]

---

[1] The PBGC may seek to hide behind agency deference in order to save its insupportable construction that a plan provision is "in effect" only when benefits under it are actually received. But the Court should, in the circumstances of this case, look with a jaundiced eye on any such invocation of deference. In
(footnote continued on next page)

**B.     The Retired Pilots Are Likely To Succeed on Claim Two, Which Asserts that the PBGC Improperly Failed to Categorize for Asset Distribution Purposes Plan Provisions Incorporating a Federal Statutory Tax Section**

Plaintiffs are also likely to succeed on Claim Two in the Amended Complaint, which challenges the PBGC's categorization -- again as outside of Priority Category 3 -- of longstanding Plan provisions that incorporated a statutory tax provision.  Section 415(b) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 415(b), is a tax provision that creates statutory limits on the amount of benefits a pension plan can pay and still qualify for favorable tax treatment.  Internal Revenue Service ("IRS") regulations require that plan provisions "preclude the possibility that the limitations imposed by section 415 will be exceeded."  IRS Reg. § 1.415(a)-1(d)(1).  Consequently, section 7.1 of the Plan (1994 and 2001 versions, *see* Exhs. C & E to Am. Compl.) prohibits the payment of pension benefits to Plan participants in excess of the limitations contained in § 415(b).  This provision of the Plan *remained the same* during the five years prior to Plan termination, although the amount of the statutory cap contained in § 415(b) changed with Congressional (or other IRS) changes to the statutory maximum payment.  Under section 7.2 of the Plan, which likewise remained the same during the five years prior to Plan termination, the Plan incorporates Congressional changes to the statutory maximum payment.

---

(footnote continued from previous page)
rejecting the Magic Five benefit for Priority Category 3 status, the PBGC was not acting as a federal regulatory agency but instead as an ERISA plan fiduciary.  The decisions of ERISA fiduciaries on statutory construction matters are not entitled to any special deference, and the overall rule is that benefits determinations by ERISA plan fiduciaries shall be -- in accordance with the law of trusts -- reviewed *de novo* in court, absent some indication in the plan to the contrary.  *See Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008).  Even if a plan indicates that deferential court review should exist, that deference may be minimized when the fiduciary -- as here -- has the dual role of payer of benefits and decision-maker on benefits, because the fiduciary will be deemed to operate under the conflict of interest of potentially seeking to save itself money by denying the benefits.  *Id.*

The PBGC refused to give Priority Category 3 status to the benefits resulting from the Plan provisions incorporating § 415(b) increases enacted by Congress during the years just prior to termination. It so refused because of 29 U.S.C. § 1344(a)(3), resting once more on § 1344(a)(3)'s limitation on categorization in priority Category 3 to benefits "based on provisions of the plan" that were "in effect for the 5-year period" prior to termination. *See* Exh. A to Am. Compl. at 21. Notwithstanding that it is undisputed that the Plan provisions (sections 7.1 and 7.2 of the Plan) incorporating IRC § 415 were in place throughout the five years prior to termination, the PBGC held that Congress's enactment of legislation in 2001 to change the maximum benefit amount (from $90,000 to $160,000 annually), which then increased benefits under sections 7.1 and 7.2 of the Plan, constituted "provisions of the plan" that came into being within the five-year period. *See* Exh. A to Am Compl. at 19-20. Thus, in the PBGC's view, recent acts of Congress that enhance benefits contained in longstanding benefits provisions are to be treated as Plan provisions in place less than five years. The result is that the PBGC ratcheted down from a potential high of $160,000 annual pension amounts for Retired Pilots to be paid as Priority Category 3 benefits from remaining Plan assets to $90,000.

The PBGC's determination again ignores the actual language of § 1344(a)(3), which focuses on whether the relevant *Plan provisions* were in effect for five years, not whether the benefit amount itself was fixed for five years. Not a word in any Plan provision concerning § 415 changed in any respect during the five-year period prior to termination. The benefits that those static Plan provisions produce consequently are "based on provisions of the plan" that were "in effect for the 5-year period" prior to termination and therefore are, under the actual terms of § 1344(a)(3), subject to Priority Category 3.

The PBGC's determination also collides directly with the D.C. Circuit's decision in *Rettig v. Pension Benefit Guaranty Corp.*, 744 F.2d 133 (D.C. Cir. 1984). *Rettig* concerned whether benefits that vested pursuant to plan provisions added within twelve months of a plan's termination "result[ed] from a plan amendment which was made, or became effective . . . within 60 months before the date one which the plan terminates," so that they were disqualified for inclusion in the PBGC's insurance guarantee. 29 U.S.C. § 1322(b)(1)(B). Though the vesting provisions plainly were added within the disqualifying five-year period, the catch was that their addition to the ERISA plan was necessitated by mandatory vesting rules enacted by Congress in ERISA. Nonetheless, the PBGC ultimately held that the vested benefits, even if prompted by ERISA, resulted from recent plan amendments and therefore were not insured. Challenging the PBGC's decision, participants in the plan contended "that their entitlement to benefits result[ed] from ERISA, not from a plan amendment." 744 F.2d at 143.

The D.C. Circuit sided with the participants. The plan amendment here did not, the Court said, have the character of simply a "recent plan amendment that increased the amount of monthly benefits to which vested participants were entitled." *Id.* at 146. Rather, the plan amendment creating vested benefits was one that "result[ed] directly from ERISA," where Congress -- not the plan's sponsor -- was the primary actor in enhancing the benefits. *Id.* at 150. Accordingly, the vested benefits, while technically resulting from new plan provisions, were more closely tied to Congressional action. In reaching its conclusion, the D.C. Circuit emphasized that any doubts had to be resolved in the participants' favor, because of the "overwhelming [ERISA] purpose of protecting the legitimate expectations harbored by millions of employees of a measure of retirement security at the end of many years of dedicated service." *Id.* at 155. The Court also emphasized that "remedial statutes are to be liberally construed to

effectuate their purposes" and that "[t]he PBGC itself has successfully argued in other [ERISA] cases that 'coverage under [ERISA] should be liberally construed to provide the *maximum degree of protection* to working men and women . . . [while] exemptions should be confined to their narrow purpose.'" *Id.* at 155 n.54 (quoting *Connolly v. Pension Benefit Gaur. Corp.*, 581 F.2d 729, 732 (9th Cir. 1978) (emphasis added).

*Rettig* requires rejection of the PBGC's conclusion with respect to the Retired Pilots that benefits enhanced because of Congressional action are really new plan amendments. Just as in *Rettig*, where the D.C. Circuit found that newly created benefits tied to Congressional action were not the result of recent plan amendments for purposes of the PBGC's insurance obligations (under 29 U.S.C. § 1322), so too the benefits that result from Congress's increase in the § 415 limit are not "based on plan provisions" in effect for less than five years. If anything, this case is an easier one in which to favor the participants than *Rettig*, because in *Rettig* the plan sponsor actually had enacted plan amendments creating the vested benefits but the Court still construed the benefits as resulting from legislative acts rather than from plan amendments. In contrast, the Plan terms concerning incorporation of § 415 did not change at all within the five-year period and thus it follows even more forcefully here that the benefit increases deriving from legislation increasing § 415 limits increases are based on Congressional action instead of recent plan amendments. And these conclusions are only further bolstered by the D.C. Circuit's instructions in *Rettig* that ERISA must be construed in the participants' favor and that exceptions limiting benefits (such as the five-year limit in § 1344(a)(3)) are to be narrowly construed.

For these reasons, the Retired Pilots have a substantial chance of success on Claim two of the Amended Complaint, just as with Claim One. And again at a minimum, they have posed

serious questions worthy of deliberative analysis, assuming a strong case on the other

preliminary injunction factors.

C.   **The Retired Pilots Are Likely To Succeed on Claim Ten, Which Asserts that the PBGC Failed to Provide Insurance Benefits to Make Up Shortfalls That Exist After Distribution of Remaining Plan Assets**

Plaintiffs are also likely to succeed on Claim Ten in the Complaint, which relates to the

PBGC's insurance obligations under 29 U.S.C. § 1322, as opposed to its trustee obligations to

distribute the Plan's remaining assets under 29 U.S.C. § 1344. This claim alleges that the PBGC

improperly construed its maximum guarantee obligation, thereby avoiding insurance liability for

non-forfeitable benefits contrary to statutory requirements. *See id.* § 1322(b)(1), (b)(7). In this

instance, the PBGC determined that, because the Plan assets distributed to the Retired Pilots

exceeded the amount of the PBGC's maximum guarantee, it owed no insurance, notwithstanding

that the overall amounts received by the Retired Pilots nowhere neared the vested benefits

promised under the Plan. In essence, the PBGC said that its insurance obligation is satisfied if

the Plan asset distribution by the trustee exceeds the maximum amount the PBGC as insurer is

required to pay. The PBGC did not adopt the approach that its insurance obligation must be

*added* to the Plan asset distribution for each Retired Pilots, in the event all vested benefits are not

paid from the remaining assets of the terminated Plan.

The PBGC's approach violates the terms of ERISA. The touchstone for the PBGC's

insurance obligation is that the PBGC "shall guarantee . . . the payment of *all* nonforfeitable

benefits." 29 U.S.C. § 1322(a) (emphasis added). The use of the word "all" indicates that the

PBGC obligation continues, up to its own maximum insurance threshold, until all vested benefits

are satisfied. And another section of ERISA, 29 U.S.C. § 1361, states that the "amounts

guaranteed by the corporation  . . .shall be paid by the corporation *only out of the appropriate*

*fund*," which is a reference to the funds containing insurance premiums paid over the years by employers. (Emphasis added.) Contrary to this straightforward statutory command, the PBGC's approach results in the insurance guarantee being satisfied by the Plan's funds in trust (not the insurance in government funds), since the PBGC claims that the asset distribution -- if it exceeds the maximum PBGC insurance threshold -- satisfies the PBGC's insurance guarantee.

The ERISA legislative history confirms that the PBGC's insurance guarantee is faulty. The Senate Report reflects the following unambiguous Congressional instruction regarding the distribution of remaining plan assets:

> Plan assets are to be allocated, in order, to voluntary contributions of employees, mandatory contributions of employees, benefits "in pay status" for at least three years, and insured benefits (other than those falling into any of the prior categories). Where all these categories could be *paid in full* from plan assets, there would be no insurance corporation losses.

S. Rep. No. 93-383, at 84 (1973) (emphasis added). That language compels the conclusion that the PBGC must utilize its own funds to make up the difference when the articulated categories of benefits (*i.e.*, § 1344's Priority Categories) can not be paid *in full* from remaining plan assets. Moreover, Congress intended that not only would the PBGC provide coverage for "vested retirement benefits guaranteed by the plan," but that insurance benefits would also be provided for "nonbasic benefits although those [nonbasic] insured benefits, together with the payment of guaranteed retirement benefits, exceeds the maximum limitation." H.R. Rep. No. 93-1280, at 368, 370 (1974) (Conf. Rep.). If Congress intended that insurance benefits for non-basic benefits could exceed the maximum limitations, it defies logic to permit the PBGC to absolve itself of responsibility for basic, non-forfeitable benefits.[2]

---

[2] Other legislative history materials similarly show that Congress thought the PBGC's insurance obligation would be added on top of the asset distribution where all nonforfeitable benefits were not satisfied by the distribution of remaining plan assets by the trustee. S. 4, 93d Cong., §§ 402(a), (b),
(footnote continued on next page)

Still further, Congress envisioned that the PBGC's insurance obligation would "provide the same kind of guarantee that a bank depositor has in the Federal Deposit Insurance Corporation." 119 Cong. Rec. S16912 (daily ed. Sept. 19, 1973) (statement of Sen. Kennedy); *see also* Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 94th Cong., *Legislative History of the Employee Retirement Income Security Act of 1974*, Pub. L. No. 93-406, Vol. III, 4794 (Comm. Print Apr. 1976) (statement of Sen. Bentsen) ("This bill establishes a program of pension insurance -- modeled after the Federal Deposit Insurance Corporation for banks -- which will insure that after this law goes into effect all employees will be protected in the event that their plan does terminate before becoming fully funded."); *id.* at 4833 ("A new federal agency, the Pension Benefit Guaranty Corporation -- similar to the Federal Deposit Insurance Corp., which protects bank depositors in the event of bank failure -- is to be set up to protect you against abrupt cancellation of your pension benefits if your plan goes bankrupt."), and reprinting an article by Sylvia Porter, *Your Money's Worth: Pension Reform at Last*, Wash. Star-News, Aug. 8, 1974 at 4; Committee on Ways and Means, United States House of Representatives, *Written Statements Submitted by Interested Organizations and Individuals on H.R. 10470, Retirement Income Security for Employees Act*, at 1045 (Oct.1, 1973) (statement of Rep. Waldie) ("Should a firm close down or lack enough funds to meet its pension obligations, these bills provide for required insurance against that contingency to be taken out by the employer. This insurance would be similar to the guarantee a bank depositor has with the Federal Deposit Insurance Corporation."); Committee on Ways and Means, United States House of Representatives, *Written Statements Submitted by Interested Organizations and Individuals on*

---

(footnote continued from previous page)
404(a), (b); H.R. 12781, 93d Cong., § 409(b) & (d) (2d Sess. 1974). (referring to PBGC obligation as a form of insurance, not a limitation on benefits).

*H.R. 10470, Retirement Income Security for Employees Act*, at 934 (Oct. 1, 1973) (statement of Rep. Roush) ("In debate on the Senate floor this insurance proposal was suggested as the same kind of guarantee for an employee that a bank depositor has in the Federal Deposit Insurance Corporation. The same kind of certainty should accompany pension promises . . . When you look at it this way, you wonder how we could have taken so long in coming up with this kind of proposal."); 120 Cong. Rec. H1341 (daily ed. Feb. 26, 1974) (statement of Mr. Fascell) ("There may occur, however, unexpected business failures, bankruptcy, or fund mismanagement which inadvertently lead to plan termination in spite of the safeguards provided in this bill. For these unusual cases, the bill establishes termination insurance similar in operation to the Federal Deposit Insurance Corporation which will require a contribution from pension benefit plans which in turn will be paid out to those which are terminated.").

The FDIC pays its insurance obligation of $100,000 *in addition* to any amounts otherwise received by a depositor from a defaulting bank's assets. More specifically, during a single bank failure, the FDIC often acts as both insurer and receiver. *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 198 (2d Cir. 2004). One transaction the FDIC employs in executing its role is a deposit payoff, in which it quickly pays insured depositors up to the insurance maximum of $100,000. *See* 12 U.S.C. § 1821(f); 12 C.F.R. § 330.3(i). Acting as receiver, the FDIC then liquidates the assets of the failed institution in a manner that maximizes the net present value return from the sale while minimizing losses. *See* 12 U.S.C. § 1821(d)(13)(E). Creditors, including uninsured depositors, are paid dividends from the funds realized from the liquidation. If the FDIC anticipates that a dividend will be available to depositors, it may even make advance dividend payments before the sale based on an estimate of that dividend. Thus, in the FDIC model, an individual is not limited to recovery of the FDIC's insurance maximum if his loses

exceed that maximum. Instead, the FDIC pays its guarantee first and then divides up the remaining bank assets among depositors whose holdings exceed the guaranteed amount. Consistent with the FDIC model Congress intended, the PBGC should pay pensioners their guaranteed amount aside from any distribution from remaining plan assets, if the distribution does not cover the individual's entire loss.

Despite these clear indications from the ERISA statute and its legislative history, the PBGC maintains that it is not obligated to use its funds to ensure that the Retired Pilots receive the full non-forfeitable benefits to which they are entitled. Again, under the PBGC's construction of its obligation, if remaining Plan assets are not sufficient to pay *all* non-forfeitable benefits (whether or not in Priority Category 3), the PBGC is not required to use its funds to make up the shortfall if the amount paid from the assets exceeds the PBGC's maximum insurance liability. If this construction were valid, the PBGC would be entitled to withhold funds it derived from US Airways since 1974 to cover the insured, non-forfeitable benefits of US Airways' pilots even though the participants and beneficiaries indisputably are not receiving all non-forfeitable benefits from Plan assets.

Thus, as with Claims One and Two, the Retired Pilots have a strong chance of success on Claim Ten, and have at least raised substantial question for further deliberation, assuming a substantial case on the other preliminary injunction factors.[3]

---

[3] The fact that we here have focused on Claims One, Two, and Ten should not be interpreted as some indication that the other claims in the Amended Complaint are not equally strong. The claims referenced here are representative of the overall strength of the Retired Pilots' case.

