UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS G. DAVIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PENSION BENEFIT GUARANTY CORPORATION,<br><br>Defendant. | Civil Action 08-01064 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' cross-motions for summary judgment [## 45, 54] on claim eight of plaintiffs' second amended complaint, which alleges that defendant Pension Benefit Guaranty Corporation ("PBGC"), in its role as statutory trustee of plaintiffs' pension plan, erroneously interpreted the "minimum benefit" provision thereof. Both motions will be denied without prejudice because plaintiffs' improper reliance on extra-record materials prevents the Court from fairly adjudicating the merits of the parties' motions.

**I. BACKGROUND**

Plaintiffs are a group of more than 1,700 US Airways pilots, mostly now retired. In 2003, thanks to US Airways's bankruptcy, PBGC became the statutory trustee of plaintiffs' pension plan ("the Plan"), a role it typically takes on when a pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, terminates without enough assets to pay all of its promised benefits. *See Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 150–51 (D.C. Cir. 2006). When serving as a statutory trustee, PBGC "wears two hats: one as

guarantor of ERISA's insurance program . . . and one as trustee." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 331 (4th Cir. 2007).

After becoming the Plan's trustee, PBGC issued final benefit determinations, which, plaintiffs allege, provided lesser benefits than the Plan and ERISA entitled the pilots to receive. In March 2007, a number of pilots filed a consolidated administrative appeal with PBGC, arguing, inter alia, that PBGC had improperly applied the Plan's "minimum benefit provision." A.R. at 243–57 [#48-4]. In short, the minimum benefit provision guarantees pilots who were beneficiaries of the Plan's predecessor, which was replaced in 1973, the greater of: (1) the normal fixed benefit provided by the current plan; or (2) "that to which he would have been entitled . . . had the Prior Plan continued in effect without change," with certain adjustments. A.R. at 623 [#49-3].

In February 2008, PBGC's Appeals Board issued a final decision on most of the pilots' claims, including their minimum benefit claim. A.R. at 2–220 [#48]. The Board determined that the pilots' arguments were foreclosed by the language of the minimum benefit provision and US Airways' longstanding interpretation thereof. A.R. at 29–36 [#48]. Plaintiffs then filed this suit, challenging the Board's determination as contrary to the Plan's language and ERISA.

## II.  ANALYSIS

In March 2010, plaintiffs filed their motion for summary judgment on claim eight, which deals with the minimum benefit provision. They attached a statement of material facts not in genuine dispute, which is required by the Local Rules in most civil actions, and numerous exhibits. PBGC then filed the administrative record [## 48–53] and its cross-motion, which not only opposes plaintiffs' arguments on the merits but also contends that plaintiffs erred by treating

this as a typical civil case, rather than an action seeking judicial review of agency action, which follows different procedures. Specifically, PBGC argues that: (1) the Court's review is limited to determining whether the Board's decision was arbitrary, capricious, or an abuse of discretion in the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702(a)(2), and (2) the Court's review is restricted to the administrative record filed by PBGC. PBGC is correct on both counts.

**A.     Standard of Review**

Plaintiffs bring their claims under 29 U.S.C. 1303(f), which provides in relevant part that "any . . . participant, or beneficiary, [who] is adversely affected by any action of [PBGC] with respect to a plan in which such person has an interest . . . may bring an action against the corporation for appropriate equitable relief in the appropriate court." 29 U.S.C. § 1303(f)(1). Section 1303(f) does not state a standard of review.

Plaintiffs argue that the Court should apply the standard that governs ERISA suits against private administrators or fiduciaries pursuant to 29 U.S.C. § 1132(a)(1)(B). In such cases, "the standard of review — variously described by the [Supreme] Court as 'arbitrary and capricious' and 'abuse of discretion' review — is plainly deferential." *Wagener v. SBC Pension Benefit Plan-Non Bargained Program*, 407 F.3d 395, 402 (D.C. Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–15 (1989)). PBGC contends that, because it is a government agency, its actions should be reviewed under the standard provided by the APA, which similarly requires the Court to set aside actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(a)(2). The parties thus agree on the baseline standard of review. They diverge, however, on whether the Court should

3

consider whether PBGC is operating under a conflict of interest. Under plaintiffs' proposed standard, the Court's deference wanes where "an administrator or fiduciary . . . is operating under a conflict of interest"; in that situation, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115 (quoting RESTATEMENT (SECOND) OF TRUSTS § 187 cmt. d (1959)) (alteration in original); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (holding that a conflict of interest exists where an employer both evaluates and pays benefits claims).[1] PBGC responds that, because the APA governs here, plaintiffs' proposed conflict analysis is inapplicable. The Court agrees with PBGC.