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF THE REQUESTED PRELIMINARY RELIEF

Preliminary injunctive relief is proper to protect a movant from imminent harm when another party threatens to suddenly alter the *status quo* in a manner that would deprive the movant of its rights. Indeed, "'[t]he usual role of a preliminary injunction is to preserve the status quo pending the outcome of litigation.'" *Cobell v. Kempthorne,* 455 F.3d 301, 314 (D.C. Cir. 2006) (quoting *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.,* 412 F.2d 165, 168 (D.C. Cir. 1969)). While it is true that general financial injuries often do not suffice to meet the irreparable harm component of the preliminary injunction standard, *see Boivin I,* 297 F. Supp. 2d at 118, "extraordinary circumstances" can transform "mere" financial injuries into irreparable harm. 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1, at 152 (2d ed. 1995); *see also Wash. Metro. Area Transit Auth. Comm's v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977) (applying irreparable harm standard to distinguish between "mere" economic loss and other more discrete and severe types of economic harm which can meet the standard).

Such extraordinary circumstances exist here. If the PBGC is allowed to continue its recoupment efforts, the consequences for the Retired Pilots will be immediate and jarring. Many of the Retired Pilots are over 90 years old, and the median age is 67. *See* Decl. of Thomas G. Davis ¶ 5 (Exh. H to this Mem.). They exist on fixed incomes; they have only limited opportunities to work to supplement their incomes; and they experience significant medical conditions (and the associated medical expenses) common to the elderly, including Alzheimer's, neuromuscular, and cardiovascular disease. *Id.* Against this backdrop of difficult circumstances, they have made retirement decisions based upon an expected level of retirement benefits. They

had already adjusted their living standard downward to accommodate the PBGC's initial (and incorrect) preliminary benefit determinations. Now, the Retired Pilots will be forced to adjust downward still further to accommodate the burden of recoupment.

While this severe financial dislocation might be dismissed in some situations as temporary and fixable later with a return of the funds to the affected Retired Pilots (even with interest) in the event of ultimate success on the merits, that argument is unpersuasive in this case. Given their advanced age, it is likely that many of the Retired Pilots will not survive the litigation. The Retired Pilots have already been contesting for six years their benefits with the PBGC, and more than 100 of them have passed away since the dispute first erupted in 2003. *See id.* ¶ 8. Ten have died just since the PBGC issued its final decision in February 2008. *See id.* The usual rule that financial injury may not be irreparable must give way in the unique circumstances of this case, where it is plain that at least some of the Retired Pilots will never be able to be made whole at a later date in the event they ultimately prevail in the litigation and the recoupment is undone. Their estates might obtain the fruits of the litigation, but the retired Pilots will have been made to suffer the consequences during their lifetimes of the PBGC's wrongful recoupment.[4]

Just as important, the Court need not rest just on its own assessment of the practical effect of recoupment in this case, for Congress itself has categorized recoupment as causing substantial harm to those against whom it is sought. When it enacted the provisions of ERISA that permit recoupment in appropriate cases, Congress "recognize[d] that recoupment of benefit

---

[4] Declarant Thomas G. Davis also describes the tragic toll the Retired Pilots' dispute with the PBGC has already taken on them, including prompting what Mr. Davis has perceived as "serious threats of suicide" by some Retired Pilots. Decl. of Thomas G. Davis ¶ 9 (Exh. H to this Mem.). Recoupment would only exacerbate their personal difficulties, with the resulting damage not easily undone later.

overpayments can result in hardship to participants." H.R. Rep. No. 99-300, at 299 (1985),

*reprinted in* 1986 U.S.C.C.A.N. 756, 950. Moreover, the PBGC in this Court has highlighted the

legally distinct hardships caused by recoupment when imposed against pensioners living on fixed

incomes. In this regard, in the earlier litigation, after some of the Retired Pilots sought a

preliminary injunction to expedite their final benefits determinations and to increase their

benefits payments during the interim, the PBGC responded by asserting that a conservative

calculation of estimated benefits was necessary in part "to protect participants from later

suffering an even greater reduction in their benefits to recoup the overpayments." PBGC Mem.

in Opp. to Preliminary Inj. Mot., in *Boivin v. US Airways, Inc.*, No. 03-cv-2373 (D.D.C. Nov. 24,

2003) (DE 8 at 8). Consistent with Congress and the PBGC having emphasized that recoupment

causes hardship, the Court should likewise find that recoupment will cause irreparable harm to

the Retired Pilots in this case.[5]

Finally, absent preliminary relief to preserve the status quo, the Retired Pilots will suffer

irreparable harm to their legal rights concerning repayment of any alleged benefits

overpayments. Currently, the PBGC has offered them an installment payment plan to repay any

amounts supposedly owed. But in order to utilize that option, a Retired Pilot must acknowledge

that he "owe[s] the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits

that I received, *but was not entitled to receive.*" Exh. A to this Mem. (Section 2 of Installment

Agreement) (emphasis added). Thus, in exchange for the installment option, the Retired Pilot

---

[5] In denying the preliminary injunction motion, this Court, in turn, accepted the PBGC's arguments, concluding that the PBGC's "estimated" benefits determinations were necessarily conservative in order to avoid the more serious hardship that recoupment would impose. *See Boivin I*, 297 F. Supp. 2d at 119 n. 10. Having obtained a positive result in the earlier litigation by arguing that recoupment causes hardship, the PBGC should be estopped from now asserting otherwise. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2002) (invoking doctrine of judicial estoppel).

must make an admission that the PBGC's actions are correct -- an admission that undermines (potentially fatally) this very lawsuit. The offering by the PBGC of the installment option is set to expire (on the PBGC's own motion) in September for many of the Retired Pilots, and a Retired Pilot seemingly cannot accept it and still preserve their rights in this court action. *See* Exhs. D & G to this Mem. The Court must maintain the status quo, including leaving open the option of installment payments, for otherwise the Retired Pilots will suffer the irreparable harm of losing favorable repayment terms currently available in the event this lawsuit is unsuccessful.

## III. INJUNCTIVE RELIEF WILL NOT BURDEN OTHERS' INTERESTS

With respect to the third requirement for preliminary relief, the PBGC cannot be said to be "burdened" by a requirement that it simply await recoupment pending the final determination of this lawsuit. Nor will maintaining the status quo burden the interests of other Plan participants with pending benefits determinations before the PBGC. In addition, given that the PBGC previously urged a go-slow, status quo approach the last time this matter was before the Court, precisely in order to prevent the sort of hardship admittedly caused by recoupment, the PBGC should not be heard to complain about the need to maintain the status quo while this Court conducts full and fair review of the benefits determinations. If the PBGC could postpone recoupment actions while it conducted the administrative review process -- as PBGC voluntary does under its regulations -- surely it can await the completion of judicial review as well without suffering any injury at all.

## IV. THE PUBLIC INTEREST FAVORS THE REQUESTED RELIEF

The final criterion for the issuance of a preliminary injunction is also satisfied in this case. The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville*

*Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977). Congress has also expressly recognized both the harm to pensioners forced to undergo recoupment actions, as well as the importance of "prevent[ing] the 'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 374-75 (1980) (quoting ERISA's legislative history). By enabling the Court to forestall recoupment while it conducts judicial review of the PBGC's action, the injunction will promote the well-recognized public interest in ensuring that federal agencies faithfully comply with their statutory mandates as prescribed by Congress. *See, e.g., Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 45 (D.D.C. 2000) ("It is in the public interest for courts to carry out the will of Congress and for an agency to implement properly the statute it administers.").

Requiring the PBGC to await full and fair litigation of benefit determinations before commencing collection actions against retirees will also enable this Court to avoid the wasted resources and the potential for public confusion that would result if the Retired Pilots then do succeed in this action. If the Retired Pilots succeed, the money they pay back in recoupment will have to be handed right back to them by the PBGC. That is a wasteful and pointless course of action not in the public interest (as well as a course of action that comes at great personal cost to the Retired Pilots).

## V.    THE COURT SHOULD ENTER AN ORDER DIRECTING THE PBGC REFRAIN FROM ENGAGING IN RECOUPMENT AGAINST PLAINTIFFS WHILE THIS LAWSUIT REMAINS PENDING

Plaintiffs have a strong likelihood of success in this proceeding, where success on even one claim will require the adjustment of the parties' respective financial obligations. Given this reality, as well as the undisputed harm that arises from recoupment, the public policy disfavoring recoupment, and the absence of any conceivable harm to the PBGC from entry of an injunction,

the balance of factors strongly favors the Retired Pilots. The Court should enter an order directing the PBGC to refrain from engaging in recoupment actions while this litigation remains pending and should preserve the status quo, including the option of installment payments in the event recoupment is warranted at the close of this litigation.

## CONCLUSION

The Retired Pilots' motion for a preliminary injunction should be granted. Plaintiffs ask that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this motion as soon as possible.

Respectfully submitted,

Dated: August 29, 2008

_____/s/_____

Anthony F. Shelley (D.C. Bar #420043)
Andrew T. Wise (D.C. Bar #456865)
Timothy P. O'Toole (D.C. Bar #469800)
Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
Ashelley@milchev.com
Awise@milchev.com
To'toole@milchev.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 29, 2008, I electronically filed the foregoing

**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** AND **MEMORANDUM**

**OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR A**

**PRELIMINARY INJUNCTION, WITH EXHIBITS,** with the Clerk of Court via the court's

ECF system, which will send an electronic copy to all counsel of record:


Joseph M. Krettek
**PENSION BENEFIT GUARANTY CORPORATION**
1200 K Street, NW
Suite 340
Washington, DC 20005
(202) 326-4020 x6772
Email: krettek.joseph@pbgc.gov


                                        /s/  Anthony F. Shelley

# Exhibit A



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

May 06, 2008

PBGC Case Number:     19933400
Plan Name:            RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

JOHN C LOGAN
9406 SHADY VALLEY DR
DALLAS TX 752381432

Dear JOHN C LOGAN:

We received notification your appeal has been closed. We have not received a completed
#718 form up to this date. Please complete and return the enclosed #718 form in the envelope
provided.

If you have any questions or need assistance, please call **1 (800) 400-7242**.  If you use a
TTY/TDD, call **1-800-877-8339** and give the relay operator our telephone number.

You may also write to:

        PBGC/Insurance Operations Department
        P.O. Box 151750
        Alexandria VA 22315-1750

When contacting us, include your Social Security number, PBGC case number,
19933400, and daytime telephone number.

Sincerely,

*Francis Carcamo*

Francis Carcamo
FBA Pension Benefit Analyst
Field Benefit Administration

Enclosure:
Form 718 - Installment Payment Agreement
PBGC and Debt Collection
NO CHECKS - FOD #670  1200 K St

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

**PBGC** Protecting America's Pensions

# Installment Payment Agreement

**PBGC Form 718**
Approved OMB 1212-0055
Expires 08/31/08

Plan Name: RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
Plan Number: 19933400                    Participant Name: JOHN C LOGAN
Date Printed: 05/06/2008
Date of Plan Termination: 3/31/2003

1. General information about you  (Be sure to print clearly, use black ink, and stay within the boxes).

| Last Name | First Name |
|---|---|
| Middle Name | Other Name(s) Used |

| Social Security Number | Date of Birth | Gender | MALE ☐ |
|---|---|---|---|
| | | | FEMALE ☐ |

| Mailing Address | Apartment / Route Number |
|---|---|
| City | State | Zip Code |
| Country | Email (optional) |

| Daytime Phone | EXTENSION | Evening Phone |
|---|---|---|
| ( ) - x | | ( ) - |

INSTRUCTIONS:  If you want to pay your debt in installments, please sign the agreement on the next page and send it to:

> Collections and Compliance Division / PIU, FOD
> Pension Benefit Guaranty Corporation
> 1200 K Street, NW, Suite 670
> Washington, DC 20005

The agreement may not be altered in any manner.  After you sign and return the agreement, PBGC will sign and return a copy of this agreement to you, with instructions concerning your monthly payments.  Each month's payment will be due on the first day of the month, beginning on the first of the month following the date PBGC executes the agreement and returns it to you.

**CONTINUE ➡**

| Installment Payment Agreement | | Form 718, page 2 of 2 |
| --- | --- | --- |
| Plan Number: 19933400 | Participant Name: JOHN C LOGAN | |

## 2.    Installment Payment Agreement

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive.  The amount of this debt is entered below.  In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments.  However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed.  If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions.  When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt:                   $ 7,853.25

Monthly payment       $ 130.88   for 60 months (FC)

PBGC Tracking number:   06-246

By signing this form, I agree to the terms set forth in this agreement.

_____          _____
                Signature                                       Date


Terms accepted by PBGC:


_____          _____
          FOD Collections Official                     Date


_____
                Printed Name



## PBGC and Debt Collection

### This information sheet describes PBGC's debt collection program.

In our letter, we have described the amount of your debt to PBGC, and requested that you pay it by agreeing to installment payments. If you do not respond promptly to our request for payment, we may take legal or other collection actions, including transferring the debt to the U.S. Treasury Department. The Treasury Department may

- refer the debt to a private collection agency;
- report the debt to a credit bureau;
- refer the debt to the Department of Justice for litigation;
- offset your debt against any payments that you may be due, including federal tax refunds.

If the Treasury Department reports your debt to a credit bureau, it could disclose the information necessary to establish your identity; the amount, status and history of your debt; and how your debt arose.

If you start making installment payments but do not continue making your payments on time until the entire amount is repaid, we may take any of the above legal or collection actions.

We will not charge interest on this debt if you agree to installment payments and continue to make your payments on time. If you do not agree to installment payments, or if you do not continue to make your payments on time, we will charge interest on your unpaid balance. The interest rate will be the U.S. Treasury's Current Value of Funds Rate for the month in which you defaulted on your installment payment agreement.



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

May 06, 2008

PBGC Case Number:    19933400
Plan Name:           RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

NORM A LONG
2009 E IMPERIAL DR
NAPLES FL 34110

Dear NORM A LONG:

We received notification your appeal has been closed. We have not received a completed #718 form up to this date. Please complete and return the enclosed #718 form in the envelope provided.

If you have any questions or need assistance, please call **1 (800) 400-7242**.  If you use a TTY/TDD, call **1-800-877-8339** and give the relay operator our telephone number.

You may also write to:

     PBGC/Insurance Operations Department
     P.O. Box 151750
     Alexandria VA 22315-1750

When contacting us, include your Social Security number, PBGC case number, 19933400, and daytime telephone number.

Sincerely,

*Francis Carcamo*

Francis Carcamo
FBA Pension Benefit Analyst
Field Benefit Administration

Enclosure:
Form 718 - Installment Payment Agreement
PBGC and Debt Collection
NO CHECKS - FOD #670  1200 K St

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

# PBGC

**Protecting America's Pensions**

# Installment Payment Agreement

**PBGC Form 718**
Approved OMB 1212-0055
Expires 08/31/08

---

Plan Name: RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
Plan Number: 19933400          Participant Name: NORM A LONG
Date Printed: 05/06/2008
Date of Plan Termination: 3/31/2003

---

1. **General Information about you** (Be sure to print clearly, use black ink, and stay within the boxes).

| Last Name | First Name |
|---|---|
| Middle Name | Other Name(s) Used |

| Social Security Number | Date of Birth | Gender    MALE ☐ |
|---|---|---|
|  |  | FEMALE ☐ |

| Mailing Address | Apartment / Route Number |
|---|---|
| City | State | Zip Code |
| Country | Email (optional) |

| Daytime Phone                          EXTENSION | Evening Phone |
|---|---|
| (     )      -          x | (     )      - |

**INSTRUCTIONS:** If you want to pay your debt in installments, please sign the agreement on the next page and send it to:

> Collections and Compliance Division / PIU, FOD
> Pension Benefit Guaranty Corporation
> 1200 K Street, NW, Suite 670
> Washington, DC 20005

The agreement may not be altered in any manner. After you sign and return the agreement, PBGC will sign and return a copy of this agreement to you, with instructions concerning your monthly payments. Each month's payment will be due on the first day of the month, beginning on the first of the month following the date PBGC executes the agreement and returns it to you.

---

**CONTINUE** 

**Installment Payment Agreement**
Plan Number: 19933400

Participant Name: NORM A LONG

**Form 718, page 2 of 2**

2.    **Installment Payment Agreement**

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive. The amount of this debt is entered below. In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments. However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed. If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions. When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt:              $ 6,695.40

Monthly payment     $ 111.59   for 60 months (FE)

PBGC Tracking number:    06 - 217

By signing this form, I agree to the terms set forth in this agreement.