As the Court has previously explained in a case involving PBGC, "[i]n general, where an act of Congress does not specify a standard for judicial review, the court must apply the familiar deferential standard of the APA and ask whether the agency's action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan*, 512 F. Supp. 2d 32, 37 (D.D.C. 2007) (quoting 5 U.S.C. § 706(2)(A)). Other Courts have likewise determined that PBGC's "decisions generally are reviewable under the standard set out in the Administrative Procedure Act." *Dycus v. Pension Ben. Guar. Corp.*, 133 F.3d 1367, 1369 (10th Cir. 1998). Plaintiffs offer the Court no basis to find otherwise here.[2]

---

[1] The conflict that plaintiffs allege flows from PBGC's dual roles as trustee and guarantor, which, plaintiffs aver, create a financial incentive for PBGC to restrict benefit payments. *See* Pls.' Mem. in Supp. of Partial Summ. J. ("Pls.' Mem.") [#45] at 20–24; Pls.' Reply & Opp'n to Def.'s Cross-Motion for Summary Judgment ("Pls.' Reply") [#57] at 3–9.

[2] The Court does not disagree with plaintiffs' assertion that the trust law principles applied by the Supreme Court in *Firestone* and *Glenn* appear to apply equally to PBGC, which, as trustee, can take any action that an administrator could take. 29 U.S.C. § 1342(d)(1)(A)(i). But, as PBGC points out, *Firestone*'s holding was expressly "limited to the appropriate standard of review in § 1132(a)(1)(B) actions." *Firestone*, 489 U.S. at 108. Thus, it is not binding here, and plaintiffs offer no other avenue to avoid the default presumption that federal agency actions

Accordingly, the Court will not reverse PBGC's determination unless PBGC "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *cf. Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–17 (1971) (courts reviewing agency action under § 706 conduct a "searching and careful" but "narrow" inquiry).  And the Court will not, as plaintiffs urge, consider circumstances external to PBGC's decisionmaking process in order to determine whether an otherwise-reasonable conclusion has been tainted by bias.  *See Glenn*, 554 U.S. at 117 (describing how courts might account for conflicts in § 1132(a)(1)(B) suits).[3]

**B.      The Materials Properly Before the Court**

Because the Court's review will proceed under the APA, that review should be based on "the whole [administrative] record or those parts of it cited by a party."  5 U.S.C. § 706; *see Ctr. for Auto Safety v. Fed. Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992).  The "whole record" includes "all documents and materials that the agency 'directly or indirectly considered,'"

---

are, where the governing statute is silent, reviewed pursuant to the APA. *See, e.g.*, *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496 (2004) ("Because the Act itself does not specify a standard for judicial review in this instance, we apply the familiar default standard of the Administrative Procedure Act . . . ." (footnote omitted)).

[3]     Although the Court's review will not account for PBGC's alleged conflict, it will, of course, test the consistency and rigor of PBGC's reasoning.  Thus, if plaintiffs are correct that, as a result of its conflict, PBGC failed to "grapple with contrary evidence," Pls.' Mem. at 24, the APA standard will provide relief, regardless of the cause of that failure.  *See State Farm*, 463 U.S. at 43 (a decision is arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency").

and nothing more. *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)); *see IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) ("[C]ourts base their review of an agency's actions on the materials that were before the agency at the time its decision was made."). It is thus problematic that, as noted above, plaintiffs initially proceeded as though this case did not involve judicial review of agency action, filing a statement of material facts not in genuine dispute and numerous exhibits. Plaintiffs now acknowledge that the Court's review should begin with the administrative record developed by PBGC, but argue that the Court may nevertheless consider all of their exhibits either because they were before the Board when it reached its decision or because they are necessary for effective judicial review. The Court does not agree.