_____          _____
                Signature                                              Date

Terms accepted by PBGC:

_____          _____
        FOD Collections Official                                Date

_____
            Printed Name



PBGC

Protecting America's Pensions

## PBGC and Debt Collection

### This information sheet describes PBGC's debt collection program.

In our letter, we have described the amount of your debt to PBGC, and requested that you pay it by agreeing to installment payments. If you do not respond promptly to our request for payment, we may take legal or other collection actions, including transferring the debt to the U.S. Treasury Department. The Treasury Department may

- ♦ refer the debt to a private collection agency;
- ♦ report the debt to a credit bureau;
- ♦ refer the debt to the Department of Justice for litigation;
- ♦ offset your debt against any payments that you may be due, including federal tax refunds.

If the Treasury Department reports your debt to a credit bureau, it could disclose the information necessary to establish your identity; the amount, status and history of your debt; and how your debt arose.

If you start making installment payments but do not continue making your payments on time until the entire amount is repaid, we may take any of the above legal or collection actions.

We will not charge interest on this debt if you agree to installment payments and continue to make your payments on time. If you do not agree to installment payments, or if you do not continue to make your payments on time, we will charge interest on your unpaid balance. The interest rate will be the U.S. Treasury's Current Value of Funds Rate for the month in which you defaulted on your installment payment agreement.



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

May 07, 2008

PBGC Case Number:    19933400
Plan Name:    RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

RICHARD J RUSSELL
14181 RAWHIDE PKWY
FARMERS BRANCH TX 75234

Dear RICHARD J RUSSELL:

We received notification your appeal has been closed. We have not received a completed
#718 form up to this date. Please complete and return the enclosed #718 form in the envelope
provided.

If you have any questions or need assistance, please call **1 (800) 400-7242**. If you use a
TTY/TDD, call **1-800-877-8339** and give the relay operator our telephone number.

You may also write to:

PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

When contacting us, include your Social Security number, PBGC case number,
19933400, and daytime telephone number.

Sincerely,

*Francis Carcamo*

Francis Carcamo
FBA Pension Benefit Analyst
Field Benefit Administration

Enclosure:
Form 718 - Installment Payment Agreement
PBGC and Debt Collection
NO CHECKS - FOD #670  1200 K St

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

PBGC Form 718
Approved OMB 1212-0055
Expires 08/31/08

# **PBGC**
*Protecting America's Pensions*

# Installment Payment Agreement

---

Plan Name: RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
Plan Number: 19933400                                    Participant Name: RICHARD J RUSSELL
Date Printed: 05/07/2008
Date of Plan Termination: 3/31/2003

---

1. **General information about you  (Be sure to print clearly, use black ink, and stay within the boxes).**

| Last Name | First Name |
|---|---|

| Middle Name | Other Name(s) Used |
|---|---|

| Social Security Number | Date of Birth | Gender          MALE ☐ |
|---|---|---|
| _ _ _ - _ _ - _ _ _ _ | _ _ / _ _ / _ _ _ _ |              FEMALE ☐ |

| Mailing Address | Apartment / Route Number |
|---|---|
| City | State | Zip Code |
| Country | Email (optional) |

| Daytime Phone | EXTENSION | Evening Phone |
|---|---|---|
| ( ___ ) ___ - ____ | x ____ | ( ___ ) ___ - ____ |

**INSTRUCTIONS:**  If you want to pay your debt in installments, please sign the agreement on the next page and send it to:

> Collections and Compliance Division / PIU, FOD
> Pension Benefit Guaranty Corporation
> 1200 K Street, NW, Suite 670
> Washington, DC 20005

The agreement may not be altered in any manner.  After you sign and return the agreement, PBGC will sign and return a copy of this agreement to you, with instructions concerning your monthly payments.  Each month's payment will be due on the first day of the month, beginning on the first of the month following the date PBGC executes the agreement and returns it to you.

**CONTINUE ➲**

**Installment Payment Agreement**
Plan Number: 19933400

Participant Name: RICHARD J RUSSELL

**Form 718, page 2 of 2**

## 2.    Installment Payment Agreement

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive. The amount of this debt is entered below. In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments. However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed. If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions. When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt:         $ 5,015.70

Monthly payment        $ 83.59    for ___ months (fc)

PBGC Tracking number:    06-171

By signing this form, I agree to the terms set forth in this agreement.

_____        _____
            Signature                                Date

Terms accepted by PBGC:

_____        _____
        FOD Collections Official                     Date

_____
            Printed Name



**PBGC**
Protecting America's Pensions

### PBGC and Debt Collection

## This information sheet describes PBGC's debt collection program.

In our letter, we have described the amount of your debt to PBGC, and requested that you pay it by agreeing to installment payments. If you do not respond promptly to our request for payment, we may take legal or other collection actions, including transferring the debt to the U.S. Treasury Department. The Treasury Department may

- ◆ refer the debt to a private collection agency;
- ◆ report the debt to a credit bureau;
- ◆ refer the debt to the Department of Justice for litigation;
- ◆ offset your debt against any payments that you may be due, including federal tax refunds.

If the Treasury Department reports your debt to a credit bureau, it could disclose the information necessary to establish your identity; the amount, status and history of your debt; and how your debt arose.

If you start making installment payments but do not continue making your payments on time until the entire amount is repaid, we may take any of the above legal or collection actions.

We will not charge interest on this debt if you agree to installment payments and continue to make your payments on time. If you do not agree to installment payments, or if you do not continue to make your payments on time, we will charge interest on your unpaid balance. The interest rate will be the U.S. Treasury's Current Value of Funds Rate for the month in which you defaulted on your installment payment agreement.

**PBGC**
PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

403RNE
June 25, 2008

PBGC Case Number:    19933400
Plan Name:    RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

CHARLES X HERNETT
4 GUSTY COURT
VERONA WI 53593

Dear CHARLES X HERNETT:

You received estimated pension benefits from Pension Benefit Guaranty Corporation (PBGC), under the pension plan named above. We have finished our review of the plan and your benefit, and we have determined that you are not entitled to a PBGC benefit because the lump sum you received from the plan exceeds PBGC Maximum Insurance Limits.

You received your last payment on November 1, 2004.

This is PBGC's formal determination that you are not entitled to a PBGC benefit. You have the right to appeal this determination if you provide a specific reason why the determination is wrong. Your appeal must be in writing and filed within 45 days of the date of this letter. If you simply have a question about this determination, you should call us for an explanation, instead of filing an appeal. But please note that the time you have to file an appeal will not be extended unless you specifically request an extension within the 45-day period. The enclosed pamphlet, *Your Right to Appeal*, explains more about filing an appeal.

We must now collect the overpayment of $10,005.20 as indicated in the enclosed calculation sheet. We are requesting that you repay this amount in installment payments. The enclosed **Installment Payment Agreement** tells you more about the debt, how much you are required to pay each month and the number of payments.

Please complete and return the *Installment Payment Agreement*, **both pages,** as soon as possible. Use **only** the enclosed postage-paid envelope to send us your *Installment Payment Agreement*. We will not charge you interest if you make your payments on time. If you do not execute and return the agreement, we may take legal or other collection actions that are described in the enclosed information sheet, *PBGC and Debt Collection*.

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

PBGC does not charge interest on the installment payments. However, if you wish to repay the debt in a single payment, you may make arrangements to do so by calling our Customer Contact Center at the number below. Please do **NOT** send checks in the envelope provided for the installment payment agreement.

If you are financially unable to repay this debt, you may request that we consider waiving or reducing the debt based on hardship. To request such consideration, you do not have to file an appeal, instead please call **1 (800) 400-7242**. We will send you information on what you need to submit for our consideration.

In addition to your formal appeal right of our determination that you are not entitled to a benefit, you have other rights relating to the debt. You have the right to inspect and copy our records on your debt, and dispute any information in our records about your debt. You may ask us to review our determination that your debt exists, and present us with evidence about it. If you request the inspection or review in writing within 60 days of the date of this letter, we will not take any further collection action until the inspection or review is completed.

If you have questions about this letter, please call me at **1 (800) 400-7242**. If you use TTY/TDD, call **1-800-877-8339** and give the relay operator our telephone number. You may also write us at:

> PBGC/Insurance Operations Department
> P.O. Box 151750
> Alexandria VA 22315-1750

When you write us, include your Social Security number, PBGC case number 19933400, and a daytime telephone number. Insert this **tracking number 07-498** on all correspondence. Please keep this letter in your records for future reference.

Sincerely,

*Marjorie Smith*

Marjorie Smith
FBA Pension Benefit Analyst
Field Benefit Administration

Enclosures:

Your Right to Appeal
PBGC and Debt Collection
Form 718 – Installment Payment Agreement
PACS Calculation Sheet
NO CHECKS - FOD #670  1200 K St

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

Jul 01 08 09:12a    Charles Hernett    928-367-2068    P.4



Privacy Act Data

# Benefit Statement

06/20/2008 11:21 AM
Page 1 of 4

**CHARLES HERNETT**

## RETIREMENT INCOME PLAN FOR PILOTS OF US AIRWAYS

PBGC Case Number:                                             19933400
Date of Plan Termination:                              March 31, 2003

Participant's Name:                                    **CHARLES HERNETT**

Participant's Data
-------------------

Social Security Number:                                 XXX-XX-8579
Gender:                                                        Male
Date of Birth:                          REDACTED    1939

Summary of Participant's Benefit
---------------------------------

Actual Retirement Date:                                    03/01/1999
Current Monthly Pension Payment:                              $0.00
Form of Annuity                                Joint and 50% Survivor

Your current monthly Pension Payment of $0.00 will not change.

Beneficiary's Data
-------------------

Beneficiary Name:                              **KATHRYN HERNETT**
Social Security Number:                                 XXX-XX-3916
Date of Birth:                          REDACTED    1945

Calculation of PBGC Monthly Pension
------------------------------------

(1)    Plan Monthly Pension at Actual Retirement Date
       as a Joint and 50% Survivor Annuity:                  $1,367.91

Privacy Act Data

**CHARLES HERNETT**

The benefits PBGC guarantees are limited by federal pension law to the PBGC's maximum monthly amount that was in effect on the date of plan termination. This limit is adjusted to reflect the participant's age, form of annuity and the lump sum payment received.

A Priority Category 3 Benefit is any annuity benefit payable on March 31, 2000, three years prior to the Date of Plan Termination (DOPT), under the five year old plan provisions.

PBGC does not recognize benefit enhancements due to the Early Retirement Incentive Program (ERIP) in Priority Category 3. US Airways adopted the ERIP on December 4, 1997. The ERIP amendment allowed participants with certain age and service minimums to retire with a subsidized benefit if (1) they elected to retire under the ERIP on or after March 1, 1998, and on or before April 30, 1998, and (2) they actually retired on or after May 1, 1998 and on or before April 30, 2000. Because DOPT is March 31, 2003, any amendments effective after April 1, 1998 are not considered in Priority Category 3. Since the ERIP amendment became effective on May 1, 1998, the earliest date benefits may begin, enhanced benefits due to the ERIP are not considered a Priority Category 3 Benefit. Therefore, the Priority Category 3 Benefit is the benefit without ERIP benefit enhancements.

| | | |
|---|---|---|
| (2) | PBGC Maximum Monthly Amount payable as a Joint and 50% Survivor Annuity after offset of Lump Sum Received at Actual Retirement Date: | $0.00 |
| (3) | Plan Monthly Pension limited by PBGC Maximum Monthly Amount: lesser of (1) and (2) = lesser of $1,367.91 and $0.00 = | $0.00 |
| (4) | Priority Category 3 Monthly Pension as of March 31, 2000 as a Joint and 50% Survivor Annuity: | $0.00 |
| | Calculation of Priority Category 3 ------------------------------------------------- | |
| | A) Qualified Pilots Plan Monthly Pension Before Enhancement as a Joint and 50% Survivor Annuity: | $4,276.64 |
| | B) Qualified Pilots Plan Monthly Pension After Enhancement as a Joint and 50% Survivor Annuity: | $5,784.33 |

Privacy Act Data

CHARLES HERNETT

---

C) Qualified Lump Sum from Pilots Plan plus
Employee Contributions, if Applicable:                                    $654,876.85

D) Target Plan Lump Sum:                                                       $0.00

E) Lump Sum Equivalence Factor:                                              11.9120

F) Monthly Pension Equivalent of Qualified Lump Sum from Pilots Plan
plus Employee Contributions cashed out as a Straight Life Annuity:
(C) / ((E) x 12) =
$654,876.85 / (11.9120 x 12) =                                             $4,581.35

G) Monthly Pension Equivalent of Target Lump Sum
cashed out as a Straight Life Annuity:
(D) / ((E) x 12) =
$0.00 / (11.9120 x 12) =                                                       $0.00

H) Monthly Pension Equivalent of Total Lump Sum from Pilots Plan
cashed out as a Straight Life Annuity:
(F) + (G) =
$4,581.35 + $0.00 =                                                         $4,581.35

I) Benefit Form Conversion Factor:                                            0.9640

J) Monthly Pension Equivalent of Total Lump Sum from Pilots Plan
cashed out as a Joint and 50% Survivor Annuity:
(H) x (I) =
$4,581.35 x 0.9640 =                                                       $4,416.42

K) Net Monthly Pension at Actual Retirement Date
as a Joint and 50% Survivor Annuity:
(A) - (J) =
$4,276.64 - $4,416.42 =                                                        $0.00
This Amount cannot be less than $0.00.

Privacy Act Data

**CHARLES HERNETT**

L) Monthly Pension Remaining After the Lump Sum from the Plan cashed out, as Calculated by Plan Administrator at Actual Retirement Date:  $1,367.91

M) Monthly Pension at Actual Retirement Date before Cost Of Living Adjustment (COLA):
lesser of (K) and (L) =
lesser of $0.00 and $1,367.91 =  $0.00

N) Monthly Pension due to 415 Limit COLA Addition for 1998 and 1999 Retirements:  $0.00

O) Priority Category 3 Monthly Pension as of March 31, 2000 as a Joint and 50% Survivor Annuity:
(M) + (N) =
$0.00 + $0.00 =  $0.00

(5)   PBGC Monthly Pension Payment at Actual Retirement Date as a Joint and 50% Survivor Annuity:
greater of (3) and (4) =
greater of $0.00 and $0.00 =  $0.00

A portion of your benefit is due to the Alternate Payee. The PBGC Monthly Benefit above has been adjusted in accordance with the Qualified Domestic Relations Order dated 3/16/1987.



**PBGC**
Protecting America's Pensions

**PRIVACY ACT DATA**

# RECOUPMENT SUMMARY

**Plan Name:** RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
**Case Number:** 19933400

| | | |
|---|---|---|
| **Participant:** HERNETT, CHARLES X | **Prepared by:** LISA JACKSON |
| **Social Security Number:** XXX–XX–8579 | **Date Prepared:** June 20, 2008 |
| **IPS Document Type:** Benefit Calculations | |

| | |
|---|---:|
| Date of Plan Termination: | 03/31/2003 |
| Overpayment Accrual Commencement Date: | 03/31/2003 |
| Target Adjustment Date: | 07/01/2008 |
| Present Value of Termination Benefit: | $999,999.99 |
| Total Number of Months for Calculation: | 63 |

| | |
|---|---:|
| **Recoupment Data:** | |
| Total Amount of Money Subject to Recoupment: | $10,005.20 |
| Expected Number of Months over which Recoupment will Occur: | 0 |
| Recoupment End Date: | 07/01/2008 |

| Correct Entitlements Entered: | | Actual Pay Entered/Used: | |
|---|---|---|---|
| 04/01/2003 – 06/01/2008 | $0.00 | 04/01/2003 – 11/01/2004 | $500.26 |
| | | 12/01/2004 – 06/01/2008 | $0.00 |

**Recoupment Percent and Amount Information:**

| Pay Dates | Recoup. % | Recoup. Amt. | Reduced Pay Amt. |
|---|---|---|---|
| 07/01/2008 – 12/01/2099 | 0 % | $0.00 | $0.00 |

**Comments:**

RECOVERY
Tracking # 07-498



## PBGC and Debt Collection

### This information sheet describes PBGC's debt collection program.

In our letter, we have described the amount of your debt to PBGC, and requested that you pay it by agreeing to installment payments. If you do not respond promptly to our request for payment, we may take legal or other collection actions, including transferring the debt to the U.S. Treasury Department. The Treasury Department may

- ◆ refer the debt to a private collection agency;
- ◆ report the debt to a credit bureau;
- ◆ refer the debt to the Department of Justice for litigation;
- ◆ offset your debt against any payments that you may be due, including federal tax refunds.

If the Treasury Department reports your debt to a credit bureau, it could disclose the information necessary to establish your identity; the amount, status and history of your debt; and how your debt arose.

If you start making installment payments but do not continue making your payments on time until the entire amount is repaid, we may take any of the above legal or collection actions.