      1.      **The *Everett* Materials and the Standard & Poor's Documents**

Plaintiffs first argue that 16 of their exhibits may be considered by the Court because they were before the Board when it reached its decision: 14 documents that were part of the court record in the *Everett v. US Air Group* litigation,[4] and two documents from Standard & Poor's regarding the S&P 500 equity indices.[5] Plaintiffs conclude that these materials were before the Board because the Board's decision included sections discussing the *Everett* litigation and the

---

[4] In *Everett*, a number of pilots brought suit over the proper interpretation of the minimum benefit provision. The court dismissed their claims, concluding that they were subject to the mandatory arbitration provisions of the Railway Labor Act, 45 U.S.C. § 181 *et seq*. *Everett v. USAir Grp., Inc.*, 927 F. Supp. 478, 481, 482–86 (D.D.C. 1996), *aff'd*, 194 F.3d 173 (D.C. Cir. 1999) (unpublished table decision).

[5] The Standard and Poor's materials are relevant to this dispute because the minimum benefit provision relies on the performance of the S&P 500 to determine benefits (although precisely how is disputed).

S&P 500 indices, and attached or referred to similar or related documents on each topic. Plaintiffs' arguments are unavailing.

There is a "standard presumption that the 'agency properly designated the Administrative Record'" and did not leave out any materials that it considered in reaching the challenged decision. *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (quoting *Bar MK Ranches*, 994 F.2d at 740). To overcome this presumption, "[p]laintiff[s] cannot merely assert that other relevant documents were before the PBGC but were not adequately considered. Instead, plaintiff[s] 'must identify reasonable, non-speculative grounds for [their] belief that the documents were considered by the agency and not included in the record.'" *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008) (quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)).

Here, plaintiffs can make no such showing. PBGC has produced a declaration from the chair of the Appeals Board, attesting that the Board had before it only those *Everett* materials that the pilots actually submitted, along with two appendices that the parties filed with the Supreme Court in connection with the plaintiffs' unsuccessful petition for certiorari. Vernon Decl. [#59-1] ¶¶ 7–9; *see Everett v. US Airways Grp., Inc.*, 528 U.S. 815 (1999) (denial of petition for writ of certiorari). In the face of this uncontroverted evidence, plaintiffs' unsupported assertion that the Board "culled" the *Everett* record for favorable evidence cannot be sustained. Likewise, it is irrelevant that the Board may have considered older versions of the Standard & Poor's documents that plaintiffs offer; in the absence of "reasonable, non-speculative grounds" for the

conclusion that the Board possessed or relied on these *specific* documents, *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6, the Court cannot consider them.

### 2. The Schofield Declaration

Next, plaintiffs argue that the Court may properly consider the declaration of Seth Schofield, former CEO of US Airways, which describes the 1972 negotiations that led to the creation of the new plan (including the minimum benefit provision). *See* Pls.' Mem. Ex. E. They concede that the Schofield declaration was not presented to the Board, but argue that the Court may nonetheless consider it because it undermines the factual basis for the Board's decision (by showing that the minimum benefit provision was not intended to exclude any of the Prior Plan's provisions). They also fault the Board for not accepting their offer to present more evidence in support of their claim (which would apparently have included the Schofield declaration).[6] PBGC responds that plaintiffs have failed to establish that any exception to the general rule barring extra-record evidence applies here. PBGC is correct.

Plaintiffs' argument relies heavily on a trio of district court decisions applying *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989), which recognized eight exceptions to the principle that judicial review of agency action is restricted to the administrative record.[7] In each case, the district court accepted an extra-record exhibit that shed light on the utility and reliability of the

---

[6] Plaintiffs do not clearly state that the Schofield declaration was among the evidence that they could or would have provided if the Board had accepted their offer to provide more information, but their appeal brief suggests that it was. *See* A.R. at 255 [#48-4].

[7] Subsequent decisions appear to recognize fewer exceptions than did *Esch*. *See, e.g.*, *IMS*, 129 F.3d at 623; *Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 115–16 (D.D.C. 2009) (noting that some cases, including *IMS*, recognize only four exceptions). Here, this fact is unimportant because, as explained below, the cases on which plaintiffs rely (which applied *Esch*) are inapposite.

agency's methodology — evidence that had not arisen prior to the agency's decision, because the agency's methodology was as yet unknown. *See Oceana v. Evans*, 384 F. Supp. 2d 203, 217–18 & n.17 (D.D.C. 2005); *Sw. Ctr. for Biological Diversity v. Norton*, 2002 WL 1733618, at *7–8 (D.D.C. July 29, 2002); *Carlton v. Babbitt*, 26 F. Supp. 2d 102, 108 (D.D.C. 1998). For example, in *Southwest Center*, the court accepted a declaration by a scientist who had developed the standard on which the defendant agency relied in reaching the challenged decision (which argued that the agency had misapplied the standard). 2002 WL 1733618, at *7.