We will not charge interest on this debt if you agree to installment payments and continue to make your payments on time. If you do not agree to installment payments, or if you do not continue to make your payments on time, we will charge interest on your unpaid balance. The interest rate will be the U.S. Treasury's Current Value of Funds Rate for the month in which you defaulted on your installment payment agreement.

| Installment Payment Agreement<br>Plan Number: 19933400 | Participant Name: CHARLES X HERNETT | Form 718, page 2 of 2 |
| --- | --- | --- |

## 2.    Installment Payment Agreement

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive. The amount of this debt is entered below. In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments. However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed. If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions. When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt:                   $ 10,005.20

Monthly payment          $ 166.75   for 60 months

PBGC Tracking number:      07-493

By signing this form, I agree to the terms set forth in this agreement.

_____          _____
            Signature                                      Date

Terms accepted by PBGC:

_____          _____
        FOD Collections Official                        Date

_____
            Printed Name

**PBGC**  PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

403RNE
June 25, 2008

PBGC Case Number:     19933400
Plan Name:            RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

JOHN D POWELL
7904 HAMPTON CT
UNIVERSITY PARK FL 342012220

Dear JOHN D POWELL:

You received estimated pension benefits from Pension Benefit Guaranty Corporation (PBGC), under the pension plan named above. We have finished our review of the plan and your benefit, and we have determined that you are not entitled to a PBGC benefit because the lump sum you received from the plan exceeds PBGC Maximum Insurance Limits.

You received your last payment on November 1, 2004.

This is PBGC's formal determination that you are not entitled to a PBGC benefit. You have the right to appeal this determination if you provide a specific reason why the determination is wrong. Your appeal must be in writing and filed within 45 days of the date of this letter. If you simply have a question about this determination, you should call us for an explanation, instead of filing an appeal. But please note that the time you have to file an appeal will not be extended unless you specifically request an extension within the 45-day period. The enclosed pamphlet, *Your Right to Appeal*, explains more about filing an appeal.

We must now collect the overpayment of $6,582.40 as indicated in the enclosed calculation sheet. We are requesting that you repay this amount in installment payments. The enclosed **Installment Payment Agreement** tells you more about the debt, how much you are required to pay each month and the number of payments.

Please complete and return the *Installment Payment Agreement*, **both pages,** as soon as possible. Use **only** the enclosed postage-paid envelope to send us your *Installment Payment Agreement*. We will not charge you interest if you make your payments on time. If you do not execute and return the agreement, we may take legal or other collection actions that are described in the enclosed information sheet, *PBGC and Debt Collection*.

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**



Privacy Act Data

# Benefit Statement

JOHN POWELL

06/20/2008 11:22 AM
Page 1 of 4

## RETIREMENT INCOME PLAN FOR PILOTS OF US AIRWAYS

PBGC Case Number:                                                          19933400
Date of Plan Termination:                                              March 31, 2003

Participant's Name:                                                      **JOHN POWELL**
Participant's Data

Social Security Number:                                                  XXX-XX-8428
Gender:                                                                          Male
Date of Birth:                                          REDACTED    1940

### Summary of Participant's Benefit

Actual Retirement Date:                                                06/01/1999
Current Monthly Pension Payment:                                          $0.00
Form of Annuity                                                        Straight Life

Your current monthly Pension Payment of $0.00 will not change.

### Calculation of PBGC Monthly Pension

(1)    **Plan Monthly Pension at Actual Retirement Date
       as a Straight Life Annuity:**                                     $1,041.82

The benefits PBGC guarantees are limited by federal pension law to the PBGC's maximum monthly amount that was in effect on the date of plan termination. This limit is adjusted to reflect the participant's age, form of annuity and the lump sum payment received.

A Priority Category 3 Benefit is any annuity benefit payable on March 31, 2000, three years prior to the Date of Plan Termination (DOPT), under the five year old plan provisions.

PBGC does not recognize benefit enhancements due to the Early Retirement Incentive Program (ERIP) in Priority Category 3. US Airways adopted the ERIP on December 4, 1997. The ERIP amendment allowed participants with certain age and service minimums to retire with a subsidized benefit if (1) they elected to retire under the ERIP on or after March 1, 1998, and on or before April 30, 1998, and (2) they actually retired on or after May 1, 1998 and on or before April 30, 2000. Because DOPT is March 31, 2003, any amendments effective after April 1, 1998 are not considered in Priority Category 3. Since the ERIP amendment became effective on May 1, 1998, the earliest date benefits may begin, enhanced benefits due to the ERIP are not considered a Priority Category 3 Benefit. Therefore, the Priority Category 3 Benefit is the benefit without ERIP benefit enhancements.

(2)    PBGC Maximum Monthly Amount payable as a Straight Life Annuity
       after offset of Lump Sum Received at Actual Retirement
       Date:                                                                    $0.00

(3)    Plan Monthly Pension limited by PBGC Maximum Monthly Amount:
       lesser of (1) and (2) =
       lesser of $1,041.82 and $0.00 =                                          $0.00

(4)    Priority Category 3 Monthly Pension as of March 31, 2000 as a
       Straight Life Annuity:                                                   $0.00

       Calculation of Priority Category 3
       ------------------------------------------------

       A)  Qualified Pilots Plan Monthly Pension Before Enhancement
       as a Straight Life Annuity:                                             $3,013.06

       B)  Qualified Pilots Plan Monthly Pension After Enhancement
       as a Straight Life Annuity:                                             $4,382.33

       C)  Qualified Lump Sum from Pilots Plan plus
       Employee Contributions, if Applicable:                                  $477,514.81

       D)  Target Plan Lump Sum:                                               $0.00

Privacy Act Data

**JOHN POWELL**

---

E) **Lump Sum Equivalence Factor:**                                        11.7009

F) **Monthly Pension Equivalent of Qualified Lump Sum from Pilots Plan
plus Employee Contributions cashed out as a Straight Life Annuity:**
(C) / ((E) x 12) =
$477,514.81 / (11.7009 x 12) =                                            $3,400.84

G) **Monthly Pension Equivalent of Target Lump Sum
cashed out as a Straight Life Annuity:**
(D) / ((E) x 12) =
$0.00 / (11.7009 x 12) =                                                      $0.00

H) **Monthly Pension Equivalent of Total Lump Sum from Pilots Plan
cashed out as a Straight Life Annuity:**
(F) + (G) =
$3,400.84 + $0.00 =                                                       $3,400.84

I) **Benefit Form Conversion Factor:**                                       1.0000

J) **Monthly Pension Equivalent of Total Lump Sum from Pilots Plan
cashed out as a Straight Life Annuity:**
(H) x (I) =
$3,400.84 x 1.0000 =                                                      $3,400.84

K) **Net Monthly Pension at Actual Retirement Date
as a Straight Life Annuity:**
(A) - (J) =
$3,013.06 - $3,400.84 =                                                       $0.00
This Amount cannot be less than $0.00.

L) **Monthly Pension Remaining After the Lump Sum from the Plan
cashed out, as Calculated by Plan Administrator at Actual Retirement
Date:**                                                                   $1,041.82

M) **Monthly Pension at Actual Retirement Date before**

Privacy Act Data

JOHN POWELL

Cost Of Living Adjustment (COLA):
lesser of (K) and (L) =
lesser of $0.00 and $1,041.82 =                                    $0.00

N)  Monthly Pension due to 415 Limit COLA Addition for 1998 and 1999
Retirements:                                                       $0.00

O)  Priority Category 3 Monthly Pension as of March 31, 2000 as a
Straight Life Annuity:
(M) + (N) =
$0.00 + $0.00 =                                                    $0.00

(5)    PBGC Monthly Pension Payment at Actual Retirement Date as a
Straight Life Annuity:
greater of (3) and (4) =
greater of $0.00 and $0.00 =                                       $0.00

A portion of your benefit is due to the Alternate Payee.  The PBGC Monthly Benefit above has been
adjusted in accordance with the Qualified Domestic Relations Order dated 5/14/1998.



**PRIVACY ACT DATA**

# RECOUPMENT SUMMARY

**Plan Name:**    RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
**Case Number: 19933400**

| | |
|---|---|
| **Participant:**            **POWELL, JOHN D** | **Prepared by:**   **MARJORIE SMITH** |
| **Social Security Number: XXX—XX—8428** | **Date Prepared: June 23, 2008** |
| **IPS Document Type:**    **Benefit Calculations** | |

| | |
|---|---|
| **Date of Plan Termination:** | **03/31/2003** |
| **Overpayment Accrual Commencement Date:** | **03/31/2003** |
| **Target Adjustment Date:** | **07/01/2008** |
| **Present Value of Termination Benefit:** | **$500.00** |
| **Total Number of Months for Calculation:** | **63** |

| | |
|---|---|
| **Recoupment Data:** | |
| **Total Amount of Money Subject to Recoupment:** | **$6,582.40** |
| **Expected Number of Months over which Recoupment will Occur:** | **0** |
| **Recoupment End Date:** | **07/01/2008** |

| **Correct Entitlements Entered:** | | **Actual Pay Entered/Used:** | |
|---|---|---|---|
| 04/01/2003 – 06/01/2008 | $0.00 | 04/01/2003 – 11/01/2004 | $329.12 |
| | | 12/01/2004 – 06/01/2008 | $0.00 |

**Recoupment Percent and Amount Information:**

| Pay Dates | Recoup. % | Recoup. Amt. | Reduced Pay Amt. |
|---|---|---|---|
| 07/01/2008 – 12/01/2099 | 0 % | $0.00 | $0.00 |

**Comments:**

RECOVERY
TRACKING # 07-497

System: (PACS) Payment Adjustment Calculation System Version 3.0    Printed: 06/23/2008 15:30:22    page 1 of 1



### PBGC and Debt Collection

## This information sheet describes PBGC's debt collection program.

In our letter, we have described the amount of your debt to PBGC, and requested that you pay it by agreeing to installment payments. If you do not respond promptly to our request for payment, we may take legal or other collection actions, including transferring the debt to the U.S. Treasury Department. The Treasury Department may

- ♦ refer the debt to a private collection agency;
- ♦ report the debt to a credit bureau;
- ♦ refer the debt to the Department of Justice for litigation;
- ♦ offset your debt against any payments that you may be due, including federal tax refunds.

If the Treasury Department reports your debt to a credit bureau, it could disclose the information necessary to establish your identity; the amount, status and history of your debt; and how your debt arose.

If you start making installment payments but do not continue making your payments on time until the entire amount is repaid, we may take any of the above legal or collection actions.

We will not charge interest on this debt if you agree to installment payments and continue to make your payments on time. If you do not agree to installment payments, or if you do not continue to make your payments on time, we will charge interest on your unpaid balance. The interest rate will be the U.S. Treasury's Current Value of Funds Rate for the month in which you defaulted on your installment payment agreement.

| Installment Payment Agreement | Form 718, page 2 of 2 |
|---|---|
| Plan Number: 19933400    Participant Name: JOHN D POWELL | |

## 2.    Installment Payment Agreement

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive.  The amount of this debt is entered below.  In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments.  However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed.  If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions.  When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt:    $ 6,582.40

Monthly payment    $ 109.71 for 60 months

PBGC Tracking number:    07-497

By signing this form, I agree to the terms set forth in this agreement.

_____    _____
Signature    Date

Terms accepted by PBGC:

_____    _____
FOD Collections Official    Date

_____
Printed Name



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

403RNE
June 25, 2008

PBGC Case Number:     19933400
Plan Name:            RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

LARRY D STANLEY
13159 CLEAR RIDGE RD
KNOXVILLE TN 379225358

Dear LARRY D STANLEY:

You received estimated pension benefits from Pension Benefit Guaranty Corporation (PBGC), under the pension plan named above. We have finished our review of the plan and your benefit, and we have determined that you are not entitled to a PBGC benefit because the lump sum you received from the plan exceeds PBGC Maximum Insurance Limits.

You received your last payment on November 1, 2004.

This is PBGC's formal determination that you are not entitled to a PBGC benefit. You have the right to appeal this determination if you provide a specific reason why the determination is wrong. Your appeal must be in writing and filed within 45 days of the date of this letter. If you simply have a question about this determination, you should call us for an explanation, instead of filing an appeal. But please note that the time you have to file an appeal will not be extended unless you specifically request an extension within the 45-day period. The enclosed pamphlet, *Your Right to Appeal*, explains more about filing an appeal.

We must now collect the overpayment of $6,611.60 indicated in the enclosed calculation sheet. We are requesting that you repay this amount in installment payments. The enclosed **Installment Payment Agreement** tells you more about the debt, how much you are required to pay each month and the number of payments.

Please complete and return the *Installment Payment Agreement, both pages,* as soon as possible. Use **only** the enclosed postage-paid envelope to send us your *Installment Payment Agreement*. We will not charge you interest if you make your payments on time. If you do not execute and return the agreement, we may take legal or other collection actions that are described in the enclosed information sheet, *PBGC and Debt Collection*.

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

PBGC does not charge interest on the installment payments.  However, if you wish to repay the debt in a single payment, you may make arrangements to do so by calling our Customer Contact Center at the number below.  Please do **NOT** send checks in the envelope provided for the installment payment agreement.

If you are financially unable to repay this debt, you may request that we consider waiving or reducing the debt based on hardship.  To request such consideration, you do not have to file an appeal, instead please call **1 (800) 400-7242**.  We will send you information on what you need to submit for our consideration.

In addition to your formal appeal right of our determination that you are not entitled to a benefit, you have other rights relating to the debt.  You have the right to inspect and copy our records on your debt, and dispute any information in our records about your debt.  You may ask us to review our determination that your debt exists, and present us with evidence about it.  If you request the inspection or review in writing within 60 days of the date of this letter, we will not take any further collection action until the inspection or review is completed.

If you have questions about this letter, please call me at **1 (800) 400-7242**.  If you use TTY/TDD, call **1-800-877-8339** and give the relay operator our telephone number.  You may also write us at:

> PBGC/Insurance Operations Department
> P.O. Box 151750
> Alexandria VA 22315-1750

When you write us, include your Social Security number, PBGC case number **19933400**, and a daytime telephone number.  Insert this **tracking number 07-544** on all correspondence.  Please keep this letter in your records for future reference.

Sincerely,

*Marjorie Smith*

Marjorie Smith
FBA Pension Benefit Analyst
Field Benefit Administration

Enclosures:

Your Right to Appeal
PBGC and Debt Collection
Form 718 - Installment Payment Agreement
PACS Calculation Sheet
NO CHECKS - FOD #670  1200 K St

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**



Privacy Act Data

# Benefit Statement

06/20/2008 11:23 AM
Page 1 of 4

**LARRY STANLEY**

## RETIREMENT INCOME PLAN FOR PILOTS OF US AIRWAYS

PBGC Case Number:                             19933400
Date of Plan Termination:            March 31, 2003

Participant's Name:                         **LARRY STANLEY**

Participant's Data

Social Security Number:                   **XXX-XX-1278**
Gender:                                     Male
Date of Birth:                         REDACTED 1939

Summary of Participant's Benefit

Actual Retirement Date:                 12/01/1998
Current Monthly Pension Payment:          $0.00
Form of Annuity                  Joint and 50% Survivor

Your current monthly Pension Payment of $0.00 will not change.

Beneficiary's Data

Beneficiary Name:                 **PATRICIA STANLEY**
Social Security Number:                 **XXX-XX-3173**
Date of Birth:                     REDACTED 1944

Calculation of PBGC Monthly Pension

(1)    **Plan Monthly Pension at Actual Retirement Date
as a Joint and 50% Survivor Annuity:**          $1,009.32

Privacy Act Data

**LARRY STANLEY**

The benefits PBGC guarantees are limited by federal pension law to the PBGC's maximum monthly amount that was in effect on the date of plan termination.  This limit is adjusted to reflect the participant's age, form of annuity and the lump sum payment received.

A Priority Category 3 Benefit is any annuity benefit payable on March 31, 2000, three years prior to the Date of Plan Termination (DOPT), under the five year old plan provisions.