Two factors were essential to the decisions in *Oceana*, *Southwest Center*, and *Carlton*: first, the extra-record exhibits in those cases arose *after* the agency action. *See Esch*, 876 F.2d at 991. Neither the scientists who produced the exhibits, nor the parties proffering them, could have known prior to the challenged agency decisions that the exhibits were needed, because in each case the "first hint" of the agency's methodology appeared in the challenged decision itself. *Sw. Ctr.*, 2002 WL 1733618, at *7. That fact likewise negated any concern that the proffering party was acting in bad faith or with dilatory intent. *See Oceana*, 384 F. Supp. 2d at 217 n.17; *Sw. Ctr.*, 2002 WL 1733618, at *7. Second, those exhibits were necessary to enable effective judicial review in complex cases that turned on scientific questions; if the presiding courts had excluded the exhibits, they would have had no practical way to gauge the reliability of the agency's methodology. *See Oceana*, 384 F. Supp. 2d at 217 n.17 ("Dr. Heppell's understanding of the model is 'particularly relevant' and allows the Court to better understand the model's complexities." (quoting *Carlton*, 26 F. Supp. 2d at 108)); *cf. WildWest Instit. v. Bull*, 547 F.3d 1162, 1176 (9th Cir. 2008) (allowing extra-record materials "when necessary to explain technical terms or complex subject matter").

This case presents a very different scenario.  The Schofield declaration did not, by any stretch of the imagination, arise *after* the agency action.  In fact, at the time of their appeal to the Board, plaintiffs were not only aware of the contents of the declaration but apparently had the declaration itself (or a close equivalent), but simply did not submit it.  *See* A.R. at 255 [#48-4] (stating that each of the 1972 negotiators "*has prepared an affidavit* declaring that the phrase 'unadjusted for dividends' means that the benefit [] had always included dividends . . . ." (emphasis added)).  Thus, unlike the parties in *Oceana*, *Southwest Center*, and *Carlton*, plaintiffs cannot claim that they could not have known that the declaration would be necessary.  Second, unlike the scientific exhibits offered by the parties in those cases, the Schofield declaration does nothing to illuminate the Board's reasoning or methodology; it simply supports a factual position that plaintiffs have maintained throughout these proceedings, but did not adequately support before the Board.  Nothing in *Oceana*, *Southwest Center*, or *Carlton* — or in *Esch* itself — suggests that parties may remedy their own procedural errors by offering evidence to the Court that they neglected to produce below.

Nor can the Court accept plaintiffs' argument that the Board committed a procedural misstep that warrants the acceptance of extra-record evidence by declining their offer to provide additional documentation and not holding a hearing.  *See IMS*, 129 F.3d at 624 (courts may accept extra-record material where the agency "engaged in improper behavior in reaching its decision"); *Esch*, 876 F.2d at 991.  Plaintiffs characterize the Board's process thusly: "PBGC declined the Pilots' offer to present relevant evidence, faulted the Pilots for the absence of such evidence, relied on independently-acquired evidence without providing the Pilots an opportunity to respond, and then resolved factual matters against them in the absence of an evidentiary

hearing in violation of [PBGC's] own regulations." Pls.' Reply at 18. But this characterization is inaccurate.

As plaintiffs acknowledge, PBGC's appeal regulations clearly state that an appellant should "include [with the appeal] copies of *any* documentation that support the appellant's claim or the appellant's assertions about this information." 29 C.F.R. § 4003.54(a)(4) (emphasis added). The regulations further provide that hearings are held "at the *discretion* of the Appeals Board," generally "if the Appeals Board determines that there is a dispute as to a material fact." *Id*. § 4003.55(b) (emphasis added). Thus, plaintiffs had no basis to expect that they would have a further opportunity to produce evidence, and no reason to withhold any of the evidence that they did have — indeed, plaintiffs' failure to provide the Schofield declaration with their appeal is simply unexplained. It is likewise clear that the Board violated no regulations by not holding an evidentiary hearing; such hearings are held "at the discretion of the Appeals Board." *Id*. A plaintiff seeking to supplement the record based on agency misbehavior must make a strong showing thereof. *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998). No such showing is present here.