PBGC does not recognize benefit enhancements due to the Early Retirement Incentive Program (ERIP) in Priority Category 3.  US Airways adopted the ERIP on December 4, 1997.  The ERIP amendment allowed participants with certain age and service minimums to retire with a subsidized benefit if (1) they elected to retire under the ERIP on or after March 1, 1998, and on or before April 30, 1998; and (2) they actually retired on or after May 1, 1998 and on or before April 30, 2000.  Because DOPT is March 31, 2003, any amendments effective after April 1, 1998 are not considered in Priority Category 3.  Since the ERIP amendment became effective on May 1, 1998, the earliest date benefits may begin; enhanced benefits due to the ERIP are not considered a Priority Category 3 Benefit.  Therefore, the Priority Category 3 Benefit is the benefit without ERIP benefit enhancements.

| | | |
|---|---|---|
| (2) | PBGC Maximum Monthly Amount payable as a Joint and 50% Survivor Annuity after offset of Lump Sum Received at Actual Retirement Date: | $0.00 |
| (3) | Plan Monthly Pension limited by PBGC Maximum Monthly Amount: lesser of (1) and (2) = lesser of $1,009.32 and $0.00 = | $0.00 |
| (4) | Priority Category 3 Monthly Pension as of March 31, 2000 as a Joint and 50% Survivor Annuity: | $0.00 |

Calculation of Priority Category 3
---------------------------------------------

| | |
|---|---|
| A)  Qualified Pilots Plan Monthly Pension Before Enhancement as a Joint and 50% Survivor Annuity: | $3,027.79 |
| B)  Qualified Pilots Plan Monthly Pension After Enhancement as a Joint and 50% Survivor Annuity: | $4,525.02 |

Privacy Act Data

**LARRY STANLEY**

C) **Qualified Lump Sum from Pilots Plan plus
Employee Contributions, if Applicable:**     **$517,027.86**

D) **Target Plan Lump Sum:**     **$0.00**

E) **Lump Sum Equivalence Factor:**     **11.8876**

F) **Monthly Pension Equivalent of Qualified Lump Sum from Pilots Plan
plus Employee Contributions cashed out as a Straight Life Annuity:**
**(C) / ((E) x 12) =**
**$517,027.86 / (11.8876 x 12) =**     **$3,624.42**

G) **Monthly Pension Equivalent of Target Lump Sum
cashed out as a Straight Life Annuity:**
**(D) / ((E) x 12) =**
**$0.00 / (11.8876 x 12) =**     **$0.00**

H) **Monthly Pension Equivalent of Total Lump Sum from Pilots Plan
cashed out as a Straight Life Annuity:**
**(F) + (G) =**
**$3,624.42 + $0.00 =**     **$3,624.42**

I) **Benefit Form Conversion Factor:**     **0.9700**

J) **Monthly Pension Equivalent of Total Lump Sum from Pilots Plan
cashed out as a Joint and 50% Survivor Annuity:**
**(H) x (I) =**
**$3,624.42 x 0.9700 =**     **$3,515.69**

K) **Net Monthly Pension at Actual Retirement Date
as a Joint and 50% Survivor Annuity:**
**(A) - (J) =**
**$3,027.79 - $3,515.69 =**     **$0.00**
**This Amount cannot be less than $0.00.**

L)  **Monthly Pension Remaining After the Lump Sum from the Plan cashed out, as Calculated by Plan Administrator at Actual Retirement Date:**                                                      $1,009.32

M)  **Monthly Pension at Actual Retirement Date before Cost Of Living Adjustment (COLA):**
lesser of (K) and (L) =
lesser of $0.00 and $1,009.32 =                                                      $0.00

N)  **Monthly Pension due to 415 Limit COLA Addition for 1998 and 1999 Retirements:**                                                      $0.00

O)  **Priority Category 3 Monthly Pension as of March 31, 2000 as a Joint and 50% Survivor Annuity:**
(M) + (N) =
$0.00 + $0.00 =                                                      $0.00

(5)  **PBGC Monthly Pension Payment at Actual Retirement Date as a Joint and 50% Survivor Annuity:**
greater of (3) and (4) =
greater of $0.00 and $0.00 =                                                      $0.00

**A portion of your benefit is due to the Alternate Payee.  The PBGC Monthly Benefit above has been adjusted in accordance with the Qualified Domestic Relations Order dated 3/31/1995.**



**PRIVACY ACT DATA**

# RECOUPMENT SUMMARY

**Plan Name:**   RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
**Case Number:** 19933400

| | | | |
|---|---|---|---|
| **Participant:** | **STANLEY, LARRY D** | **Prepared by:** | **MARJORIE SMITH** |
| **Social Security Number:** XXX–XX–1278 | | **Date Prepared:** June 23, 2008 | |
| **IPS Document Type:** | **Benefit Calculations** | | |

| | |
|---|---|
| Date of Plan Termination: | 03/31/2003 |
| Overpayment Accrual Commencement Date: | 03/31/2003 |
| Target Adjustment Date: | 07/01/2008 |
| Present Value of Termination Benefit: | $500.00 |
| Total Number of Months for Calculation: | 63 |

| | |
|---|---|
| Recoupment Data: | |
| Total Amount of Money Subject to Recoupment: | $6,611.60 |
| Expected Number of Months over which Recoupment will Occur: | 0 |
| Recoupment End Date: | 07/01/2008 |

| Correct Entitlements Entered: | | Actual Pay Entered/Used: | |
|---|---|---|---|
| 04/01/2003 – 06/01/2008 | $0.00 | 04/01/2003 – 11/01/2004 | $330.58 |
| | | 12/01/2004 – 06/01/2008 | $0.00 |

**Recoupment Percent and Amount Information:**

| Pay Dates | Recoup. % | Recoup. Amt. | Reduced Pay Amt. |
|---|---|---|---|
| 07/01/2008 – 12/01/2099 | 0 % | $0.00 | $0.00 |

System: (PACS) Payment Adjustment Calculation System Version 3.0    Printed: 06/23/2008 13:10:54    page 1 of 1

Manually–Keyed Report



# Installment Payment Agreement

**PBGC Form 718**
Approved OMB 1212-0055
Expires 08/31/08

---

Plan Name: RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
Plan Number: 19933400      Participant Name: LARRY D STANLEY
Date Printed: 06/25/2008
Date of Plan Termination: 3/31/2003

---

1. General information about you  (Be sure to print clearly, use black ink, and stay within the boxes).

| Last Name | | First Name |
|---|---|---|
| Middle Name | Other Name(s) Used | |

| Social Security Number | Date of Birth | Gender |
|---|---|---|
| | | MALE ☐   FEMALE ☐ |

| Mailing Address | Apartment / Route Number |
|---|---|
| City | State    Zip Code |
| Country | Email (optional) |

| Daytime Phone | EXTENSION | Evening Phone |
|---|---|---|
| (   )   -   x | | (   )   - |

INSTRUCTIONS:  If you want to pay your debt in installments, please sign the agreement on the next page and send it to:

       Collections and Compliance Division / PIU, FOD
       Pension Benefit Guaranty Corporation
       1200 K Street, NW, Suite 670
       Washington, DC 20005

The agreement may not be altered in any manner.  After you sign and return the agreement, PBGC will sign and return a copy of this agreement to you, with instructions concerning your monthly payments.  Each month's payment will be due on the first day of the month, beginning on the first of the month following the date PBGC executes the agreement and returns it to you.

**CONTINUE ➡**

| Installment Payment Agreement<br>Plan Number: 19933400 | Participant Name: LARRY D STANLEY | Form 718, page 2 of 2 |
|---|---|---|

## 2.    Installment Payment Agreement

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive.  The amount of this debt is entered below.  In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments.  However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed.  If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions.  When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt:            $ 6,611.60

Monthly payment    $ 110.19  for 60 months

PBGC Tracking number:    07-544

By signing this form, I agree to the terms set forth in this agreement.

_____    _____
Signature                                          Date

Terms accepted by PBGC:

_____    _____
FOD Collections Official                        Date

_____
Printed Name

# Exhibit B



MILLER
CHEVALIER

**Anthony F. Shelley**
202.626.5924
ashelley@milchev.com

June 11, 2008

**VIA REGULAR MAIL**

Mr. Francis Carcamo
FBA Pension Benefit Analyst
Field Benefit Administration
PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria, VA 22315-1750

      Re:    *PBGC Litigation*

Dear Mr. Carcamo:

      I represent certain retired pilots of U.S. Airways in connection with their challenge to the PBGC's calculation of pension benefits under a retirement plan for pilots that was previously run by US Airways and terminated in 2003. The PBGC is aware of my representation, and referenced it in its notice to plan participants of the February 29, 2008 decision by the PBGC Appeals Board regarding their cases.

      Following this decision, a number of my clients have now received recoupment or recovery notices directly from you. Those notices seek to recover what the PBGC deems to be overpayments by having my clients pay money directly to the PBGC. The notices also provide an opportunity to set up a repayment schedule but state if such a schedule is not agreed to, the PBGC will begin taking collection actions and begin calculating interest on the alleged debt.

      To date, I know of the following clients who have received these notices (closed case numbers referenced in their notices are indicated, where applicable):

| Last Name | First Name | MI | Closed Case No. |
|-----------|-----------|-----|-----------------|
| Bloomer | Phil | R | 06-220 |
| Councilman | John | D | 06-183 |
| Gallagher | Denis | F | 06-248 |
| Green | William | E | 06-172 |
| Kiszely | Frank | | 06-209 |
| Knebel | George | W | |
| Lencses | David | B | 06-214 |
| Logan | John | C | 06-246 |

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-626-5801 FAX · millerchevalier.com
875846.1

Mr. Francis Carcamo
June 11, 2008
Page 2

| | | | |
|---|---|---|---|
| Long | Norman | A | 06-217 |
| Longo | Joseph (Steve) | S | |
| Lucas | John | W | 06-225 |
| Marshall | Mike | N | 06-179 |
| McCravy | Dewey | H | 06-193 |
| McLin | Keeling (Buster) | F | 06-188 |
| Mize | Harold | L | 06-199 |
| Musselman | Dennis | G | 06-168 |
| Paglia | Gary | W | 06-181 |
| Purcell | George | R | 06-241 |
| Resh | Larry | J | 06-227 |
| Robson | Norbert (Robby) | G | 06-198 |
| Russell | Richard | J | 06-171 |
| Scott | Richard | W | 06-252 |
| Shardy | James | | 06-231 |
| Shaw | Eugene (Gene) | H | 06-232 |
| Speight | James | H | 06-165 |
| Stein | Peter | C | 06-254 |
| Thompson | John | R | 06-190 |
| Tice | C. | Douglas | 06-204 |
| Vandergrift | Ronald | P | 06-222 |

Other individuals who are our clients (and who are on the PBGC's listing of our clients in the Enclosures to the February 29, 2008 decision) may also have received similar notices, and thus the above list is not intended to be exhaustive.

Because my clients are represented by counsel, I believe the PBGC should not be contacting any of them directly about these matters related to their pension benefits. Any such notices should be sent directly to me for a response. As I have mentioned to Bill Condron and Joseph Shelton of the PBGC, we expect soon to be filing a lawsuit challenging the PBGC Appeals Board's February 29, 2008 decision. This litigation obviously has the potential to affect the current benefit calculations and thus to alter any determination as to whether "overpayments" have occurred. As a result, we request that the PBGC agree to voluntarily stay any collection actions throughout the pendency of the federal lawsuit. We also ask that the PBGC agree to preserve for my clients the opportunity to enter into a repayment schedule at the conclusion of the litigation under the same terms currently being

875846.1

Mr. Francis Carcamo
June 11, 2008
Page 3


offered, if it is determined by the federal courts that any recoverable overpayments by the PBGC have occurred.

     For all parties involved, a voluntary stay of any recoupment and recovery efforts would, of course, be preferable to litigating such issues in injunction proceedings in federal court.

                             Sincerely,

                             Anthony F. Shelley

cc:  William F. Condron, Jr.
     Joseph Shelton

# Exhibit C



# PBGC
**Protecting America's Pensions**

**Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Washington, D.C. 20005-4026

July 11, 2008

<u>Via Facsimile and Regular Mail</u>

Anthony F. Shelley, Esq.
Miller & Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900
Washington, D.C. 20005-5701

      Re:    Davis v. PBGC, Case No. 1:08-cv-01064

Dear Mr. Shelley:

      This is in response to your recent correspondence to Bill Condron, Manager of PBGC's Appeals Board, and Francis Carcamo, a PBGC Field Benefit Administration Analyst, wherein you request that PBGC agree to voluntarily stay "any collection actions" because you will be "filing a lawsuit challenging the PBGC Appeals Board's February 29, 2008 decision." We note that you have since filed suit against PBGC in the United States District Court for the District of Columbia.

      We decline your request for a voluntary stay as we do not think that the threat, or the actual filing, of a lawsuit is sufficient reason to stay our recoupment and recovery efforts. Under section 4003.22 of PBGC's regulations, a benefit determination is "effective" 45 days after the determination was issued, or, if an appeal has been filed, when the appeal is resolved by the Appeals Board. PBGC Reg. § 4003.22. As you know, most of your clients' benefit determinations became effective on February 29, 2008, when the Appeals Board issued its decision in the above referenced appeal. Given this, PBGC is now recouping, or attempting to recover, benefit overpayments in those cases where a participant received benefits in excess of the levels that are payable under Title IV of ERISA.

      We note, however, that with respect to those of your clients who are subject to recovery (which includes all of the participants listed in your May 29, 2008 email), if any of them are financially unable to repay their overpayments, they may request that PBGC consider waiving or reducing their debt based on financial hardship. To do so, please have them complete the attached Financial Statement of Debtor form.

      Finally, with respect to your request that PBGC not contact any of your clients directly, we note that participants in plans that have been trusteed by PBGC, such as your

clients, often receive written correspondence from PBGC. Such correspondence is sent by benefit analysts at PBGC, not by attorneys. To the extent your clients prefer that PBGC direct all future correspondence to your office, we ask that they complete the attached Power of Attorney form.

If you have any additional questions or concerns, please contact Garth Wilson at (202) 326-4020, ext. 3878, or me at (202) 326-4400, ext. 4593.

Very truly yours,

Joseph J. Shelton
Attorney

Enclosures

# Financial Statement of Debtor

**PBGC Form 722**
Approved OMB 1212-0055
Expires 08/31/08

**PBGC**
Protecting America's Pensions

Pension Benefit Guaranty Corporation.
P.O. Box 151750 Alexandria, VA 22315-1750

**For assistance, call 1-800-400-7242**

Plan Name: FX.PrismCase.CaseTitle.XF
Plan Number: FX.PrismCase.CaseIdNmbr.XF     Participant Name: FX.PrismCust.FullName.XF
Date Printed: 06/27/2008
DOPT: FX.PrismCase.DOPT.XF

**INSTRUCTIONS:** Please complete this form to request that PBGC reduce or waive repayment of amounts you were overpaid. Use dark ink and be sure to print clearly. See item 7E if you need additional space for any answer. **You must submit a copy of your most recent Federal tax return, including schedules, with this form.** You may also provide any other information that you wish PBGC to consider.

## 1. General information about you

| Last Name | | First Name |
|---|---|---|
| Middle Name | Other Name(s) Used | |

Social Security Number       Date of Birth       Gender    MALE ☐    FEMALE ☐

Mailing Address     Apartment / Route Number
City     State     Zip Code
Country     Email (optional)

Daytime Phone     EXTENSION     Evening Phone
(   )    -    x

Are you currently married?
Yes ☐    No ☐     Spouse's Last Name     Spouse's First Name

Age(s) of Dependent(s), if any

**CONTINUE** ➡

**Financial Statement of Debtor**

Plan Number: FX.PrismCase.CaseIdNmbr.XF

Participant Name: FX.PrismCust.FullName.XF

**Form 722, page 2 of 4**

## 2. Average Monthly Income

|  | Self | Spouse |
|---|---|---|
| **A.** Monthly Wage / Salary | $ | $ |
| **B.** Social Security Income | $ | $ |
| **C.** Pension Income | $ | $ |
| **D.** Interest, Dividend, Rental or Other Income | $ | $ |
| **E.** Total Monthly Net Income | $ | $ |

## 3. Average Monthly Expenses

|  |  |
|---|---|
| **A.** Rent or Mortgage Payment | $ |
| **B.** Food | $ |
| **C.** Utilities and Heat | $ |
| **D.** Medical | $ |
| **E.** Other, Including Insurance | $ |
| **F.** Monthly Payments on Installment Contracts and other Debts (e.g., car payments, home improvement loans, appliances) | $ |
| **G.** Total Monthly Expenses | $ |

## 4. Discretionary Income

|  |  |
|---|---|
| **A.** Net Monthly Income Less Expenses (Item 2E less Item 3G) | $ |
| **B.** Amount you can pay on a monthly basis toward your debt | $ |

**CONTINUE** ➡

**Financial Statement of Debtor**                                    **Form 722, page 3 of 4**

Plan Number: FX.PrismCase.CaseIdNmbr.XF          Participant Name: FX.PrismCust.FullName.XF

## 5. Assets

| | | |
|---|---|---|
| **A.** Cash in Bank (Checking and savings accounts, building and loan accounts, etc.) | | $ |
| **B.** Cash on Hand | | $ |
| **C.** U.S. Savings Bonds (Current Value) | | $ |
| **D.** Stocks and other Bonds (Current Value) | | $ |
| **E.** Real Estate Owned (Resale Value) | | $ |

**F.** Automobiles

| Make | Year | Model | Resale Value |
|---|---|---|---|
| | | | $ |
| | | | $ |

| | |
|---|---|
| **G.** Other Assets (Specify below) | |
| | $ |
| | $ |
| | $ |
| **H. Total Assets** | $ |

## 6. Installment Contracts and Other Debts -- Show below all debts which you are required to pay, such as a car, television, washing machine, payments to dealers, banks, finance companies, repayment of money borrowed for any purpose, doctor bills, hospital bills, etc.  **Do not include living expenses.**

| Name and Address of Creditor | Date and Purpose of Debt | Original Amount of Debt | Unpaid Balance | Amount Due Monthly* | Amount Past Due (if any) |
|---|---|---|---|---|---|
| **A.** | | | | | |
| **B.** | | | | | |
| **C.** | | | | | |
| **D.** | | | | | |
| **E. Total:** | | $ | $ | $ | $ |

*Note:  If repayment of a debt is not on a monthly basis, enter "0" and describe repayment arrangements in Section 7E.