In sum: for whatever reason, plaintiffs did not provide all of the evidence supporting their position with their appeal. The Board, for whatever reason, chose to act on the evidence before it and not to hold a hearing. The Board did not contravene any regulations by doing so. Plaintiffs may have been legitimately surprised by the Board's course of action, but plaintiffs' own choice to withhold evidence at the agency level — whether tactical, labor-saving, or otherwise — does not provide a basis to allow the introduction of extra-record evidence during judicial review.

### 3. The Davis Declaration

Finally, plaintiffs argue that the Court may consider a declaration by plaintiff Thomas G. Davis, which describes the 1972 negotiations, the *Everett* litigation, and the PBGC appeal. Pls.' Mem. Ex. N. They contend that the purpose of the declaration is "merely to verify that the [other exhibits] were in fact . . . presented during the course of the *Everett* litigation, and . . . that many similar documents had been presented to the PBGC." Pls.' Reply at 13. PBGC responds that the Davis declaration goes well beyond it avowed purpose (by also describing the 1972 negotiations), and further that there is no need to "verify" the documents in question. The Court agrees with PBGC on both counts. The first point is self-explanatory: the Davis declaration contains Davis' own recollections and impressions of the CBA negotiations, and there is no suggestion that such information may now be presented to the Court in this manner. Second, as described above, the *Everett* documents are not properly before the Court because they were not before the Board; their provenance — in addition to being unquestioned — is irrelevant.[8]

### C.   Plaintiffs' Reliance on Extra-Record Material Precludes Effective Adjudication

Having concluded that a majority of plaintiffs' exhibits are not properly before it, the Court sees no way to effectively and fairly adjudicate the merits of the parties' cross-motions for summary judgment on claim eight. Plaintiffs' motion cites extensively to the attached statement of material facts not in genuine dispute, which does not belong in an administrative record case, LCvR 7(h)(2), and which itself relies on plaintiffs' exhibits, most of which are not properly

---

[8] If the Davis declaration stated that some of plaintiffs' extra-record exhibits had been submitted to PBGC, the situation would be very different. All it says, however, is that the pilots "submitted many of the same exhibits filed in support of this summary judgment motion" to PBGC. Pls.' Mem. Ex. N ¶ 27. This vague statement does not suggest that any of the specific exhibits challenged by PBGC were in fact submitted, and plaintiffs do not argue that it does.

before the Court.  At least 32 of the 84 paragraphs in the statement rely, in whole or in part, on the extra-record exhibits addressed above.  If the Court were to disregard either the entire statement or those 32 paragraphs, plaintiffs' motion would be riddled with unsupported assertions — and still filled with improper information.  Plaintiffs would be disadvantaged by the fact that assertions that may find support in the administrative record would appear unsupported, and PBGC would be disadvantaged by the fact that plaintiffs' arguments would still recite and rely on extensive extra-record material.  All parties would be better served by filing fresh motions and briefs, which cite only to the administrative record lodged by PBGC.[9]

### III.  CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment on plaintiffs' minimum benefit provision claim must be denied without prejudice.  The parties are welcome to resubmit their briefs with citations to the administrative record lodged by PBGC.

Accordingly, it is this 30th day of September, 2011 hereby

**ORDERED** that plaintiffs' Motion for Partial Summary Judgment on Claim Eight of the Second Amended Complaint [#45] and defendant's Cross-Motion for Partial Summary Judgment on Claim Eight [#54] are **DENIED** without prejudice.

Henry H. Kennedy, Jr.<br>
United States District Judge

---

[9] On a more mundane note, the Court observes that, because the administrative record is divided into six volumes, each with several sections, citations to the record are most helpful when they include a reference not only to the page number but also to the ECF location of the section being cited — for example, "A.R. at 56 [#48-1]," where "48-1" is the ECF docket number, instead of simply "A.R. at 56."