CONTINUE ➡

**Financial Statement of Debtor**                                    **Form 722, page 4 of 4**
Plan Number: FX.PrismCase.CaseIdNmbr.XF          Participant Name: FX.PrismCust.FullName.XF

## 7.  Additional Data

| | |
|---|---|
| **A.** Have you ever filed for bankruptcy protection?     Yes  ☐   No  ☐    (If yes, complete items 7B through 7D) | |
| **B.** Date Discharged from Bankruptcy | |
| **C.** Location of Court | |
| **D.** Docket No., if known | |

**E.**  Use this space and additional sheets, if necessary, to supply any pertinent information and to continue your answer to previous items above to which your comments apply.




## 8.  Signature – You must sign and date this form.  Knowingly and willfully making false, fictitious or fraudulent statements to the Pension Benefit Guaranty Corporation is a crime punishable under Title 18, Section 1001, United States Code.

I declare under penalty of perjury that all of the information I have provided on this form is true and correct.


_____          _____
SIGNATURE                                                  DATE



# Power of Attorney

**PBGC Form 715**
Approved OMB 1212-0055
Expires 08/31/08

Pension Benefit Guaranty Corporation.
P.O. Box 151750 Alexandria Virginia 22315-1750

**For assistance, call 1-800-400-7242**

Plan Name:
Plan Number:                                    Participant Name / SSN:
Date Printed:

**INSTRUCTIONS:** Please complete this form to name a person as your representative to PBGC. If you have any questions, call our Customer Contact Center at 1-800-400-7242.

## 1. General information about you

| Last Name | First Name |
|---|---|

| Middle Name | Other Name(s) Used |
|---|---|

| Social Security Number | Date of Birth | Gender |
|---|---|---|
| ☐☐☐ - ☐☐ - ☐☐☐☐ | ☐☐ / ☐☐ / ☐☐☐☐ | MALE ☐  FEMALE ☐ |

| Mailing Address | Apartment / Route Number |
|---|---|
| City | State | Zip Code |
| Country | Email (OPTIONAL) |

Daytime Phone  ( ☐☐☐ ) ☐☐☐ - ☐☐☐☐  **EXTENSION** x ☐☐☐☐

Evening Phone  ( ☐☐☐ ) ☐☐☐ - ☐☐☐☐

| I am: | MARK ONLY ONE |
|---|---|
| **A.** a participant in a PBGC-trusteed plan | ☐ |
| **B.** a beneficiary of a deceased participant in a PBGC-trusteed plan | ☐ |
| **C.** an alternate payee with a QDRO, entitled to all or part of a participant's benefit | ☐ |
| **D.** the legally authorized representative of a participant, beneficiary, or alternate payee | ☐ |

If you checked B, C or D, please provide the name of the plan participant:

| Pension Plan Name | PBGC Case Number |
|---|---|

**CONTINUE** ➡

| Power of Attorney | Form 715, page 2 of 3 |
|---|---|
| Plan Number: | Participant Name / SSN: |

**2.  Your Representative** – I name the following person as my representative to the Pension Benefit Guaranty Corporation.

Name of Representative

**3.  Types of Actions** – I want my representative to:  (Please check A or B):

☐  **A.** Represent me in my dealings with PBGC.  This includes:

- Applying for my benefit
- Changing my beneficiary
- Representing me in any request for information or forms
- Responding to PBGC's request for information or documents
- Changing the address or bank to which I want my PBGC payments sent
- Representing me before the PBGC's Appeals Board
- Changing my tax withholding

I understand that my representative **cannot** take the following actions:

- Sign a form for me that PBGC requires me to sign in the presence of a notary, such as a spouse's consent to waive a joint-and-survivor annuity
- Have PBGC make my check payable to him or her or have PBGC deposit my check payable to an account that does not have my name on it
- Be recognized or compensated by PBGC for attempting to represent me or claim a fee on my behalf

☐  **B.** Take only the following actions for me (I have checked the items that I want to apply):

- ☐  Applying for my benefit
- ☐  Changing my beneficiary
- ☐  Representing me in any request for information or forms
- ☐  Responding to PBGC's request for information or documents
- ☐  Changing the address or bank to which I want my PBGC payments sent
- ☐  Representing me before the PBGC's Appeals Board
- ☐  Changing my tax withholding

☐  **C.** Copies of Documents

- I want my representative to receive copies of all correspondence PBGC sends to me.

**4.  Signature** – You must sign and date this form.

SIGNATURE

DATE

(You can change or cancel this power of attorney anytime by notifying PBGC in writing of the changes you want.)

**CONTINUE** ➡

| **Power of Attorney** | **Form 715, page 3 of 3** |
|---|---|
| Plan Number: | Participant Name / SSN: |

## 5.  Acceptance of Power of Attorney

I accept the power of attorney given on this form.

_____     _____
REPRESENTATIVE'S SIGNATURE            DATE SIGNED

| Representative's printed name | | |
|---|---|---|
| Representative's Address | | |
| City | State | Zip Code |
| Country | Email (OPTIONAL) | |

| Representative's Daytime Phone | EXTENSION | Representative's Evening Phone |
|---|---|---|
| ( __ __ __ ) __ __ __ - __ __ __ __ | x __ __ __ __ __ | ( __ __ __ ) __ __ __ - __ __ __ __ |

**SIGN & DATE BEFORE SUBMITTING.  THANK YOU.**

## POWER OF ATTORNEY FORM
## FILING INSTRUCTIONS

*Who can use this form?*

If you are a participant or the beneficiary of a deceased participant, you may use the Power of Attorney form to name someone to represent you on matters relating to your benefits. Other people may also file a PBGC Power of Attorney. An alternate payee under a qualified domestic relations order ("QDRO") may designate a representative using this form.

*What if I am a legally recognized representative, such as a parent or a judicially appointed guardian, conservator, or executor of a person who can sign this form?*

If you are a legally recognized representative (a custodial relative or guardian, conservator, or executor) of a participant, beneficiary, or alternate payee, you may use the Power of Attorney Form to name a person to represent you before the PBGC on some or all matters relating to the receipt of pension benefits. Please call PBGC's Customer Contact Center at 1-800-400-7242 for special instructions for completing this form.

*Do I have to use this form?*

No. If you do not use this form, you should be careful to include all of the information required by this form.

*What can I use this form for?*

The representative you name on the Power of Attorney form may do all the actions listed in Section 3A, unless you check Section 3B and allow only certain actions.

*How do I file the Power of Attorney?*

File the power of attorney by mailing the original form to PBGC, P.O. Box 151750, Alexandria, VA 22315-1750. If you are dealing with any particular person within the PBGC, you may also want to provide a copy of the Power of Attorney to that person.

*What if I am a participant in more than one PBGC pension plan?*

Usually, you only need to file one form. Be sure to list all of the plans and their case numbers on page 1. You can get the plan names and case numbers from our letters to you.

*What if I already have a Power of Attorney on file with PBGC?*

The filing of this Power of Attorney does not alter any earlier Power(s) of Attorney filed with PBGC for the matters covered by this Form. Once you have granted a Power of Attorney it will remain in effect unless you revoke it in writing. If you grant a Power of Attorney for a particular matter to more than one person, any of those persons may exercise his or her Power of Attorney on that matter.

*Can I limit my representative's powers?*

Yes. Mark in item B on the page 2 only the powers you want to grant.

*Does my representative need to sign this form?*

Yes. Your representative must sign and date the form on page 3 to accept your designation. PBGC will return a Power of Attorney form unless both you and your representative have signed and dated it.

# Exhibit D

**PBGC**
PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

504
August 04, 2008

PBGC Case Number:     19933400
Plan Name:            RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

JOHN C. LOGAN
94-06 Shady Valley Dr.
Dallas, TX  75238

Dear John C. Logan:

We previously notified you that you received an overpayment from the Pension Benefit
Guaranty Corporation (PBGC) and requested that you repay the amount in installment
payments. We have not received the completed installment payment agreement.

We are giving you another opportunity to resolve this matter. Enclosed is an **Installment
Payment Agreement** for you to complete and return, **both pages,** to us in the enclosed
postage-paid envelope as soon as possible. Use **only** the enclosed postage-paid envelope to
send us your Installment Payment Agreement. We will not charge you interest if you make
your payments on time.

PBGC does not charge interest on the installment payments. However, if you wish to repay
the debt in a single payment, you may make arrangements to do so by calling our Customer
Contact Center at **1(800) 400-7242.** Please do **NOT** send payments in the envelope provided
for the installment payment agreement.

If you are financially unable to repay this debt, you may request that we consider waiving or
reducing the debt based on hardship. To request such consideration, please call on the
number that follows. We will send you information on what you need to submit for our
consideration.

If you do not respond to this final request within 30 days of the date of this letter, we have the
right to pursue your debt using any of several legal or collection actions. Those actions are
described in the enclosed information sheet, *PBGC and Debt Collection.*

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

If you have any questions about this letter, please call me toll-free at **1-800-400-7242**, extension **3266**. If you use TTY/TDD, call **1-800-877-8339** and give the relay operator our telephone number and my extension 3266. You may also write us at:

> PBGC/Insurance Operations Department
> P.O. Box 151750
> Alexandria VA 22315-1750

When contacting us, include your Social Security number, PBGC case number 19933400, and your daytime telephone number. Insert this **tracking number 06-246** on all correspondence. Please keep this letter in your records for future reference.

Sincerely,

*Jerome Smith*

Jerome Smith
Auditor
Benefits Administration & Payment Department

Enclosures:
Privacy Act Notice (Short Form)
PBGC and Debt Collection
Form 718 – Installment Payment Agreement
NO CHECKS - FOD #670  1200 K St

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**



## PBGC

**Short Privacy Act Notice**

Protecting America's Pensions

Pension Benefit Guaranty Corporation.
P.O. Box 151750 Alexandria, VA 22315-1750

**For assistance, call 1-800-400-7242**

## PRIVACY ACT NOTICE

The Privacy Act of 1974, **as amended**, 5 U.S.C. § 552a (1994), requires PBGC to give you this notice when collecting information from you. PBGC uses the information to determine whether and how much of a pension benefit is due you under a private defined benefit pension plan that has terminated, and to make appropriate benefit payments. Your response is voluntary. However, failure to provide information to PBGC, including your Social Security Number, may delay or prevent PBGC from calculating and paying your pension benefits. PBGC may release information about you to other individuals and entities when necessary and appropriate under the Privacy Act. Additional information about when information about you may be disclosed by PBGC may be obtained from PBGC's Customer Contact Center by calling 1-800-400-7242. If you use a **TTY/TDD**, call toll-free 1-800-877-8339 and give the communications assistant PBGC's telephone number. This information is also available from a Privacy Act notice on PBGC's Internet home page on the World Wide Web at http:\\www.pbgc.gov. PBGC's authority to collect information from you, including your Social Security Number, is derived from 29 U.S.C. §§ 1055, 1056(d)(3), 1302, 1321, 1322, 1322a, 1341 and 1350 (1994).



## PBGC and Debt Collection

## This information sheet describes PBGC's debt collection program.

In our letter, we have described the amount of your debt to PBGC, and requested that you pay it by agreeing to installment payments. If you do not respond promptly to our request for payment, we may take legal or other collection actions, including transferring the debt to the U.S. Treasury Department. The Treasury Department may

- ◆ refer the debt to a private collection agency;
- ◆ report the debt to a credit bureau;
- ◆ refer the debt to the Department of Justice for litigation;
- ◆ offset your debt against any payments that you may be due, including federal tax refunds.

If the Treasury Department reports your debt to a credit bureau, it could disclose the information necessary to establish your identity; the amount, status and history of your debt; and how your debt arose.

If you start making installment payments but do not continue making your payments on time until the entire amount is repaid, we may take any of the above legal or collection actions.

We will not charge interest on this debt if you agree to installment payments and continue to make your payments on time. If you do not agree to installment payments, or if you do not continue to make your payments on time, we will charge interest on your unpaid balance. The interest rate will be the U.S. Treasury's Current Value of Funds Rate for the month in which you defaulted on your installment payment agreement.



**PBGC**
Protecting America's Pensions

# Installment Payment Agreement

PBGC Form 71
Approved OMB 1212-00
Expires 08/31/

---

Plan Name: RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
Plan Number: 19933400                    Participant Name: JOHN C LOGAN
Date Printed: 08/04/2008
Date of Plan Termination: 3/31/2003

---

1. **General information about you** (Be sure to print clearly, use black ink, and stay within the boxes).

| Last Name | | First Name |
|---|---|---|

| Middle Name | Other Name(s) Used | |
|---|---|---|

| Social Security Number | Date of Birth | Gender | MALE ☐ |
|---|---|---|---|
| ☐☐☐ - ☐☐ - ☐☐☐☐ | ☐☐ / ☐☐ / ☐☐☐☐ | | FEMALE ☐ |

| Mailing Address | Apartment / Route Number |
|---|---|
| City | State | Zip Code |
| Country | Email (optional) |

| Daytime Phone | EXTENSION | Evening Phone |
|---|---|---|
| ( ☐☐☐ ) ☐☐☐ - ☐☐☐☐ x ☐☐☐☐ | | ( ☐☐☐ ) ☐☐☐ - ☐☐☐☐ |

INSTRUCTIONS:  If you want to pay your debt in installments, please sign the agreement on the next page and send it to:

        Collections and Compliance Division / PIU, FOD
        Pension Benefit Guaranty Corporation
        1200 K Street, NW, Suite 670
        Washington, DC 20005

The agreement may not be altered in any manner.  After you sign and return the agreement, PBGC will sign and return a copy of this agreement to you, with instructions concerning your monthly payments.  Each month's payment will be due on the first day of the month, beginning on the first of the month following the date PBGC executes the agreement and returns it to you.

**CONTINUE** 

**Installment Payment Agreement**
Plan Number: 19933400                                Participant Name: JOHN C LOGAN                **Form 718, page 2 of 2**

## 2.    Installment Payment Agreement

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive. The amount of this debt is entered below. In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments. However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed. If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions. When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt:                    $ _7853.25_

Monthly payment:          $ _130.88_  for _60_ months _JVL_

PBGC Tracking number:    _06 - 246_

By signing this form, I agree to the terms set forth in this agreement.

_____        _____
               Signature                                         Date

Terms accepted by PBGC:

_____        _____
       FOD Collections Official                           Date

_____
           Printed Name



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

504
August 04, 2008

PBGC Case Number:    19933400
Plan Name:    RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

Norm A. Long
2009 E. Imperial Drive
Naples, FL 34110

Dear Norm A. Long:

We previously notified you that you received an overpayment from the Pension Benefit
Guaranty Corporation (PBGC) and requested that you repay the amount in installment
payments. We have not received the completed installment payment agreement.

We are giving you another opportunity to resolve this matter. Enclosed is an **Installment
Payment Agreement** for you to complete and return, **both pages**, to us in the enclosed
postage-paid envelope as soon as possible. Use **only** the enclosed postage-paid envelope to
send us your Installment Payment Agreement. We will not charge you interest if you make
your payments on time.

PBGC does not charge interest on the installment payments. However, if you wish to repay
the debt in a single payment, you may make arrangements to do so by calling our Customer
Contact Center at **1(800) 400-7242**. Please do **NOT** send payments in the envelope provided
for the Installment payment agreement.

If you are financially unable to repay this debt, you may request that we consider waiving or
reducing the debt based on hardship. To request such consideration, please call on the
number that follows. We will send you information on what you need to submit for our
consideration.

If you do not respond to this final request within 30 days of the date of this letter, we have the
right to pursue your debt using any of several legal or collection actions. Those actions are
described in the enclosed information sheet, *PBGC and Debt Collection*.

**Pension Benefit Guaranty Corporation
U.S. Government Agency**

extension **3266**. If you use TTY/TDD, call **1-800-877-8339** and give the relay operator our telephone number and my extension 3266. You may also write us at:

PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

When contacting us, include your Social Security number, PBGC case number 19933400, and your daytime telephone number. Insert this **tracking number 06-217** on all correspondence. Please keep this letter in your records for future reference.

Sincerely,

*Jerome Smith*

Jerome Smith
Auditor
Benefits Administration & Payment Department

Enclosures:
Privacy Act Notice (Short Form)
PBGC and Debt Collection
Form 718 - Installment Payment Agreement
NO CHECKS - FOD #670  1200 K St

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

 **Short Privacy Act Notice**

Pension Benefit Guaranty Corporation.
P.O. Box 151750 Alexandria, VA 22315-1750

**For assistance, call 1-800-400-7242**

## PRIVACY ACT NOTICE

The Privacy Act of 1974, **as amended**, 5 U.S.C. § 552a (1994), requires PBGC to give you this notice when collecting information from you. PBGC uses the information to determine whether and how much of a pension benefit is due you under a private defined benefit pension plan that has terminated, and to make appropriate benefit payments. Your response is voluntary. However, failure to provide information to PBGC, including your Social Security Number, may delay or prevent PBGC from calculating and paying your pension benefits. PBGC may release information about you to other individuals and entities when necessary and appropriate under the Privacy Act. Additional information about when information about you may be disclosed by PBGC may be obtained from PBGC's Customer Contact Center by calling 1-800-400-7242. If you use a TTY/TDD, call toll-free 1-800-877-8339 and give the communications assistant PBGC's telephone number. This information is also available from a Privacy Act notice on PBGC's Internet home page on the World Wide Web at http:\\www.pbgc.gov. PBGC's authority to collect information from you, including your Social Security Number, is derived from 29 U.S.C. §§ 1055, 1056(d)(3), 1302, 1321, 1322, 1322a, 1341 and 1350 (1994).



## PBGC and Debt Collection

### This information sheet describes PBGC's debt collection program.

In our letter, we have described the amount of your debt to PBGC, and requested that you pay it by agreeing to installment payments. If you do not respond promptly to our request for payment, we may take legal or other collection actions, including transferring the debt to the U.S. Treasury Department. The Treasury Department may

- ◆ refer the debt to a private collection agency;
- ◆ report the debt to a credit bureau;
- ◆ refer the debt to the Department of Justice for litigation;
- ◆ offset your debt against any payments that you may be due, including federal tax refunds.

If the Treasury Department reports your debt to a credit bureau, it could disclose the information necessary to establish your identity; the amount, status and history of your debt; and how your debt arose.

If you start making installment payments but do not continue making your payments on time until the entire amount is repaid, we may take any of the above legal or collection actions.

We will not charge interest on this debt if you agree to installment payments and continue to make your payments on time. If you do not agree to installment payments, or if you do not continue to make your payments on time, we will charge interest on your unpaid balance. The interest rate will be the U.S. Treasury's Current Value of Funds Rate for the month in which you defaulted on your installment payment agreement.



# Installment Payment Agreement

**PBGC Form 718**
Approved OMB 1212-0055
Expires 08/31/08

Plan Name: RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
Plan Number: 19933400                         Participant Name: NORM A LONG
Date Printed: 08/04/2008
Date of Plan Termination: 3/31/2003

1. **General information about you** (Be sure to print clearly, use black ink, and stay within the boxes).

| Last Name | First Name |
|---|---|

| Middle Name | Other Name(s) Used |
|---|---|

| Social Security Number | Date of Birth | Gender |
|---|---|---|
| - - | / / | MALE ☐  FEMALE ☐ |

| Mailing Address | Apartment / Route Number |
|---|---|
| City | State | Zip Code |
| Country | Email (optional) |

| Daytime Phone | EXTENSION | Evening Phone |
|---|---|---|
| ( ) - x | | ( ) - |

**INSTRUCTIONS:** If you want to pay your debt in installments, please sign the agreement on the next page and send it to:

> Collections and Compliance Division / PIU, FOD
> Pension Benefit Guaranty Corporation
> 1200 K Street, NW, Suite 670
> Washington, DC 20005

The agreement may not be altered in any manner. After you sign and return the agreement, PBGC will sign and return a copy of this agreement to you, with instructions concerning your monthly payments. Each month's payment will be due on the first day of the month, beginning on the first of the month following the date PBGC executes the agreement and returns it to you.

**CONTINUE ⇨**

## 2. Installment Payment Agreement

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive. The amount of this debt is entered below. In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments. However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed. If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions. When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt: $ _6695.40_

Monthly payment $ _111.59_ for _60_ months _UU_

PBGC Tracking number: _06 -217_

By signing this form, I agree to the terms set forth in this agreement.

_____        _____
Signature                                                          Date

Terms accepted by PBGC:

_____        _____
FOD Collections Official                                    Date

_____
Printed Name



PBGC/Insurance Operations Department
P.O. Box 151750
Alexandria VA 22315-1750

504
August 01, 2008

PBGC Case Number:    19933400
Plan Name:    RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.

Richard J. Russell
14181 Rawhide Pkwy.
Dallas, TX 75234

Dear Richard J. Russell:

We previously notified you that you received an overpayment from the Pension Benefit
Guaranty Corporation (PBGC) and requested that you repay the amount in installment
payments. We have not received the completed installment payment agreement.

We are giving you another opportunity to resolve this matter. Enclosed is an **Installment
Payment Agreement** for you to complete and return, **both pages**, to us in the enclosed
postage-paid envelope as soon as possible. Use **only** the enclosed postage-paid envelope to
send us your Installment Payment Agreement. We will not charge you interest if you make
your payments on time.

PBGC does not charge interest on the installment payments. However, if you wish to repay
the debt in a single payment, you may make arrangements to do so by calling our Customer
Contact Center at **1(800) 400-7242**. Please do **NOT** send payments in the envelope provided
for the installment payment agreement.

If you are financially unable to repay this debt, you may request that we consider waiving or
reducing the debt based on hardship. To request such consideration, please call on the
number that follows. We will send you information on what you need to submit for our
consideration.

If you do not respond to this final request within 30 days of the date of this letter, we have the
right to pursue your debt using any of several legal or collection actions. Those actions are
described in the enclosed information sheet, *PBGC and Debt Collection*.

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**

If you have any questions about this letter, please call me toll-free at **1-800-400-7242**, extension **3266**.  If you use TTY/TDD, call **1-800-877-8339** and give the relay operator our telephone number and my extension 3266.  You may also write us at:

> PBGC/Insurance Operations Department
> P.O. Box 151750
> Alexandria VA 22315-1750

When contacting us, include your Social Security number, PBGC case number 19933400, and your daytime telephone number.  Insert this **tracking number 06-171** on all correspondence. Please keep this letter in your records for future reference.

Sincerely,

*Jerome Smith*

Jerome  Smith
Auditor
Benefits Administration & Payment Department

Enclosures:
Privacy Act Notice (Short Form)
PBGC and Debt Collection
Form 718 - Installment Payment Agreement
NO CHECKS - FOD #670  1200 K St

**Pension Benefit Guaranty Corporation**
**U.S. Government Agency**



## Short Privacy Act Notice

**PBGC**
Pension Benefit Guaranty Corporation.
P.O. Box 151750 Alexandria, VA 22315-1750

**For assistance, call 1-800-400-7242**

### PRIVACY ACT NOTICE

The Privacy Act of 1974, **as amended**, 5 U.S.C. § 552a (1994), requires PBGC to give you this notice when collecting information from you. PBGC uses the information to determine whether and how much of a pension benefit is due you under a private defined benefit pension plan that has terminated, and to make appropriate benefit payments. Your response is voluntary. However, failure to provide information to PBGC, including your Social Security Number, may delay or prevent PBGC from calculating and paying your pension benefits. PBGC may release information about you to other individuals and entities when necessary and appropriate under the Privacy Act. Additional information about when information about you may be disclosed by PBGC may be obtained from PBGC's Customer Contact Center by calling 1-800-400-7242. If you use a **TTY/TDD**, call toll-free 1-800-877-8339 and give the communications assistant PBGC's telephone number. This information is also available from a Privacy Act notice on PBGC's Internet home page on the World Wide Web at http:\\www.pbgc.gov. PBGC's authority to collect information from you, including your Social Security Number, is derived from 29 U.S.C. §§ 1055, 1056(d)(3), 1302, 1321, 1322, 1322a, 1341 and 1350 (1994).



**PBGC**
Protecting America's Pensions

PBGC and Debt Collection

This information sheet describes PBGC's debt collection program.

In our letter, we have described the amount of your debt to PBGC, and requested that you pay it by agreeing to installment payments. If you do not respond promptly to our request for payment, we may take legal or other collection actions, including transferring the debt to the U.S. Treasury Department. The Treasury Department may

- ♦ refer the debt to a private collection agency;
- ♦ report the debt to a credit bureau;
- ♦ refer the debt to the Department of Justice for litigation;
- ♦ offset your debt against any payments that you may be due, including federal tax refunds.

If the Treasury Department reports your debt to a credit bureau, it could disclose the information necessary to establish your identity; the amount, status and history of your debt; and how your debt arose.

If you start making installment payments but do not continue making your payments on time until the entire amount is repaid, we may take any of the above legal or collection actions.

We will not charge interest on this debt if you agree to installment payments and continue to make your payments on time. If you do not agree to installment payments, or if you do not continue to make your payments on time, we will charge interest on your unpaid balance. The interest rate will be the U.S. Treasury's Current Value of Funds Rate for the month in which you defaulted on your installment payment agreement.



**PBGC**
Protecting America's Pensions

## Installment Payment Agreement

PBGC Form 718
Approved OMB 1212-0055
Expires 08/31/08

---

Plan Name: RET. INCOME PLAN FOR PILOTS OF US AIRWAYS INC.
Plan Number: 19933400
Date Printed: 08/01/2008        Participant Name: RICHARD J RUSSELL
Date of Plan Termination: 3/31/2003

---

1. General information about you  (Be sure to print clearly, use black ink, and stay within the boxes).

| Last Name | First Name |
|---|---|

| Middle Name | Other Name(s) Used |
|---|---|

| Social Security Number | Date of Birth | Gender  MALE ☐  FEMALE ☐ |
|---|---|---|

| Mailing Address | Apartment / Route Number |
|---|---|
| City | State  Zip Code |
| Country | Email (optional) |

| Daytime Phone  (   )     -       x  EXTENSION | Evening Phone  (   )     -      |
|---|---|

**INSTRUCTIONS:** If you want to pay your debt in installments, please sign the agreement on the next page and send it to:

> Collections and Compliance Division / PIU, FOD
> Pension Benefit Guaranty Corporation
> 1200 K Street, NW, Suite 670
> Washington, DC 20005

The agreement may not be altered in any manner. After you sign and return the agreement, PBGC will sign and return a copy of this agreement to you, with instructions concerning your monthly payments. Each month's payment will be due on the first day of the month, beginning on the first of the month following the date PBGC executes the agreement and returns it to you.

**CONTINUE** ➡

| Installment Payment Agreement | Form 718, page 2 of 2 |
|---|---|
| Plan Number: 19933400     Participant Name: RICHARD J RUSSELL | |

## 2.    Installment Payment Agreement

I acknowledge that I owe the Pension Benefit Guaranty Corporation (PBGC) a debt for pension benefits that I received, but was not entitled to receive.  The amount of this debt is entered below.  In exchange for PBGC's agreement to not demand payment at once of the entire amount of this debt or to take legal or other collection actions, I agree to make monthly payments in the amount indicated below until my debt is fully repaid.

No interest will accrue on the balance while I continue to make timely installment payments.  However, I understand that PBGC may declare me to be in default 60 days after a missed payment, and that simple interest will then accrue on the total remaining unpaid balance at the same rate as the U. S. Treasury Department's Current Value of Funds Rate for the month in which the (first) payment was missed.  If interest accrues, my payments will first be applied to outstanding interest, then to reduce the principal amount.

In addition, I understand that PBGC may take legal or other collection actions.  When an installment payment is 90 days late, PBGC may forward the debt to the U.S. Treasury Department for debt collection action, including tax refund offset, Social Security benefit offset, and/or wage garnishment.

Total debt:                  $ 5015.70

Monthly payment         $ 83.59   for 60 months 1/10

PBGC Tracking number:      06-171

By signing this form, I agree to the terms set forth in this agreement.


_____        _____
            Signature                              Date


Terms accepted by PBGC:


_____        _____
        FOD Collections Official                    Date


_____
            Printed Name

# Exhibit E

LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
ATTORNEYS AT LAW
1301 Travis St., Suite 210 * Houston, Texas 77002
P.O. Box 3585 * Houston, Texas 77253-3585
(713) 422-7111
(877) 815-8501 Toll Free
FAX (713) 422-7112
Email: lgbs.department@publicans.com

July 08, 2008

ROBERT EVERTS
3710 HIDDEN RIVER RD
SARASOTA FL 34240-8867

FEDERAL AGENCY :PENSION BENEFIT GUARANTY
ACCOUNT          : REDACTED 514A
BALANCE          :$7,637.24

NOTICE OF DEBT

Dear ROBERT EVERTS:

This letter serves as formal notice that the U.S. Department of the Treasury, Financial Management Services (FMS), has referred your delinquent debt to Linebarger Goggan Blair & Sampson, LLP (LGBS) to begin collection effort on your delinquent balance owed to the PENSION BENEFIT GUARANTY.

Due to your failure to repay this obligation, the entire unpaid balance of your debt, including any interest, penalty charges, fees and collection costs, is now due and payable.  The "Balance" shown above includes the amount needed to satisfy your entire debt as of the date of this letter.

Payment in full, payable to "U. S. Department of the Treasury - FMS" may be made by mailing your payment, along with the attached coupon, in the enclosed return envelope.  You may also contact a LGBS account representative toll free at 1-877-815-8501 in order to arrange to repay this debt.

Unless you notify this office within thirty days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify us in writing within thirty days after receiving this notice, this office will obtain verification of the debt or a copy of a judgment against you and mail a copy to you. If you make a request on this office in writing within thirty days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

Linebarger Goggan Blair & Sampson, LLP

*Susan Cummings*

Susan Cummings
Attorney At Law

LGBS-1                    *NOTICE:  SEE REVERSE SIDE FOR ADDITIONAL INFORMATION
                          LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
                 Office Hours: 8:00 AM to 9:00 PM Mon - Thur (CST); 8:00 AM to 5:00 PM Fri (CST)

-------------------------------------------------------------------------------------------------------

PLEASE DETACH THIS STUB AND RETURN WITH PAYMENT

[ ] Check here for change of address and complete the reverse side.

U.S. Department of the Treasury - FMS
Debtor Identification NumberREDACTED514A

AMOUNT DUE: $7,637.24
AMOUNT ENCLOSED: $_____

Please Check Payment Type:                    Make check payable to: U.S. Department of the Treasury - FMS
Check/Money Order [ ]  Mastercard [ ]  VISA [ ]  Discover [ ]  American Express [ ]  Diner's Club [ ]

Credit Card Number: __ __ __ __ __ __ __ __ __ __ __ __ __ __ __        Expiration Date: __ __ / __ __

Signature: _____
REMIT TO:

U.S. Department of the Treasury - FMS              ROBERT EVERTS
*Linebarger, Goggan, Blair & Sampson, LLP*        3710 HIDDEN RIVER RD
P.O. Box 70955                                     SARASOTA FL 34240-8867
Charlotte, NC 28272-0955

REDACTED    514A 0000763724 5

We are required under various State laws to notify consumers of the following rights. This list does not include a complete listing of rights consumers may have under State and Federal law.
**\*This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

## ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS:  NOTICE OF IMPORTANT RIGHTS

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to us at our law firm address.

## ADDITIONAL INFORMATION FOR CALIFORNIA RESIDENTS:

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov. Nonprofit credit counseling services may be available in the area.

The Rosenthal Act, California Civil Code Section 1788.21, also requires that you notify your creditor of your change of name, address, or employment for any existing consumer credit.

## ADDITIONAL INFORMATION FOR COLORADO RESIDENTS:

For Information about the Colorado Fair Debt Collection Practices Act, See
WWW.AGO.STATE.CO.US/CADC/CADCMAIN.CFM.

## ADDITIONAL INFORMATION FOR MINNESOTA RESIDENTS:

This collection agency is licensed by the Minnesota Department of Commerce.

## ADDITIONAL INFORMATION FOR TENNESSEE RESIDENTS:

This collection agency is licensed by the Collection Service Board State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243.

\*The following applies to any recipient of this letter who is entitled to the protections afforded by the United States Bankruptcy Code. This letter is for informational and verification purposes only. This letter is not a demand for payment nor an attempt to collect, assess or recover a claim against you that arose before the commencement of your case. In the event you have filed for bankruptcy protection, please notify us in writing and provide to us your case number and identify the Court in which your case is pending.

| **Change of Address** | Has your address, telephone number or fax number changed? |
| | If so, please indicate the change. |

Name_____    Home Phone_____

Address_____    Business Phone_____

City_____    Fax Number_____

State_____Zip_____

#BWNGWTF
#3719 01XX 1XXX XX0#
ROBERT EVERTS
3710 HIDDEN RIVER RD
SARASOTA FL 34240-8867

1,512
371901

# Exhibit F

**DEPARTMENT OF THE TREASURY**
**FINANCIAL MANAGEMENT SERVICE**
**P.O. BOX 1686**
**BIRMINGHAM, AL 35201-1686**

**ATTENTION:  YOUR SOCIAL SECURITY BENEFIT PAYMENT MAY BE REDUCED**

08/13/08                                          **THIS IS NOT A BILL**

ROBERT A EVERTS
3710 HIDDEN RIVER RD
SARASOTA, FL  34240

Dear  ROBERT A EVERTS:

The Federal agency named below notified the U.S. Department of the Treasury's Financial Management Service (Treasury) that you owe that agency a delinquent debt.  Federal law (31 U.S.C. § 3716) requires Treasury to reduce the amount of your Social Security benefit payments to pay this debt, a process known as "offset."  Beginning no sooner than  10/2008, Treasury will offset up to 15% of each of your monthly Social Security benefit payments until your debt is paid or otherwise resolved. Treasury will not reduce any of your payments to less than $750 for a non-tax debt.  Your Social Security benefit payments will be reduced each month unless you contact the following agency and meet their requirements to stop the monthly reductions:

Debt Management Servicing Center              **888-826-3127**
Financial Management Service                       **(888) 826-3127**
DMSC - Birmingham Office
P. O. Box 830794                                        Acct Num: REDACTED 514A
Birmingham           AL  35283-0794            TIN Num: REDACTED 2807

The agency has previously sent notice to you at the last address known to the agency.  The notice(s) included information on the amount and type of debt you owe, the rights available to you, and a statement of the agency's intent to collect the debt by reducing any Federal payments made to you.  The agency submitted your debt to Treasury for collection because you failed to pay or otherwise resolve the debt.  The Social Security Administration and Treasury cannot answer your questions about a debt you owe to another Federal agency. Only the agency to which you owe the debt can assist you in resolving it.

Please note that Treasury may reduce your Social Security benefit payments to collect more than one debt. If you owe debts to more than one Federal agency, Treasury will apply the amounts deducted from your Social Security benefit payments to each debt in the order required by law.  **IF YOU RECEIVE OTHER FEDERAL PAYMENTS, THEY MAY BE REDUCED TO PAY YOUR DELINQUENT DEBT WITHOUT ADDITIONAL NOTICE.**

U.S. Department of the Treasury
Financial Management Service
(800) 304-3107
Telecommunications Device for the Deaf (TDD) (866) 297-0517

PAYEE NAME:   ROBERT A EVERTS                        PAYEE TIN: REDACTED 2807
PAYING FEDERAL AGENCY:   Social Security Administration   PAYMENT DATE: 10/2008
PAYMENT TYPE: EFT                                              BENEFICIARY TIN REDACTED 2807
CLAIM ACCT NUM: REDACTED 107 A

For Official Use Only:    0000000837 00000000008932280700000007126AWRN-SSAR®BE000837
SWI207



# Exhibit G



Timothy P. O'Toole
Of Counsel
(202) 626-5552
totoole@milchev.com

August 27, 2008

<u>**Via E-mail and Federal Express**</u>
Joseph J. Shelton
Attorney
Pension Benefit Guaranty Corporation
1200 K Street, N.W., Suite 900
Washington, D.C.  20005-5701


<u>**Via Regular Mail**</u>
Jerome Smith
Auditor
Benefits Administration and Payment Department
P.O. Box 151750
Alexandria, VA  22315-1750


Re:    *(1) Request To Continue Installment Option until Resolution of Preliminary Injunction Motion in Related Litigation, and (2) Request for Instructions Regarding Information Necessary to Submit in order to Claim Hardship Exception*


Dear Mr. Shelton and Mr. Smith:

As you know, my law firm represents a group of retired US Airways Pilots who are challenging the decision by the Pension Benefit Guaranty Corporation ("PBGC") to reduce the vested pension benefits of retired US Airways pilots upon termination of their ERISA plan by US Airways.  On June 20, 2008, we commenced on their behalf a lawsuit against the PBGC in the United States District Court for the District of the District of Columbia, which is docketed under the case number 1:08-cv-01064 (JR).  On August 15, 2008, we filed an Amended Complaint in that action.

In the past few months, the PBGC and its representatives have begun sending notices to my clients seeking to recover or recoup funds the PBGC claims were "overpaid" to them.  We are aware of at least 50 such recoupment and recovery notices that have been sent to our clients in the past few months, and we attach a list of those pilots to this correspondence.  There are undoubtedly more of these recoupment or recovery actions of which we are not yet aware, given the PBGC's position that it need not send such notices to our clients through counsel.  As of August 1, 2008, it appears the PBGC has begun to send a second round of notices indicating that

Miller & Chevalier Chartered

655 Fifteenth Street, N.W., Suite 900 · Washington, D.C. 20005-5701 · 202-626-5800 · 202-628-5801 FAX · millerchevalier.com

891849.1

Joseph J. Shelton, Esq.
Mr. Jerome Smith
August 27, 2008
Page 2

our clients must accept installment terms within 30 days or otherwise potentially face immediate debt collection actions.

It is our position, as expressed in the lawsuit, that the PBGC still owes the pilots additional benefit payments, and not vice versa, and that they have no legal obligation to pay money to your agency. In light of this good faith dispute, we earlier requested that the PBGC voluntary stay these sorts of collection actions pending completion of the lawsuit. On July 11, 2008, the PBGC rejected this request on the ground that the filing of a lawsuit is not a "sufficient reason to stay our recoupment and recovery efforts." Before the close of this week, we accordingly will file a motion for a preliminary injunction asking the district court to halt any recovery and recoupment actions during the pendency of the lawsuit in order to maintain the status quo while the Court conducts the judicial review provided for under ERISA and the Administrative Procedure Act.

On the behalf of all of our clients who have received recoupment and recovery notices, including but not limited to those listed in the attachment, we send this letter to preserve, during the district court's consideration of the preliminary injunction motion, the option of repaying any purported overpayments in installments rather than in a single lump sum payment. Such an option is afforded in the recoupment and recovery notices sent by the PBGC. That option should be left open pending litigation of the preliminary injunction motion for each retired pilot. Should the district court deny the preliminary injunction motion, each pilot should then have 30 days to elect to repay any purported overpayment in installments. This would prevent pilots from being punished solely for their decision to seek to preserve the status quo pending disposition of the litigation. After the PBGC has taken many months to resolve our clients' administrative cases, the only fair thing to do is for the PBGC now to likewise continue the installment option for the short time it will take the district court to resolve the preliminary injunction motion.

The recoupment notices also advise each affected pilot that the PBGC will consider reducing or waiving repayment on the basis of hardship, and it asks that they contact the PBGC regarding the information necessary to present to the PBGC in order to claim hardship. The distress termination of their pension plan has already resulted in significant and difficult reductions to the planned retired incomes of all of the retired pilots, in light of the fact that their plan was grossly underfunded. As Congress has recognized, recoupment and recovery actions would undoubtedly create additional financial hardships, particularly when taken against pensioners living on fixed incomes. *See* H.R. Rep. No. 99-300, at 299 (1985), *reprinted in* 1986 U.S.C.C.A.N. 756, 950. Indeed, the PBGC has argued the burdens imposed by recoupment actions in related litigation. *See* PBGC Memorandum in Opposition To Preliminary Injunction, *Boivin v. US Airways, Inc.*, No. 03-cv-2373 (D.D.C. Nov. 24, 2003). We accordingly believe that all of our clients in this matter should be eligible for the hardship exemption and we hereby

891849.1

Joseph J. Shelton, Esq.
Mr. Jerome Smith
August 27, 2008
Page 3

invoke the hardship exception.  We request that you send to us the instructions regarding the information necessary to submit in order for the PBGC to consider a hardship waiver for each of our clients.

Thank you for your attention to this matter.

Sincerely,

Timothy P. O'Toole

cc:    Joseph M. Krettek (via e-mail)
       Bill Condron (via e-mail)

Enclosures

891849.1

**Retired Pilots Who Have Received a Recoupment or Recovery Notice**

| Last Name | First Name | MI | Closed Case No. |
|---|---|---|---|
| Abeln | Paul | J. | 06-216 |
| Ashbaugh | John | I. | 06-197 |
| Billups | Donald | | 06-215 |
| Bittick | Johnny | M. | 06-237 |
| Bloomer | Phil | R. | 06-220 |
| Borchin | George | G. | 06-229 |
| Boyer | Gary | A. | |
| Burrows | Donald | M. | 06-245 |
| Clegg | Edward | T. | |
| Constans | John | N. | |
| Councilman | John | D. | 06-183 |
| Cranson | Michael | O. | 06-161 |
| Daily | David | W. | 06-176 |
| Dean | Paul | A. | 06-196 |
| DeLawter | Wayne | E. | 06-238 |
| Douglass | Donald | M. | 06-208 |
| Drury | Larry | A. | 06-200 |
| Dyer | Donald | J. | 06-203 |
| Eaton | Clare | C. | 06-186 |
| Emery | Richard | G. | |
| Everts | Robert | | |

1

891739.1
891739.1

| **Last Name** | **First Name** | **MI** | **Closed Case No.** |
|---|---|---|---|
| Fahs | Philip | J. | 06-194 |
| Faraday | Ronald | A. | 06-162 |
| Fisher | Richard | R. | 06-205 |
| Gallagher | Denis | F. | 06-248 |
| Green | William | E. | 06-172 |
| Harbour | Jay | L. | 06-244 |
| Harris | Philip | A. | 06-219 |
| Hernett | Charles | X. | 07-498 |
| Hofstra | Gordon |  | 06-221 |
| Kiszely | Frank |  | 06-209 |
| Knebel | George | W. | 06-230 |
| Leighton | George (Paul) | P. | 06-180 |
| Lencses | David | B. | 06-214 |
| Logan | John | C. | 06-246 |
| Long | Norman | A. | 06-217 |
| Longo | Joseph (Steve) | S. |  |
| Lucas | John | W. | 06-225 |
| Marshall | Mike | N. | 06-179 |
| McCravy | Dewey | H. | 06-193 |
| McLin | Keeling (Buster) | F. | 06-188 |
| Mize | Harold | L. | 06-199 |
| Money | Lanny | J. | 06-177 |
| Musselman | Dennis | G. | 06-168 |
| Nelson | Clyde | J. |  |
| Paglia | Gary | W. | 06-181 |

891739.1
891739.1

| Last Name | First Name | MI | Closed Case No. |
|-----------|-----------|-----|-----------------|
| Powell | John | D. | 07-497 |
| Purcell | George | R. | 06-241 |
| Resh | Larry | J. | 06-227 |
| Ripka | James | H. | 06-164 |
| Robson | Norbert (Robby) | G. | 06-198 |
| Rosborough | Donald | L. | 06-218 |
| Russell | Richard | J. | 06-171 |
| Scott | Richard | W. | 06-252 |
| Shardy | James | E. | 06-231 |
| Shaw | Eugene (Gene) | H. | 06-232 |
| Speight | James | H. | 06-165 |
| Stanley | Larry | D. | |
| Stein | Peter | C. | 06-254 |
| Thompson | John | R. | 06-190 |
| Tice | C. | Douglas | 06-204 |
| Vandergrift | Ronald | P. | 06-222 |

3

# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Thomas G. Davis, *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:08-cv-01064 (JR) |
| v. | ) | |
| | ) | |
| Pension Benefit Guaranty Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF THOMAS G. DAVIS

Pursuant to 28 U.S.C. § 1746, I, Thomas G. Davis, declare under penalty of perjury as follows:

1.     My name is Thomas G. Davis.  I am over eighteen years old, and I am competent to make this declaration.  Unless otherwise stated herein, the facts set forth below are based on my personal knowledge.

2.     Prior to my retirement from US Airways, Inc., I was active in the Air Line Pilots Association and served on the Board of Directors, as Council Chairman, Master Executive Vice Chairman, Merger Representative and negotiator.  After 32 years as a commercial airline pilot for US Airways, Inc. and its predecessors, my active flying career ended in 1993 due to disability.

3.     I am currently the Retirement Committee Chairman for the Retired Pilots Association of US Airways, Inc.  In my position, I address matters regarding health and welfare benefits of the Retired Pilots.  I am also responsible for coordinating matters on behalf of Retired Pilots who are participating in the legal actions related to the Retired Income Plan for Pilots of US Airways, Inc.  I have held this position since January 30, 2003.

4.    The Retired Pilots participating in this lawsuit generally retired from US Airways, Inc. at age 60 pursuant to the mandatory retirement age that was imposed by the Federal Aviation Administration. The recent change of statute in raising the mandatory retirement age to 65 had no significant impact on these Retired Pilots. Others ended their active service with US Airways, Inc. as a result of disability.

5.    The participating Retired Pilots range in age from 49 to 96, and the median age is 67. Since the Retired Pilots discontinued working because of either age or disability, they, as do most retirees, live on the fixed incomes and have limited opportunities to work to supplement that income. Regardless of disability status, the Retired Pilots experience significant medical conditions common to the elderly, including Alzheimer's, neuromuscular and cardiovascular disease.

6.    Before US Airways, Inc. terminated the Plan on March 31, 2003, benefit payments for Retired Pilots were recalculated to the estimated benefits that would be paid following termination. In November 2003, the Plaintiffs sued US Airways, Inc. and PBGC in order to correct mistakes made in calculating the estimated benefits, mistakes which resulted in incorrectly low benefit payments. Our lawsuit was ultimately dismissed in part because PBGC had not issued formal determinations against which we could exhaust administrative remedies.

7.    The formal benefit determinations that were issued by the PBGC in 2006 and 2007 contained additional inaccuracies that understated benefits. We filed a consolidated appeal on March 23, 2007, challenging the miscalculations. After almost a year, the PBGC Appeal Board's February 29, 2008 decision upheld the faulty methodology used in the initial formal determinations, although it also determined that unspecified mathematical errors had occurred in a number of the benefit determinations.

8.    Based on my knowledge of the age and medical conditions of the Retired Pilots, many will not survive to personally receive increased benefits that would result from a favorable outcome to this lawsuit. According to my records, 148 Retired Pilots have died since the first complaint against the Pension Benefits Guaranty Corporation ("PGBC") was filed on November 17, 2003. Of these deceased pilots, 112 were participating in this litigation. Ten of those deaths have occurred since the February 29, 2008 PBGC Appeals Board decision was issued.

9.    In the time since I have been the Retirement Committee Chairman for the Retired Pilots Association of US Airways, Inc., I have witnessed first-hand the serious physical and emotional toll that the pension benefits cuts have had on our members. I have had conversations with our members, in which their frustration with the unfairness of the process and its results, have resulted in what I perceived to be serious threats of suicide. These harms have only been exacerbated by the threatened recoupment and recovery actions, about which I am contacted on a regular basis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 21 st day of August, 2008, in *Collierville* Tennessee.


_____
Thomas G. Davis

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Thomas G. Davis, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:08-cv-01064 (JR) |
| | ) | |
| Pension Benefit Guaranty Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION**

THIS MATTER, having come before the Court on the Plaintiffs' Motion for Preliminary

Injunction pursuant to Fed. R. Civ. P. 65, and

WHEREAS, it appearing to the Court that the balance of equities weighs strongly in

favor of maintaining the status quo pending resolution of this litigation, it is now therefore

ORDERED that the Plaintiffs' Motion for Preliminary Injunction is granted. The Court hereby

enjoins defendant Pension Benefit Guaranty Corporation from pursuing recoupment and/or

recovery actions for claimed "overpayments" made to the Plaintiffs until the instant litigation has

been completed.  The Court further directs the PBGC to preserve for Plaintiffs the option of

installment payments in the event recoupment is warranted and to otherwise preserve the status

quo with respect to recoupment through the close of this litigation.

SO ORDERED this _____ day of _____, 2008.


_____
James Robertson
United States District Judge

885701.1